Pages 1 - 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Rodriguez Gonzalez, Judge

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
  VS.                           )      NO. 4:25-CR-00003-YGR-1-4
                                )
SHENG THAO, ANDRE JONES, DAVID  )
TRUNG DUONG and ANDY HUNG       )
DUONG,                          )
                                )
          Defendants.           )
_____)

                          Oakland, California
                          Thursday, April 24, 2025

                 **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    PATRICK D. ROBBINS
                    Acting United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California 94102
              BY:   **ABRAHAM H. FINE**
                    **LLOYD A. FARNHAM**
                    **MOLLY PRIEDEMAN**
                    **ASSISTANT UNITED STATES ATTORNEY**

For Defendant Sheng Thao:
                    DLA PIPER, LLP (US)
                    555 Mission Street, Suite 2400
                    San Francisco, CA 94105
              BY:   **JEFFREY E. TSAI**
                    **ATTORNEY AT LAW**

(Appearances continued on following page.)

Reported Remotely By:  Stephen W. Franklin, RMR, CRR, CPE
                       Official United States Reporter

APPEARANCES (CONT.'D):

For Defendant Andre Jones:
                        LAW OFFICES OF MARK S. GOLDROSEN
                        255 Kansas Street, Suite 340
                        San Francisco, CA 94103
        **BY:** **MARK S. GOLDROSEN**
               **ATTORNEY AT LAW**

For Defendant David Trung Duong:
                        JONES DAY
                        1755 Embarcadero Road
                        Palo Alto, CA 94303
        **BY:** **NEAL J. STEPHENS**
               **JEFFREY B. SCHENK**
               **ATTORNEYS AT LAW**

                        SWANSON & MCNAMARA, LLP
                        300 Montgomery Street, Suite 1100
                        San Francisco, CA 94104
        **BY:** **AUGUST P. GUGELMANN**
               **EDWARD W. SWANSON**
               **ATTORNEYS AT LAW**

For Defendant Andy Hung Duong:
                        COVINGTON & BURLING, LLP
                        415 Mission Street, Suite 5400
                        San Francisco, CA 94105
        **BY:** **WILLIAM D. SPRAGUE**
               **ATTORNEY AT LAW**

**Thursday - April 24, 2025**                                    **10:27 a.m.**

**P R O C E E D I N G S**

**---o0o---**

    **THE COURTROOM DEPUTY:**  Good morning, everyone.
Calling the criminal matters 25-CR-00003-YGR-1, -2, -3 and -4,
United States of America versus Sheng Thao, Andre Jones, David
Trung Duong and Andy Hung Duong.  Parties please step forward,
state your appearances for the record starting with the
government.

    **MR. FINE:**  Good morning, Your Honor.  Abe Fine, Molly
Priedeman and Lloyd Farnham for the United States.

    **MR. TSAI:**  Good morning, Your Honor.  Jeffrey Tsai for
Sheng Thao, who is present and before the Court and be
available here in front of the Court if the Court desires.

    **MR. GOLDROSEN:**  Good morning, Your Honor.  Mark
Goldrosen and Shawn Halbert.  We represent Andre Jones, and
Mr. Jones is present in court.

    **MR. STEPHENS:**  Good morning, Your Honor.  Neal
Stephens on behalf of Mr. David Duong.  With me is Ed Swanson
and August Gugelmann and Jeff Schenk.

    **THE COURT:**  Where is Mr. Swanson?  Oh, he's sitting
back there.  I couldn't see him.

    Okay.  Where is Mr. Gugelmann?

    Okay.

    **MR. SPRAGUE:**  Good morning, Your Honor.  Doug Sprague

1    on behalf of defendant Andy Duong, here with Erik Babcock, my

2    client, Andy Duong, and also Winston Chan seated behind me.

3         **THE COURT:**  Okay.  Good morning.  I only need one of

4    you at the mics.  Everyone else can be seated.

5         Okay.  So I have a motion, but let's get some updates.

6    Why don't we start with the government.

7         **MR. FINE:**  Certainly, Your Honor.

8         So in terms of discovery, I think it's probably most

9    helpful if I discuss what we've produced so far, what's

10   outstanding, and then kind of a general timeline of when we

11   think we'll be able to get this stuff out that's outstanding.

12        So since the -- in the 11 weeks since our last appearance

13   before Your Honor, we've had five substantial productions of

14   discovery to the defense.  That's included almost 400 gigabytes

15   of material.  And I think the best way to describe the

16   discovery is through various categories of what we have and

17   what we've produced.

18        So the first category is the investigative agency

19   material, and here the agencies are the FBI, IRS Criminal

20   Investigations and the U.S. Postal Inspection Service.  And

21   this material includes reports, interview memoranda, search

22   warrants.  And now I'll note that this is a -- it's a

23   continuing investigation.  New discovery is constantly being

24   produced, but we have produced essentially everything current

25   up through the date of the indictment.  And we continue to

1    gather new material, and as we do, we will continue to produce

2    that to the defense.

3         The second category of discovery is material received from

4    third parties pursuant to subpoenas or whether given to the

5    government voluntarily.  These include financial records, phone

6    records, business records, items from government entities, such

7    as the City of Oakland or the Port of Oakland or others.  Same

8    caveat as above.  This is a continuing investigation, we

9    continue to get new items in, but we're essentially up to date

10   in terms of production through the date of the indictment in

11   terms of these materials.  And as I said, we'll continue to

12   produce them as they come in.

13        The third category are the defendants' accounts and

14   devices that were seized pursuant to search warrants.  Now,

15   this is -- it's a large volume of data.  It includes iCloud

16   accounts, e-mail accounts, as well as digital devices that were

17   seized during execution of the residential search warrants last

18   June.  So all of these items, you know, went through a filter

19   process.  That filter process is almost complete.  Most of the

20   items are through the filter process is, and we've produced

21   some of that material.  And in terms of production so far, I'll

22   start with we've given each of the defendants all of their own

23   stuff, complete copies of their own stuff.

24        So, for example, we produced to Ms. Thao a complete image

25   of her iPhone, a complete image of her iCloud account, a

1    complete image of her e-mail account, complete images of all

2    the devices that were seized from her residence.  Same for all

3    of the other defendants.  And we've obtained permission from

4    counsel for California Waste Solutions to produce complete

5    copies of everything seized from there to David Duong.

6        In terms of the review that has been done, we've reviewed

7    several of those accounts and devices.  Many of them, we've

8    produced many of them to the defense, and there's a lot that

9    are still outstanding that the agents are currently still

10   reviewing.  Our highest priority right now in terms of that

11   review is each of the defendants' main iPhone, iCloud and

12   e-mail account.  Those devices and accounts contain a ton of

13   data, and we expect in the next month to have completed the

14   review of each defendant's iPhone, iCloud and e-mail account,

15   and then we'll be able to produce shortly after that the

16   material seized pursuant to Attachment B of their main devices.

17       There are a couple of exceptions to that.  The California

18   Waste Solutions e-mails for David Duong and Andy Duong which we

19   obtained from Microsoft, there were some significant processing

20   errors in terms of those e-mail accounts.  There were delays in

21   getting them.  Those are still going through the filter, but we

22   expect them to be through the filter shortly.

23       So that's the defendants' own, own material.

24       And kind of a fourth category are accounts and devices of

25   third parties that were obtained via search warrant.

Similarly, these are going through the filter review.  We've

completed review of at least one significant iCloud that we've

produced to the defense.  The review of the other accounts and

devices seized from third parties is ongoing.  As I said

before, our highest priority right now are the defendants' main

devices, which we expect to get out in the next several weeks.

       **THE COURT:**  So you said originally five substantial

productions; you categorized four.

       **MR. FINE:**  Yes.  So I meant five substantial

productions in terms of five different times we've written

discovery letters and produced material to the defense, and

those materials fall into those four categories.

       **THE COURT:**  Okay.  Mr. Swanson, do you have a

response?

       **MR. SWANSON:**  Thank you, Your Honor.

We have received five substantial productions, that is

true, and I don't dispute anything that the government says

about what has been produced, minus the fact that most of this,

much of this has been produced without Bates numbers.  So it's

all going to need to be reproduced at some point so it's

actually useable.  Right now we have sort of raw data un-Bates.

      But with each of these categories we have a number of

questions.  We've written to the government about this.  We've

not yet received a response to a number of these questions, so

just so the Court knows where things stand from our

1   perspective.  The government says the investigation is

2   continuing.  They have produced material up through the date of

3   the indictment.  What we don't understand is whether there is

4   more material post-indictment that they are withholding because

5   it's part of a continuing investigation, or whether they are

6   producing all the material as they get it.  That is a

7   significant outstanding question for us.

8       With this third category that the government points out,

9   this is the defendants' iPhones, iCloud and e-mail accounts.

10          **THE COURT:**  Can you respond?

11          **MR. FINE:**  Yes, Your Honor.

12      So to the first part, the five substantial productions

13  that we've talked about, those all were Bates stamped, and the

14  part that weren't Bates stamped is when we gave raw copies to

15  each defendant of all of the materials.  That -- those items

16  weren't Bates stamped.  We are reviewing that material for

17  Attachment B review, and the Attachment B that has been seized

18  will be produced to the defense with Bates stamps just like

19  some of the Attachment B reviewed material we've already

20  produced, those had Bates stamps.

21          **THE COURT:**  What do you mean Attachment B?

22          **MR. FINE:**  Sure.  So when, you know, we get a search

23  warrant, let's say, for Ms. Thao's iPhone.  Attachment B -- you

24  know, we can't just seize the whole thing.  We review and we

25  seize the items that the Court has allowed us to seize pursuant

1    to Attachment B.  We seize that material, and that's the

2    material that gets produced to the other defendants.

3           **THE COURT:**  And have a variety of magistrate judges

4    been issuing these search warrants?

5           **MR. FINE:**  Yes.

6           **THE COURT:**  So there's not one in particular who's

7    done them all?

8           **MR. FINE:**  No.  My -- I don't know for sure.  I think

9    there have been two, the two magistrate judges in Oakland.

10          **THE COURT:**  All right.  Okay.

11          **MR. SWANSON:**  Should I continue, Your Honor?

12          **THE COURT:**  No, hold on.

13       Just to refresh so I'm clear, Mr. Swanson asked about

14   whether the post-indictment material was being withheld because

15   it's part of a continuing investigation or not.  Is that --

16   what's the response on that?

17          **MR. FINE:**  No, Your Honor.

18       We have a protective order in place where there's maybe

19   one or two items related to, you know, specific informants or

20   things like that that we haven't produced because it is

21   sensitive and part of an ongoing investigation, but the vast

22   majority of it that we haven't produced is because we are

23   producing it in chunks, and we will produce the items from the

24   continuing investigation as they come to us.

25          **THE COURT:**  Okay.  Mr. Swanson?

1         **MR. SWANSON:**  Thank you, Your Honor.

2      So in this third category, the defendants' iPhone, iCloud

3  and e-mail accounts, the government explains that they expect

4  to substantially complete review and production of that

5  material in about three to four months.  We --

6         **THE COURT:**  Is that accurate?

7         **MR. FINE:**  So, yes, Your Honor.

8      What we said is for the defendants' main devices -- so,

9  and the examples I used were iPhone, iCloud, e-mail account,

10 their primary iPhone, iCloud, e-mail account -- we expect to

11 complete that review in approximately the next month and then

12 produce the Attachment B material from those searches to the

13 defense shortly thereafter.  In terms of the remainder of the

14 seized items -- now, there's lots of other items that were

15 seized, such as hard drives, USBs, iPads, other electronic

16 devices.  Those are going to be reviewed after we've completed

17 the review of the defendants' main devices, and we expect to

18 have finished, I would say, a significant majority of that

19 review in the next three to four months.  I don't think we will

20 have completed all of it in three or four months, but a

21 significant majority.

22         **THE COURT:**  All right.  Mr. Swanson?

23         **MR. SWANSON:**  So, Your Honor, that -- we are at the

24 10-month mark already, I believe, with the government having a

25 lot of these devices.  We're now going to be at the year-plus

mark before we get even a substantial majority of it, and that
poses a real problem for us obviously.  The government has had
this material and has --

      **THE COURT:**  Well, what is the problem?  It's not as if
they're in custody.  This is only the second time you've
appeared in front of me.  So what's the actual problem?

      **MR. SWANSON:**  The actual problem, Your Honor, is
understanding what the evidence is that the government has in
this case they intend to use against our clients.  We are going
through the material they provide to us.  We've got a team
working on that.  So we're staying on top of it.  It's just we
don't have it, and it will be more than a year after they
seized it before they are producing it, which we're concerned
about.  And we are eager to have this discovery phase over
with, and it seems we have an open end to a lot of this.  That
is our concern.  So that's -- there's that.  We are concerned
about that.

     I would highlight in category 4 the third-party material.
The principal cooperator in this case, they have produced one
but not the other of his iCloud accounts that is currently
undergoing review.  There is no schedule for producing that.  I
assume they've had that for at least 10 months, and we don't
have an answer as to when we're going to get that, and that is
really crucial material for us.

      **MR. FINE:**  Certainly, Your Honor.

1        As to that specific iCloud account, I would say that is in

2   the three- to four-month estimate.  As I said, we're focusing

3   on the defendants' individual primary devices right now.

4        In terms of the items that show kind of what our case

5   is --

6        THE COURT:  Well, let me ask a question.  Given that

7   your clients should all know what's on their own devices,

8   certainly better than the government, would you prefer for the

9   government to prioritize the third-party material before the

10  first-party material?

11       MR. SWANSON:  From the lead cooperator?  Yes, we

12  would.

13       THE COURT:  All right.  So flip it.

14       MR. FINE:  Okay.  Understood, Your Honor.

15       MR. SWANSON:  Your Honor, there are issues that we are

16  discussing with the government about *Brady* material, and I

17  think that I just highlight for the Court that we are concerned

18  that given that there are now many terabytes of information

19  that have been produced, we may need and we may be seeking the

20  Court's assistance with directing us -- directing the

21  government to direct us to material it has identified as *Brady*

22  material or *Giglio* material, whether that's in the discovery

23  they produced or in grand jury transcripts.  I just bring that

24  to the Court's attention because that is a matter that we will

25  continue to meet and confer with the government about, and if

1    we're not able to resolve it, we will bring it to the Court's

2    attention.

3         **THE COURT:**  So discovery under my standing order in

4    this case, given the digit, goes to Judge Westmore.

5         **MR. SWANSON:**  Very well.

6         A similar issue that we are hoping to work out with the

7    government, and it concerns the indexes.  The government has

8    provided indexes that at least in some categories for us are

9    opaque at best.  And so we will continue to work with them, and

10   if need be, bring that to Judge Westmore.

11        There are -- there's been a lot of correspondence that is

12   still yet to be resolved with the government.  We have

13   identified a whole host of problems with the production itself;

14   missing pages, missing attachments, all of that.  We're waiting

15   for a response on that.  We've also identified I think nine

16   categories of discovery where we are asking for information on.

17   The government has agreed to meet and confer with us on that

18   next week.  I just highlight that for the Court so the Court

19   understands there is a process underway between the parties,

20   we're not trying to burden the Court with this, but we are

21   concerned about the pace of much of this, and that's why we

22   wanted to bring that to the Court's attention.

23        **MR. FINE:**  And, Your Honor, I would just say I agree

24   there's a process ongoing.

25        One thing I would respond to is to the extent the defense

1  is saying the government is not being responsive to their

2  correspondence and requests, we would certainly dispute that.

3  I think we've been quite responsive to them.  And so I just

4  want to put that on the record.

5          THE COURT:  Okay.

6          MR. SWANSON:  And, Your Honor, just sort of jumping

7  ahead, I think that will inform what we are going to be looking

8  at for a date back before Your Honor, but we can address that

9  at the end.  I just we want to make sure that things continue

10  to move.  Obviously as is always the case, when we have a court

11  date, things tend to happen that might not happen if there's no

12  pending court date.  So we can raise that at the end.

13          THE COURT:  Okay.  Other updates?

14          MR. FINE:  Not from the government, Your Honor.

15          MR. SWANSON:  Not from the defense, Your Honor.

16          THE COURT:  And are you speaking on behalf of all four

17  defendants?

18          MR. SWANSON:  I am, Your Honor.  Seeing nods all

19  around.

20          THE COURT:  Well, where's my list?

21      Mr. Tsai, is he speaking for you?

22          MR. TSAI:  I'm sorry, Your Honor?

23          THE COURT:  Is he speaking for you?

24          MR. TSAI:  Yes, Your Honor.

25          THE COURT:  Mr. Goldrosen?

```
 1            MR. GOLDROSEN:  Yes, Your Honor.

 2            THE COURT:  Mr. Sprague?

 3            MR. SPRAGUE:  Yes, Your Honor.

 4            THE COURT:  Okay.  All right.  Let's talk about the

 5     motion, which is a decent segue.

 6         There was no indication on the docket, at least not when I

 7     prepped this case, that the other three defendants joined the

 8     motion.  Are the other three defendants joining the motion?  If

 9     so, you need to file those notices that you're joining on the

10     docket so I know when I'm prepping.

11         Mr. Tsai, are you joining this motion?

12            MR. TSAI:  Yes, Your Honor.

13            THE COURT:  You don't at this point, because I've

14     already prepped.  This is for future reference.

15            MR. TSAI:  Understood, Your Honor.

16            THE COURT:  Mr. Goldrosen?

17            MR. GOLDROSEN:  Yes, Your Honor.  And I apologize for

18     that.  We'll do that next time it comes up.

19            THE COURT:  And then ...

20            MR. TSAI:  Yes, Your Honor, and we'll also do that

21     next time.  Thank you.

22            THE COURT:  Okay.  So I have -- well, now I understand

23     a little bit better where we are in terms of the production.

24     The memo from the government had some inconsistencies.  In one

25     place you indicated that it all had been produced, but clearly
```

 1   it's not all been produced.

 2        **MR. FINE:**  So, Your Honor, all of the items have been

 3   produced to each defendant.  So for David Duong, all of David

 4   Duong's items have been full produced to him.  Anything in

 5   which he would have privileged material has been produced to

 6   him.

 7        **THE COURT:**  It's not at all clear to me why the

 8   government is arguing about a filter protocol.  It's best

 9   practice.  I don't have a Ninth Circuit case, and you would

10   concede that.  Right, Mr. Sprague?

11        **MR. STEPHENS:**  Mr. Stephens on behalf of David Duong,

12   Your Honor.  Yes, I would concede that.

13        **THE COURT:**  Mr. Stephens, you said?

14        **MR. STEPHENS:**  Yes, Your Honor.

15        **THE COURT:**  So I don't have a Ninth Circuit case, but

16   from what I reviewed, certainly all of these, the circuits that

17   have rendered opinions on them, have well-reasoned, articulated

18   rationale for requiring that the government comply with it and

19   for requiring that the Court oversee the filter protocol.  So

20   what is the problem?

21        **MR. FINE:**  So, Your Honor, we do have a very --

22        **THE COURT:**  The cases talk about the Court being the

23   ultimate arbiter, not the government.  It concerns me when the

24   prosecutor wants to be in charge of the process without the

25   oversight.

1          Now, all of you on your side, I have a lot of respect for

2     you.  You have a lot of integrity.  That's not my concern.  My

3     concern is the process.

4          **MR. FINE:**  Certainly, Your Honor.

5          So I think there are a lot of cases, and we've cited to

6     some of them, too, in which the government has followed a

7     similar protocol and not had court oversight of its filter

8     protocol, but had a filter protocol in place.  And courts have

9     said that, you know, that's how we do it in this district, or

10    this Court or something like that.  So I would push back on the

11    notion that every court has said that the Court itself must

12    supervise the filter protocol.

13         And I think a lot of the cases in which the Court has

14    supervised these filter reviews have been cases that have had

15    special circumstances.  For instance, cases where a law office

16    was searched.  And that's the Fourth Circuit case that the

17    defense relies on quite a bit, where you had a law office that

18    was searched, a criminal defense office, where that office had

19    a lot of cases against the prosecuting office.  And so in that

20    scenario the Court was going to take, you know, very strong

21    oversight over the filter process.

22         But in cases like this, where a business is searched or

23    where individuals who are not lawyers are searched, there are

24    lots of cases talking about how the government puts in place a

25    filter process to filter out attorney/client materials.  And

1    here that's exactly what we did.  Right after the searches we

2    approached each of the defense counsel.  We asked for lists of

3    attorneys, for phone numbers, for e-mail addresses, for the

4    explicit purpose of doing a filter review, and they provided

5    that information to us.  We put together a comprehensive filter

6    review.

7         For Defendant David Duong there are 96 attorney-specific

8    search terms that we used, as well as general search terms.  We

9    have explained in our brief exactly how that filter procedure

10   worked.  And then for the stuff that the filter team has

11   determined as potentially privilege, the defense has an

12   opportunity to object to any of that before that goes to the

13   prosecution team.

14        That's the procedure we've put in place, and we'd stand

15   behind that.  We think that's reasonable, and we think that

16   complies with the case law.

17             **THE COURT:**  Response?

18             **MR. STEPHENS:**  Yes, Your Honor.

19        Your Honor's correct about the law.  The law does not

20   support the way this --

21             **THE COURT:**  Well, I don't have a Ninth Circuit case

22   that compels me to do what you're asking me to do, so do not go

23   there.

24             **MR. STEPHENS:**  Okay.  So let me backtrack, then, Your

25   Honor.

1    A protocol typically follows three steps.  There's the

2  design step, the approval step, and then the actual operation

3  of the protocol.  In the design step what other circuit courts

4  have held is what Your Honor pointed out this morning, which is

5  there is a separation of powers problem and a fox guarding the

6  hen house problem if the government designs a protocol that's

7  got a no-oversight power to it, which is they can designate in

8  this protocol any document as, quote, not clearly privilege,

9  and that document will go straight from the filter team,

10  straight to the prosecution team, without any oversight by

11  defense counsel to catch a privilege document and either be

12  able to resolve it through a meet and confer with the

13  government, or failing the meet and confer process, then raise

14  it with the Judge.  That's what the Fourth Circuit and the

15  Sixth Circuit corrected, and any circuit court that has had

16  this flaw, they have held the filter protocol fails.  In

17  step -- so they fail step one in the design.

18    In the approval, there needs to be both an approval

19  through Main Justice at OEO, the Office of Enforcement

20  Operations, and there needs to be judicial authorization.  The

21  government has conceded that there was no judicial

22  authorization.  And typically what would happen, Your Honor, is

23  the line AUSA, with the search warrant package, would present

24  the filter team protocol to the magistrate judge so the

25  magistrate judge could approve it before any privilege material

1    is seized.  That didn't happen in this case.

2         One step further back, I don't think that the filter

3    protocol in this case was sent to Main Justice, as it should

4    have been under the Justice Department's only policy.  Justice

5    Department policy is if the government is going to search a

6    business organization like CWS, where there's in-house counsel

7    and they know that they're going to encounter privilege

8    materials, the line AUSA in the field should send the filter

9    protocol through to Main Justice to look at.  And in my

10   experience, Your Honor, OEO would have caught the flaw here,

11   the no-oversight problem that we've raised, and they would have

12   fixed it before they approach the magistrate judge with the

13   search warrant.

14        So at the approval phase --

15        **THE COURT:**  So when you say before they -- oh, but

16   when they approached the magistrate judge, the protocol wasn't

17   in there?

18        **MR. STEPHENS:**  That's correct.  So they're in

19   violations of both of obtaining judicial authorization, and

20   they're in violation of their own policy.

21        And then you get to the actual operation of the filter

22   team protocol.  And they fail that step, Your Honor, because

23   they failed the design step, which is this protocol has been

24   designed in a way that's going to create the separation of

25   powers problem that Your Honor mentioned.

1          **THE COURT:**  Okay.  So first of all, what I don't have

2     in the filings is whether you've identified any actual failure.

3     I understand that -- I understand the argument about the

4     theoretical framework.  I haven't seen anything indicating that

5     there was an actual failure.  Has there been an actual failure?

6          **MR. STEPHENS:**  Well --

7          **THE COURT:**  Yes or no.  Has there been an actual

8     failure to your knowledge?

9          **MR. STEPHENS:**  Yes, in this respect, Your Honor.  In

10    the material that they have provided to us in e-mail from CWS

11    and Mr. Duong --

12         **THE COURT:**  You're speaking on behalf of everyone, so

13    I need you to use pronouns that explain to me if you're only,

14    then, talking about your client.

15         **MR. STEPHENS:**  Okay.  So in response to your question,

16    I know the facts as it relates to Mr. David Duong.

17         **THE COURT:**  Okay.

18         **MR. STEPHENS:**  So my response is directed to that.

19         In this situation, Your Honor, the government has provided

20    back to us, including this week, e-mail that has not, as

21    Mr. Fine has told me, has not gone through the filter team

22    process yet.  In those materials we do see a series of

23    privileged communications, including a few that would not have

24    hit on their filter terms as they're set up.  But, Your Honor,

25    the way this would typically go --

1          **THE COURT:**  So, so you've identified it, but there's

2   not been an actual disclosure.  Is that what you're saying?

3          **MR. STEPHENS:**  As Mr. Fine explained to me this week,

4   as it relates to defendant David Duong --

5          **THE COURT:**  You're going to have to, Mr. Stephens,

6   first answer my question, and then if you want to explain, you

7   can.  But let's get that straight.  This is going to be a long

8   case.  Answer my question.

9      Has the government disclosed attorney/client information

10  of your client to the other defendants?  Yes or no.

11         **MR. STEPHENS:**  No, Your Honor.

12         **THE COURT:**  That's what I was asking.

13         **MR. STEPHENS:**  Okay.

14         **THE COURT:**  So now you can explain.  Focus.

15         **MR. STEPHENS:**  Yes, Your Honor.

16     So as it relates to Mr. Duong, the information that the

17  government has provided to us they have represented to me has

18  not gone through the filter protocol yet.  There have been some

19  examples in that set where their filter --

20         **THE COURT:**  And have you identified those specifically

21  for him and shown him how that fails?

22         **MR. STEPHENS:**  We just got those this week, Your

23  Honor.

24         **THE COURT:**  So the answer to my question is "no."

25         **MR. STEPHENS:**  Is "no, not yet."  Correct.

1          **THE COURT:**  All right.  Mr. Tsai, has any attorney/

2     client privilege documents that you've produced that you've

3     identified, been produced to the other defendants by the

4     government?

5          **MR. TSAI:**  No.

6          **THE COURT:**  Mr. Goldrosen, same question.

7          **MR. GOLDROSEN:**  Same answer.  Not to my knowledge.

8          **THE COURT:**  Okay.  And Mr. Sprague?

9          **MR. SPRAGUE:**  No, Your Honor, not to our knowledge.

10         **THE COURT:**  All right.  So that's helpful to know.

11     Is it accurate that it is Main Justice policy that that

12     should have gone to Main Justice and it did not?

13         **MR. FINE:**  Absolutely not, Your Honor.

14     The DOJ manual portion that Mr. Stephens had cited to us

15     that is not in his brief is about searches of law offices and

16     lawyers.

17         **THE COURT:**  Is that accurate?  Is it accurate?

18         **MR. STEPHENS:**  I disagree with his statement.  It

19     relates to a search of a --

20         **THE COURT:**  Okay.  Does someone have the portion of

21     the manual?

22         **MR. STEPHENS:**  Yes, I do, Your Honor.

23         **THE COURT:**  You have two copies?

24         **MR. STEPHENS:**  I do.

25         **THE COURT:**  Would you hand one over there?  Thank you.

1          **MR. FINE:**  I'll just note, Your Honor, this is not in

2     the record.  Mr. Stephens did not cite this in his brief, so

3     ...

4          **THE COURT:**  Well, I understand that, but you know what

5     the Justice manual says, and you're certainly on constructive

6     notice of it.

7          **MR. STEPHENS:**  So, Your Honor --

8          **THE COURT:**  So you've highlighted the section that

9     says:  "Searches of premises of subject attorneys."

10         **MR. STEPHENS:**  Correct, Your Honor.  It --

11         **THE COURT:**  That's not all businesses, correct?

12         **MR. STEPHENS:**  It does relate to a business

13    organization.

14        Your Honor, if I could direct the Court to the next page,

15    which is page number 40 of 55.  In the first paragraph, about

16    two-thirds of the way down there's a statement that says:

17    "This policy also applies to searches of business organizations

18    where such searches involve materials in the possessions of

19    individuals serving in the capacity of legal advisor."

20         **THE COURT:**  Right.  So with respect to this, then, as

21    I looked at the materials, there was the office of the in-house

22    counsel to CW -- I don't know the acronym off the top of my

23    head.

24         **MR. STEPHENS:**  CWS, Your Honor.

25         **THE COURT:**  CWS.

1    Other than that, right, that's what we're talking about,

2    that office.

3         **MR. STEPHENS:**  That's correct, Your Honor.

4         **THE COURT:**  Okay.  So with respect to that office, did

5    you seek approval?

6         **MR. FINE:**  Your Honor, we did not search that office.

7    When the IRS criminal investigations agents got to CWS they

8    talked to the in-house counsel.  They got -- found out which

9    office was hers.  They called our office, said, should we

10   search it?  We said, absolutely not.  The in-house counsel said

11   there might also be privilege material in a couple of other

12   offices, including I believe David Duong's office and Christina

13   Duong's office, and so they sent taint agents in to complete

14   the search of those offices.  Not the lawyer's offices, but the

15   business offices.  And we did not search at all the office of

16   the in-house attorney.

17        **THE COURT:**  Okay.  Is there anything else in this

18   Title 9-13 that you want me to look at?

19        **MR. STEPHENS:**  Yes, Your Honor.  I would direct you to

20   the next page, page 41, under C, Prior Consultation.  And there

21   in the first paragraph, the Justice Department policy is the

22   federal prosecutor, meaning the line AUSA in the field, must

23   consult with the criminal --

24        **THE COURT:**  But this is under the section that relates

25   to attorneys' premises.

1          **MR. STEPHENS:**  Correct.  And --

2          **THE COURT:**  So that's not everything.

3          **MR. STEPHENS:**  It -- but --

4          **THE COURT:**  That relates to that one subcategory.

5          **MR. STEPHENS:**  But, Your Honor, it would relate to a

6    business organization where there is an in-house counsel.

7          **THE COURT:**  So perhaps you're right with respect to

8    that business, but you're not right, then, with respect to all

9    of the defendants individually.  This would not apply to the

10   individual defendants.  Am I right?

11         **MR. STEPHENS:**  This would -- it would apply to

12   privilege material seized from CWS involving the in-house

13   counsel --

14         **THE COURT:**  CWS is not a defendant.

15         **MR. STEPHENS:**  That's correct.

16         **THE COURT:**  So would it apply to any of the individual

17   defendants?

18         **MR. STEPHENS:**  Yes, if the individual defendants are

19   having privileged communications with in-house counsel, this

20   policy would apply.

21         **THE COURT:**  This does not say that.

22         **MR. STEPHENS:**  Well, the policy -- so --

23         **THE COURT:**  And let me tell you, I am going to put a

24   protocol in place, but when you make representations that

25   you've got a manual that says it applies and it seems to apply

1  to attorneys and not individuals, that would not be an accurate

2  representation to the Court about what this policy says.  Now,

3  it may be a good process and it may be something that I should

4  look at as persuasive, but I don't understand how you can say

5  it applies to individual persons.

6          **MR. STEPHENS:**  It -- it would apply to the privilege

7  communications that are being seized.

8          **THE COURT:**  That's not what this says.

9          **MR. STEPHENS:**  Well, so, Your Honor, I direct you back

10  to the paragraph that says it's gonna apply to the searches of

11  a business organization, and what -- Your Honor, my

12  understanding of this both as --

13          **THE COURT:**  All right.  Let me read that, because you

14  didn't -- is there some reason you didn't include this with

15  your brief?

16          **MR. STEPHENS:**  Well, yeah.  I didn't think that they

17  were going to indicate that they didn't think that they needed

18  to get authorization through OEO for this search, if they're

19  going to search a business organization with in-house counsel.

20  What we did include --

21          **THE COURT:**  Could you wait until I invite you to

22  speak.

23      On my first reading of this, it does not look to me like

24  it is -- like you're accurately representing the scope.  So

25  I'll read it more closely later, but I don't think you're

 1    accurately representing it.

 2        So next argument.

 3        **MR. STEPHENS:**  Well, so -- okay.  So they would still

 4    need to get judicial approval.  We've cited a case indicating

 5    that they should have, they agree that they didn't, and they

 6    haven't cited any case law in opposition to that.  And again,

 7    we did provide information in the reply brief demonstrating

 8    that Main Justice views it as an ethical best practice.

 9        **THE COURT:**  Well, I agree it's a best practice.  There

10    is a difference.  Okay.

11        **MR. FINE:**  Your Honor, may I respond just to some of

12    the arguments that Mr. Stephens raised, unless you have

13    questions?

14        **THE COURT:**  You may, but I am going to make sure we

15    have a protocol.

16        I do not want -- and I've seen situations where the filter

17    failed and it caused huge problems in this district.

18        So they've raised it, and I'm going to institute one as a

19    best practice, not because the Ninth Circuit has demanded it,

20    but based upon the reasoning of the other circuits and not

21    based upon this Justice manual.  Specifically, again, I don't

22    think it's accurate, but I do think it's a good practice.  So

23    you can say what you want for purposes of the record, Mr. Fine,

24    but I am going to institute one.

25        **MR. FINE:**  Certainly.  I just want to correct the

1    record on a couple of items.

2        Just in terms of the e-mails that we sent to Mr. Duong's

3    counsel, as we said, we've produced complete copies of

4    everything to each party, and that's the exact dataset that we

5    got from the e-mail provider.  Before it's gone for filter

6    review we haven't -- you know, the prosecution team hasn't had

7    access to that, hasn't looked at it, but has just given it to

8    the defense counsel as we said we were going to.

9        In terms of the item that Mr. Stephens raised at the end

10   and he raised in his reply brief from PRAO, that's the

11   Professional Responsibility Advisory Office in DOJ, they give

12   privileged legal advice to Justice Department attorneys.

13   The -- what Mr. -- so we talked to them about the submission

14   that Mr. Stephens submitted.  It's well out of date and not up

15   to date as accurate.  I can't say what the other items that

16   PRAO told us, because PRAO asserts privilege over the advice

17   that it gives to us.  So I can't really speak about that,

18   except to say that that item that was submitted is -- is

19   privileged, certainly.  PRAO advice is privileged and is well

20   out of date.  I believe it's from 2008.

21           **THE COURTROOM DEPUTY:**  Excuse me, Your Honor.  The

22   court reporter's Zoom has failed.

23           **THE COURT:**  We'll give him just a minute to reboot.

24       What's he saying?

25           **THE COURTROOM DEPUTY:**  As of now, his Zoom app has

 1  crashed, Your Honor.

 2      **THE COURT:**  Okay.  Let him know we'll put on the

 3  recording.  We'll record.

 4      It is now even more important that if you speak, you

 5  identify your name.

 6      Okay.  So I am going to grant the motion to have a filter

 7  protocol in place with some judicial oversight.  My preference

 8  would be that you meet and confer over the elements of it and

 9  that you take it to the magistrate judge for approval, because

10  it is the magistrate judge who will have to resolve any

11  problems that arise.

12      I do think it is appropriate, and given the amount of

13  discovery in this case, that the defense have two weeks to

14  doublecheck that nothing is going to the prosecution team that

15  is privileged and that has somehow been missed.  Two weeks is

16  not a long period of time in the context of this case and in

17  the context of production.

18      And it will ultimately, you know, if -- just make sure

19  that we don't have a problem in the future.  I've now verified

20  that there has been no issue.  There has been no disclosure,

21  inadvertent or otherwise, of material that shouldn't have gone

22  to the prosecution team.  That's what the defendants have

23  advised me today.  But having had a bad situation happen, I'm

24  not going to have it happen again.

25      So you're ordered to go meet and confer.  Come up with a

1  protocol that works.  Take it to the magistrate judge.

2  Understood?

3      **MR. STEPHENS:**  Neil Stephens for Defendant Duong.

4  Understood, Your Honor, and thank you.

5      **MR. FINE:**  Abe fine for the United States.  May I ask

6  one clarification question, Your Honor?

7    So obviously a significant amount of material has already

8  gone to the prosecution team, and the agents are in the process

9  of reviewing.  Are you ordering us to stop that review?

10     **THE COURT:**  I am not ordering you to stop, and I did

11  not understand the motion to suggest that we are redoing

12  everything.  What has been produced has been produced.  If the

13  defendants have noticed something in their review of their own

14  documents and productions, you need to advise the Government

15  immediately to ensure that we don't have a disclosure like the

16  one that you said you noticed this week.  You need to do that

17  immediately.

18     **MR. STEPHENS:**  Neal Stephens, Your Honor.  Understood.

19  Will do.

20     **THE COURT:**  But we are not stopping the production.

21  They're complaining about that the production is too slow, so

22  we're not going to stop it.

23     **MR. FINE:**  Understood, Your Honor.

24    So just for my own clarification, the two weeks is for the

25  items that have not yet been given to the prosecution team that

1   are still undergoing filter review.  And in terms of the

2   defense, they all already have all of their own items, and they

3   have our search terms, they know our process.  And so, as you

4   said, our position is they should be able to tell us, and we

5   can work this out with the defense, but whether there's stuff

6   that we would have missed in our filter review.

7           THE COURT:  And tell the magistrate judge that if she

8   has any questions about issues and wants to confer, I'm happy

9   to confer with her.  Okay?

10          MR. STEPHENS:  Neal Stephens, Your Honor.  Thank you.

11          THE COURT:  All right.  Anything else on this?

12          MR. STEPHENS:  No, Your Honor.

13          THE COURT:  Okay.  So how much time do you want before

14  you come back?

15          MR. FINE:  So, Your Honor, I think the defense and the

16  government, we had exchanged emails about this. The

17  government's initial proposal was that we come back sometime in

18  about three months, and by that time we'll hopeful -- you know,

19  our expectation is that we'll have made substantial progress on

20  the items in category three, the devices and accounts from the

21  defendants.

22      I understand that the defendants wanted to come back

23  sooner.  Part of our reason for wanting to come back at that

24  later date was that I have a trial in the first two weeks of

25  July, and also by the end of that month we expect Ms. Priedeman

will be back full-time on the case.  And so I think we'll be in

a better position to talk about a pathway forward in terms of

setting a case schedule, setting a trial date, et cetera, at

that time.

    **MR. SWANSON:**  Your Honor, Ed Swanson, on behalf of

Mr. Duong.

    We were hoping to come back at the end of June, the 26th

if the Court is available.  We couldn't see from the calendar

if the Court's available that day.

    **THE COURT:**  Yes, I am available on the 26th.  It

shouldn't be a very long conference.  So you've got three

lawyers.  Maybe Mr. Farnham, then, can appear if you're doing

trial prep, and Ms. Priedeman is not available, but it sounds

like it'll just be an update.

    **MR. FINE:**  Abe Fine for the United States.

    Understood, Your Honor.

    **THE COURT:**  Okay.  So June 26 we'll do it at the same

time, which is 10:30.

    Given the complexity of this case and the fact that

discovery is still in the process of being produced and hasn't

even been fully reviewed, it seems to me that time should be

excluded under the Speedy Trial Act for effective preparation

of counsel.

    Would you agree with that, Mr. Swanson?

    **MR. SWANSON:**  Ed Swanson on behalf of Mr. Duong.

1    Yes, on behalf of David Duong, we agree to exclusion of

2   time between today's date and June 26th in the interest of

3   justice to allow for effective preparation of the defense.

4           **THE COURT:**  Mr. Tsai?

5           **MR. TSAI:**  Jeff Tsai.  Your Honor, we agree.

6           **THE COURT:**  Mr. Goldrosen?

7           **MR. GOLDROSEN:**  Mark Goldrosen on behalf of Andre

8   Jones.  We agree.

9           **THE COURT:**  Mr. Sprague?

10          **MR. MR. SPRAGUE:**  Doug Sprague on behalf of defendant,

11  Andy Duong.  We also agree.  Thank, Your Honor.

12          **THE COURT:**  Prosecution agrees?

13          **MR. FINE:**  Agreed, Your Honor.  Abe Fine for the

14  United States.

15          **THE COURT:**  All right.  See you back here on June 26th

16  at 10:00 a.m.  Time is excluded.  We're adjourned.

17      (Proceedings concluded at 11:06 a.m.)

18                  **CERTIFICATE OF REPORTER**

19          I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above-entitled matter.

21  DATE:  Thursday, May 1, 2025

22

23  _____

24  Stephen W. Franklin, RMR, CRR, CPE
    Official Reporter, U.S. District Court

25