Jeffrey Tsai (SBN 226081)
 *jeff.tsai@us.dlapiper.com*
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:  (415) 615-6055

Darryl Louis Tarver (*admitted pro hac vice*)
 *darryl.tarver@us.dlapiper.com*
DLA PIPER LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel: (410) 580-4123

*Attorneys for Defendant Sheng Thao*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG,<br><br>              Defendants. | Case No. 4:25-CR-3-YGR<br><br>**DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  February 19, 2026<br>Time: 9:00 a.m.<br>Judge: The Hon. Yvonne Gonzalez Rogers |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 19, 2026, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 (4th Floor) of the above-entitled court, located at 1301 Clay Street, Oakland, California 94612, Defendant Sheng Thao, by and through her attorneys of record, will and hereby does respectfully (1) move the Court for an order suppressing all evidence seized pursuant to the search warrant signed on June 14, 2024, by U.S. Magistrate Judge Kandis Westmore; and (2) join Defendant David Duong's motion seeking an order granting a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 165 (1978), regarding material misrepresentations and/or omissions in the search warrant affidavit sworn on June 14, 2024, before Judge Westmore (ECF No. 119).[1]

This motion and joinder is based upon this Notice of Motion and Motion and Joinder, the accompanying Memorandum of Points and Authorities and Declaration of Darryl Louis Tarver, and all papers and pleadings filed in this action, and any other evidence and argument as by be properly before the Court at any hearing on the Motion and Joinder.

Dated:  December 4, 2025                    Respectfully submitted,

                                           DLA PIPER LLP (US)

                                      By:  /s/ Jeffrey Tsai
                                           JEFFREY TSAI
                                           DARRYL LOUIS TARVER
                                           *Attorneys for Defendant Sheng Thao*

---

[1] David Duong's motion inadvertently refers to the date of the search warrant affidavit (ECF No. 119, at 3) as "June 14, 2025."

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 3

    A.    The Government's Investigation and the Alleged Scheme ...................................3

    B.    The June 2024 Affidavit's Reliance on Information from Chief Cooperator ........4

        1.    The affidavit's allegation about an October 7, 2022 meeting. ..................5

        2.    Chief Cooperator's March 26, 2023 Apple Note. .....................................6

        3.    Chief Cooperator's unsigned "Letter of Interest" attributed to Ms. Thao..6

        4.    Chief Cooperator's expressed doubts about Ms. Thao's alleged commitment..............................................................................................7

    C.    Material Omissions Related to Chief Cooperator's Credibility and Trustworthiness .................................................................................................7

        1.    Chief Cooperator's long history of legal issues. .......................................7

        2.    Chief Cooperator's documented racial animus. .........................................9

III. LEGAL STANDARD .................................................................................... 10

IV. ARGUMENT ................................................................................................. 11

    A.    Ms. Thao is Entitled to a Franks Hearing Because the Agent's Search Warrant Affidavit Contained Intentional and Reckless Omissions of a Material Nature ....................................................................................................11

    B.    The Affidavit Lacks Probable Cause to Support the Search of Ms. Thao's Residence, Vehicle and Person ..........................................................................13

        1.    The affidavit lacks probable cause that Ms. Thao was a member of the alleged bribery scheme. ..................................................................13

        2.    The affidavit lacks probable cause that evidence of the alleged bribery scheme would be found in Ms. Thao's residence or vehicle. ......16

        3.    The Leon exception does not apply because the absence of probable cause was readily apparent to any reasonable agent. ..............................18

V. CONCLUSION ................................................................................................ 19

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

Franks v. Delaware,
    438 U.S. 154 (1978) ......................................................................*passim*

5

6

Georgia v. Randolph,
    547 U.S. 103 (2006) ........................................................................ 16

7

8

Kamakana v. City & Cty. of Honolulu,
    447 F.3d 1172 (9th Cir. 2006) ........................................................... 1

9

United States v. Carlton,
    No. 3:23-CR-00094-SLG-MMS-1, 2025 LX 37393 (D. Alaska Feb. 18, 2025) .................. 18

10

United States v. Hall,
    113 F.3d 157 (9th Cir. 1997) ......................................................... 12, 13

11

12

United States v. Hove,
    848 F.2d 137 (9th Cir. 1988) .............................................................. 18

13

United States v. Leon,
    468 U.S. 897 (1984) ........................................................... 10, 17, 18

14

15

United States v. Luong,
    470 F.3d 898 (9th Cir. 2006) .............................................................. 18

16

United States v. Martinez Garcia,
    397 F.3d 1025 (9th Cir. 2005) ............................................................. 11

17

18

United States v. Napier,
    436 F.3d 1133 (9th Cir. 2006) ............................................................ 10

19

20

United States v. Perkins,
    850 F.3d 1109 (9th Cir. 2017) ............................................................ 10

21

22

United States v. Ramos,
    923 F.2d 1346 (9th Cir. 1991), overruled on other grounds by United States v. Ruiz, 257 F.3d
    1030 (9th Cir. 2001) ...................................................................... 16

23

24

United States v. Underwood,
    725 F.3d 1076 (9th Cir. 2013) ............................................................ 17

25

26

United States v. Weber,
    923 F.2d 1338 (9th Cir. 1990) ............................................................ 17

27

28

1

**Other Authorities**

2     U.S. Const. Amendment IV ............................................................................................... 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendant Sheng Thao, through her counsel, hereby and respectfully moves the Court for an order suppressing all fruits of the search of Ms. Thao's residence, vehicle, and person on June 20, 2024, on the basis of material misrepresentations and/or omissions in the search warrant affidavit sworn on June 14, 2024, before Magistrate Judge Kandis Westmore (hereinafter "June 2024 Search Warrant").

Ms. Thao also respectfully joins David Duong's motion seeking an order granting a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 165 (1978). <u>See</u> ECF No. 119.

## I.    <u>INTRODUCTION</u>

This case is built on the accusations proffered by a single government cooperator.[2] Neither the Indictment nor the affidavits of the dozens of search warrants produced by the government in discovery refer to a single document by or from Ms. Thao—whether a note, email, text message, or anything else by or from her—showing that she ever agreed to any bribery scheme. Instead, the allegations reflect one individual's attempt to gain clout and riches through a housing development business and fabrication of a partnership with the now-former mayor of Oakland to advance his goal. The entirety of the government's bribery allegations

---

[2] The cooperator is identified in the Indictment only as "Co-Conspirator 1." The government takes the position that the Protective Order (ECF No. 39) in this case restricts disclosure of this individual's identity. Due to the lack of agreement with the government as to this issue, the instant motion will not publicly identify this individual by name (and instead anonymizes his identity through the more accurate pseudonym "Chief Cooperator") out of an abundance of caution.

However, the Protective Order does not, in fact, restrict the use of Chief Cooperator's identity. In fact, it specifically contemplates that an individual's name is <u>not</u> "Protected Information" for purposes of the order. <u>See id.</u> at 2:4-7 (stating that "Personal Identifying Information of any individual [] <u>other than his or her name</u>[]" constitutes "Protected Information") (emphasis added). Moreover, there is no legal justification to pseudonymize Chief Cooperator's identity—and, in fact, the weight of Ninth Circuit authority heavily tilts in favor of public disclosure, just as with the very Indictment in this case and its inflammatory allegations. <u>See, e.g.</u>, <u>Kamakana v. City & Cty. of Honolulu</u>, 447 F.3d 1172, 1178 (9th Cir. 2006) (recognizing the "strong presumption of in favor of access" by the public to court documents and information absent a showing of "compelling reasons" to seal the record). Here, the government cannot articulate any compelling reason to seal Chief Cooperator's identity.

against Ms. Thao turns on Chief Cooperator, and it was the information supplied by Chief Cooperator that served as the probable-cause basis for the June 2024 Search Warrant.[3]

But, in relying on Chief Cooperator for its probable cause, the government made multiple material omissions in its warrant application directly bearing on Chief Cooperator's veracity and credibility—and which would have undermined the very foundation for the June 2024 Search Warrant. The government's conduct was not a mistake. Indeed, the government has long known about the extraordinary breadth of Chief Cooperator's criminal and civil legal problems. In fact, while he sat for his first proffer with the government in 2024, Chief Cooperator was at that time facing state criminal charges based on conduct he then counter-attacked into an alleged bribery conspiracy involving his enemies, which in turn persuaded the government to pursue what ultimately led to the Indictment in this case.

But Chief Cooperator's credibility problems go well beyond his incentive to point the finger at others in this case for a scheme that he concocted. There are public records concerning a shockingly long history of criminal charges and civil disputes stemming from fraudulent acts and a habitual practice of failing to honor financial and legal obligations. The FBI agent intentionally (or recklessly) failed to describe most of these incidents in his June 2024 Search Warrant affidavit to Judge Westmore—instead, the agent summarized (and minimized) a select-few in a single discrete footnote. Critically, the agent also intentionally concealed from Judge Westmore direct evidence of Chief Cooperator's racial bias against Ms. Thao's longtime domestic partner Andre Jones, who is also a defendant in this case.

As a result of the government's intentional and reckless omissions, all evidence seized from the June 2024 Search Warrant should be suppressed. At a bare constitutional minimum,

---

[3] On June 20, 2024, federal agents conducted a broad daytime raid of the residence, vehicle, and person of Sheng Thao, who was at the time the mayor of the City of Oakland. As a result of the search, federal agents seized numerous electronic devices, along with other personal and official items. The government justified its search with a FBI special agent's sworn affidavit alleging that Ms. Thao was part of a bribery scheme in which she supposedly agreed to perform official acts upon becoming mayor, including most notably the purchase of housing units by the City of Oakland.

1  however, Ms. Thao is entitled to a <u>Franks</u> hearing in order to cross-examine the agent about the

2  material omissions regarding Chief Cooperator and she joins David Duong's motion.

3          Independent of the suppression issues stemming from the government's material

4  omissions, the government's affidavit also failed to allege with any (much less sufficient)

5  particularity that evidence of the alleged scheme would be found in Ms. Thao's residence or

6  vehicle. The evidence submitted in support of the government's search—consisting entirely of

7  hearsay statements by Chief Cooperator—lacks <u>any</u> nexus whatsoever with Ms. Thao's

8  residence or vehicle. As a result, any and all evidence seized during those searches must be

9  suppressed on this independent basis.

10                    **II.    FACTUAL BACKGROUND**

11  **A.    The Government's Investigation and the Alleged Scheme**

12          This case arises from allegations of a public corruption scheme made during another

13  government investigation of Chief Cooperator for failing to pay for a political mailer. <u>See</u>

14  Declaration of Darryl Louis Tarver ("Tarver Decl.") Ex. 1 (June 14, 2024, Affidavit of Duncan

15  Haunold) ¶¶ 24-25. The investigation of Chief Cooperator began with a report by "Victim 1,"[4]

16  who claimed that Chief Cooperator failed to pay the postage for mailers that were printed with

17  negative statements about candidates in the November 2022 mayoral election. <u>Id.</u> Ex. 1 ¶ 25.

18  During its investigation of Chief Cooperator, the government obtained information about Chief

19  Cooperator's involvement in a number of bribery schemes and attempts involving public

20  officials and political candidates in and around Oakland. <u>Id.</u> Ex. 1 ¶ 30 n.2 (alleging Chief

21  Cooperator's participation in "various other criminal schemes" including "bribery of other

22  public officials beyond the scheme covered in this affidavit").

23          The government obtained information from Chief Cooperator's Apple iCloud account in

24  furtherance of its investigation. <u>Id.</u> Ex. 1 ¶ 25. Then, the government sought and obtained

25  warrants to authorize other searches, including searches of Apple iCloud information from nine

26  separate electronic accounts belonging to several other individuals, including Ms. Thao and the

27  ───────────────

28          [4] Victim 1's name is omitted from the affidavit.

                                            3

other defendants in this case.[5] <u>See</u> <u>id.</u> Ex. 2 ¶ 1.

Based on the information obtained in its investigation, the government alleges that Defendants Andy Duong and David Duong (referred to collectively herein as the "Duongs") and Chief Cooperator conspired to solicit Ms. Thao's agreement to perform certain official acts if she was elected Oakland mayor. <u>Id.</u> Ex. 1 ¶ 24; <u>see also</u> ECF No. 1. The government alleges that those official acts included the purchase of housing units from an affordable housing company called Evolutionary Homes in which the Duongs and Chief Cooperator were affiliated. <u>Id.</u> In exchange for the supposed agreement from Ms. Thao, the Duongs and Chief Cooperator agreed to fund a negative mailer campaign and make direct financial payments to Defendant Andre Jones, Ms. Thao's longtime domestic partner. <u>Id.</u> Ex. 1 ¶ 20, 24.

**B.    The June 2024 Affidavit's Reliance on Information from Chief Cooperator**

On June 14, 2024, Judge Westmore issued the warrant to search Ms. Thao's residence and vehicle. <u>Id.</u> Ex. 3. During the June 2024 search, federal agents seized numerous electronic devices, documents and other items belonging to Ms. Thao, both personally and in her capacity as mayor of Oakland. FBI Special Agent Duncan Haunold submitted a sworn affidavit in support of the warrant, which was also submitted in support of warrants to search several of the Duongs' places of business and their personal homes and vehicles. <u>Id.</u> Ex. 1 ¶ 1.

The agent's affidavit relied heavily on statements from Chief Cooperator and information from Chief Cooperator's Apple iCloud account. <u>Id.</u> ¶ 25-26. The agent also cited checks deposited into Mr. Jones's checking account from Evolutionary Homes in October 2022, December 2022, April 2023 and November 2023. <u>Id.</u> ¶ 27. The government alleges these checks were payments in exchange for Ms. Thao's supposed agreement to purchase housing units from

---

[5] As to Ms. Thao, those warrants include a February 2024 warrant for her Apple iCloud accounts and a May 2024 warrant for her Google account. However, the warrants authorize the search and seizure of evidence outside of the date range for which the government proffered any probable-cause facts. <u>See, e.g.</u>, Tarver Decl. Ex. 2 ¶¶ 32-84 (alleging facts relevant to Ms. Thao between October 2022 and April 2023). <u>See, e.g.</u>, <u>In re Search of Google Accounts identified in Attachment A</u>, 92 F. Supp. 3d 944, 952-53 (D. Alaska 2015); <u>United States v. Lofstead</u>, 574 F. Supp. 3d 831, 843 (D. Nev. 2021). Thus, these additional warrants would merit suppression.

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

Evolutionary Homes on behalf of the City of Oakland. <u>Id.</u> ¶ 27. Chief Cooperator provided this explanation for the checks during a meeting he had with the government on June 6, 2024, pursuant to a proffer agreement. <u>Id.</u> ¶ 30.

Despite the government's possession of the contents from multiple electronic accounts used by Ms. Thao, the affidavit fails to provide documentary evidence of any statements by Ms. Thao proving her involvement in the alleged corruption scheme. Instead, the agent relies largely on communications between Chief Cooperator and others, supplemented by Chief Cooperator's statements <u>about</u> Ms. Thao's involvement.

Below are examples of these communications and related allegations:

**1.      The affidavit's allegation about an October 7, 2022 meeting.**

The agent alleges that Ms. Thao—as a mayoral candidate—met with Chief Cooperator on October 7, 2022, based on October 5, 2022, text messages between the two discussing a plan to meet that upcoming Friday. <u>Id.</u> Ex. 1 ¶ 47-48. Chief Cooperator did not remember such a meeting taking place on October 7. <u>Id.</u> Ex. 1 ¶ 55. Nevertheless, the agent concludes that Ms. Thao and Chief Cooperator laid out the terms of the corruption scheme at that meeting. <u>Id.</u> Ex. 1 ¶¶ 52-53.

According to the agent, the scheme is outlined in a note-to-self found in Chief Cooperator's Apple iCloud account called "To do :: October :: 2022." <u>Id.</u> Ex. 1 ¶ 49. The note references a "1:30 Meeting with Sheng Thao," "Help on Mayoral Race," "IE against Ignacio," "Evolutionary Homes LLC," and "100 Units bought / Andre get a job for $300k per year." <u>Id.</u> Ex. 1 ¶ 49. Based on Chief Cooperator's June 6 proffer meeting, the agent concludes that this was a list of topics discussed with Ms. Thao related to a bribery scheme. <u>Id.</u> Ex. 1 ¶ 50. But the note was created on September 30, 2022—several days <u>before</u> Ms. Thao and Chief Cooperator ever exchanged messages about a meeting—and was last modified on November 7, 2022. <u>Id.</u> Ex. 1 ¶ 49.

The agent also refers to an October 7, 2022, text message exchange between Chief Cooperator and Andy Duong in which Chief Cooperator tells Andy that Ms. Thao "will buy 100 units" with "one catch:" "300k contract." <u>Id.</u> Ex. 1 ¶ 53. Chief Cooperator's statements from the

5

Apple Note, the text messages with Andy Duong, and the June 6, 2024, proffer are the sole

evidence in the affidavit supporting Ms. Thao's commitment to these terms on October 7, 2022.

### 2.    Chief Cooperator's March 26, 2023, Apple note.

The affidavit also references a March 26, 2023, Apple note from Chief Cooperator's

iCloud account entitled "Deal Points for Sheng Thao :: Election :: Post Election ::" which Agent

Haunold alleges was created and last modified on March 26, 2023. Id. Ex. 1 ¶ 90. The note does

not coincide with any alleged meeting or contact between Chief Cooperator and Ms. Thao, who

was then mayor of Oakland. Nevertheless, the agent concludes, based on Chief Cooperator's

proffer, that this note reflects the "original 'deal'" between Chief Cooperator, the Duongs, Mr.

Jones and Ms. Thao. Id. Ex. 1 ¶ 91.

Among other purported details, the note mentions "We will invest $75k cash to hit

voters with mailers – CWS" and other actions "For:"

> The purchase of 300 of our modular units at a price point of $300,000 each FOB
> at Oakland

> AJ will be part of development team paid $300k flat on sale of units – contract
> maybe renew for other clients

> We will get a 10 year extension for CWS from Mayor staff

> We will get land deal at Army base done from Mayor staff

> One appointment to Port of Oakland commission

> Appointments to 1. Public Works 2. Building and Permits 3. Housing and 4. City
> administrators office

Id. Ex. 1 ¶ 90. The agent alleges this note was shared and discussed with Andy Duong, but he

does not allege Ms. Thao ever saw the note, reviewed the note, or otherwise evidenced an

agreement to it. Id. Ex. 1 ¶ 92. The agent also concedes that none of the purported terms

described above were carried out by Ms. Thao or her staff. Id. Ex. 1 ¶¶ 93, 138.

### 3.    Chief Cooperator's unsigned "Letter of Interest" attributed to Ms. Thao.

The agent also alleges that on March 4, 2023, Chief Cooperator sent Andy Duong a

Microsoft Word document entitled "letter of interest by city of Oakland for 300 units to

evolutionary homes." Tarver Decl. Ex. 1 ¶ 79. This letter, which Chief Cooperator authored

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

1   with Ms. Thao's name, purported to set forth Ms. Thao's intention for Oakland to purchase a

2   "minimum of 300 units of housing" from Evolutionary Homes. Id. During his June 6, 2024,

3   proffer with the government, Chief Cooperator claimed he was hoping Ms. Thao would sign the

4   letter. Id. Ms. Thao never signed the letter, and there is no allegation that it was ever provided to

5   her. Id. Ex. 1 ¶¶ 80, 138.

6       **4.    Chief Cooperator's expressed doubts about Ms. Thao's alleged commitment.**

7       Though the agent alleges that Ms. Thao promised as early as October 2022 to perform

8   official acts, Chief Cooperator expressed concerns nearly a year later (in September 2023) that

9   "[Ms. Thao] is fucking with us" and never planned to deliver the objects of the alleged scheme,

10  namely the purchase of the housing units from Evolutionary Homes. Id. Ex. 1 ¶ 116. The agent

11  alleges that by as of March 2023, the amount to be paid to Mr. Jones (ostensibly for Ms. Thao's

12  benefit) was $10,000 per unit sold, or $3 million if the City of Oakland was committed to

13  purchasing a minimum of 300 units as alleged. Id. ¶ 105. Despite this large financial incentive,

14  Chief Cooperator expressed doubts about whether Ms. Thao would conduct the purchase on

15  behalf of the City of Oakland, and the purchase was never completed. Id. ¶ 93.

16  **C.    Material Omissions Related to Chief Cooperator's Credibility and Trustworthiness**

17      Though he serves as the main source of information cited in the agent's affidavit, Chief

18  Cooperator's history of credibility issues is extensive. In a purposeful attempt to minimize a

19  staggering background of fraudulent activities over the course of multiple decades, the

20  government instead dropped a brief and discrete footnote acknowledging only a misleading

21  portion of this history. Id. Ex. 1 ¶ 30 n.2. However, the omissions reflect a history of lying to

22  escape consequences for debts and other legal problems, as well as racial bias directly related to

23  at least one of the defendants in this case. Id. Exs. 4-13.

24      **1.    Chief Cooperator's long history of legal issues.**

25      The government launched its investigation into Chief Cooperator based on Victim 1's

26  report that Chief Cooperator failed to pay the postage for campaign mailers. Tarver Decl. Ex. 1

27  ¶¶ 32-34. Agent Haunold further admits that Chief Cooperator was facing state charges in

28  connection with his failure to pay for the mailers (which were still pending at the time of the

7

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

June 14, 2024, affidavit) when Chief Cooperator proffered information about the alleged bribery scheme among the Duongs, Mr. Jones and Ms. Thao. Id. ¶¶ 30 n.2, 33.

Chief Cooperator's legal issues go back three decades, to at least 1996. Id. ¶ 30, n.2. Agent Haunold acknowledges that Chief Cooperator has since then been the subject of at least five criminal charges, including battery, grand theft and embezzlement, among others. Id. However, the affidavit falls well short of addressing the totality of Chief Cooperator's history of criminal and civil legal issues. Agent Haunold specifically failed to address several episodes that would have starkly called Chief Cooperator's credibility into question:

- **Grand Theft and Forgery.** Chief Cooperator was charged with felony grand theft and forgery in connection with a 2012 real estate transaction that he brokered as a licensed agent. See id. Ex. 4 at 6. The California Department of Real Estate investigated the transaction and found that Chief Cooperator had ripped off the tenant by having him pay a $21,000 security deposit and a broker's fee of $10,000, while Chief Cooperator gave the landlord a check of $7,000 and kept the rest of the tenant's payment for himself. Id. Ex. 5. Chief Cooperator voluntarily surrendered his real estate license in 2015. Id. Ex. 6. Chief Cooperator resolved the criminal case against him by pleading no contest to a misdemeanor in 2016, and he was separately ordered to pay $23,000 to the tenant. Id. Ex. 7.

- **Fraudulent Real Estate License Representation.** When he made a political campaign donation in 2018, Chief Cooperator listed "real estate broker" on the campaign disclosure form, despite his surrender of his real estate license in 2015. Id. Ex. 8. Remarkably, Agent Haunold describes Chief Cooperator as the CEO of a real estate business but fails to disclose either Chief Cooperator's surrender of his real estate license or his documented history of fraud, theft and other dishonesty in connection with real estate deals. Id. Ex. 1 ¶ 16.

- **Fraudulent Real Estate Sales Representation.** In 2006, buyers in a real estate sale brokered by Chief Cooperator sued Chief Cooperator and one of his companies accusing Chief Cooperator of "intentionally, willfully, maliciously, recklessly and unreasonably" failing to disclose defects in the property. Id. Ex. 9. Chief Cooperator reached a settlement in the case in 2008. Id. Ex. 10 at 2 (noting "Plaintiff has recently settled with [Chief Cooperator]").

- **Fraudulent Check Writing.** During his brief stint as a music promoter, Chief Cooperator was accused of bouncing a $20,000 check for travel expenses for one of his bands and making an unauthorized purchase of 53 music festival tickets using the credit card of a real estate broker. Id. Ex. 11.

- **Fraudulent Check Writing.** In January 2024, the former Alameda County District Attorney charged Chief Cooperator with fraud in connection with the bounced checks he provided in connection with the mailers targeting candidates in the November 2022 election. Id. Ex. 12. In response to the charges, Chief

8

1   Cooperator accused the former District Attorney of corruption and vindictive
2   prosecution. Id. Chief Cooperator's allegations regarding the former District
    Attorney were never proven, and at the time of the June 2024 search warrant, the
3   Alameda County District Attorney's charges against Chief Cooperator remained
    pending. Id. Ex. 1 ¶ 30 n.2.

4   Not a single one of the aforementioned incidents (nor the incidents described in David Duong's

5   motion) were recounted in Agent Haunold's affidavit despite being publicly available to the

6   government (and anyone with access to the Internet).

7       **2.      Chief Cooperator's documented racial animus.**

8       In addition to Chief Cooperator's long history of civil and criminal misconduct, the

9   government's evidence in this case reflects Chief Cooperator's affirmative expression of racial

10  bias against Mr. Jones, a black man. The agent's affidavit specifically omitted a text message in

11  a string of messages that is plainly and demonstrably racially biased. In the March 26, 2023, text

12  message string between Chief Cooperator and Andy Duong, the agent intentionally and

13  conspicuously removed the racially offensive statement by replacing it with convenient ellipses

14  ("..."), as shown below.[6]

15

16  

17

18

19

20

21

22  Id. Ex. 1 ¶ 88.

23      However, the evidence produced by the government in discovery reveals the material

24  omission (shown below in bold emphasis) that the agent concealed from Judge Westmore:

25      CHIEF COOPERATOR: AJ wants direct access ton$$

26

27  ───────────────
        [6] Chief Cooperator's identity has been redacted out of an abundance of caution, but there
28  is no legal or factual justification for redaction or sealing of such information. See supra n.2.

                                                    9

1    CHIEF COOPERATOR: Thinks it works like that

2    CHIEF COOPERATOR: When we put the plans together for $ and otherwise

3    **CHIEF COOPERATOR: Stupid black shit**

4    **CHIEF COOPERATOR: Don't think how things get done**

5    A. DUONG: Well he wants that access better get to work

6    CHIEF COOPERATOR: I feel sure David will back us up

7    A. DUONG: Aint nothing free or front cuz we did all that to help her ass win

8    Id. Ex. 13 (emphasis added).

9    ### III.    LEGAL STANDARD [7]

10    Under the Fourth Amendment, "no warrants shall issue, but upon probable cause,

11    supported by oath or affirmation, and particularly describing the place to be searched, and the

12    persons or things to be seized." U.S. Const. Amend. IV. The warrant affidavit "must set forth

13    particular facts and circumstances … so as to allow the magistrate to make an independent

14    evaluation of the matter." United States v. Perkins, 850 F.3d 1109, 1116 (9th Cir. 2017)

15    (quoting Franks, 438 U.S. at 165). Although evidence "obtained in objectively reasonable

16    reliance on a subsequently invalidated search warrant" does not warrant suppression, an

17    affidavit "so lacking in indicia of probable cause as to render official belief in its existence

18    entirely unreasonable" means that there can be "no reasonable grounds for believing that the

19    warrant was properly issued[.]" United States v. Leon, 468 U.S. 897, 922 (1984). In that

20    situation, suppression is necessary. Id.

21    With respect to the factual showing to constitute probable cause, the "obvious

22    assumption is that there will be a truthful showing." Franks, 438 U.S. at 164-65 (citation

23    omitted) (emphasis in original). A defendant challenging a warrant's validity by questioning the

24    fundamental truthfulness of the factual statements made in the supporting affidavit is entitled to

25    a Franks evidentiary hearing once she makes a substantial preliminary showing that (1) "the

26

27    ---
    [7] Ms. Thao adopts and incorporates the legal standard set forth in David Duong's

28    memorandum and therefore includes a shortened version herein. See ECF No. 119 at 8-11.

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR FRANKS HEARING; MPA
CASE NO. 4:25-CR-3-YGR

affiant officer intentionally or recklessly made false or misleading statements or omissions in

support of the warrant" and (2) "the false or misleading statement or omission was material, i.e.,

necessary to finding probable cause." See United States v. Perkins, 850 F.3d 1109, 1116 (9th

Cir. 2017) (citation omitted). A district court's denial of a motion seeking a Franks hearing is

reviewed de novo. See United States v. Napier, 436 F.3d 1133, 1136 (9th Cir. 2006).

At a Franks hearing, the court considers evidence to determine if the defendant can

establish perjury or reckless disregard by a preponderance of the evidence. Franks, 438 U.S. at

155-56; United States v. Martinez Garcia, 397 F.3d 1025, 1214-15 (9th Cir. 2005). Suppression

of all fruits of the search is appropriate if the defendant establishes that the affidavit is

insufficient to establish probable cause after the court disregards the false material. Id.

## IV.    ARGUMENT

### A.    Ms. Thao is Entitled to a Franks Hearing Because the Agent's Search Warrant Affidavit Contained Intentional and Reckless Omissions of a Material Nature

Ms. Thao joins in David Duong's motion for a Franks hearing (ECF No. 119 at 11-20).

Based on the affidavit, Ms. Thao can make a substantial preliminary showing that Agent

Haunold intentionally and recklessly omitted material information from Judge Westmore. As

such, she is entitled a Franks hearing.

First, Agent Haunold intentionally omitted significant information about Chief

Cooperator's significant history of dishonesty. See, e.g., id. at 12-13 (citing 33 lawsuits filed

against Chief Cooperator, including fraud cases involving former business partners and the City

of Oakland). And even as to disclosures that Agent Haunold did make about Chief Cooperator,

they were misleading at best due to the selective and incomplete nature of the disclosures. See,

e.g., id. at 13 (arguing that the affidavit's description of Chief Cooperator as a real estate

business CEO failed to disclose that Chief Cooperator was forced to surrender his real estate

license following fraud allegations by the California Department of Real Estate). Agent

Haunold also concealed from Judge Westmore that Chief Cooperator has a documented

counter-attack history of alleging misconduct by others in response to accusations (and

lawsuits) lodged against him. See, e.g., id. at 21-13 (citing examples in which Chief Cooperator

11

filed a police report against a creditor to whom he owed $210,000 and accused the attorney of a

landlord suing Chief Cooperator of perjury). In one public counter-attack example, Chief

Cooperator responded to check fraud charges filed against him by the Alameda County District

Attorney's Office by accusing the now-former district attorney of soliciting a bribe. See Tarver

Decl. Ex. 11. That the accusation is both unproved and uncorroborated has been an irrelevant

consideration to Chief Cooperator's counter-attack history. And while Agent Haunold disclosed

the Alameda County criminal charges as "currently pending," he intentionally—or, at a

minimum, recklessly—misled Judge Westmore by failing to disclose Chief Cooperator's

documented pattern of lodging counter-accusations against his perceived enemies.

In addition to the omissions set forth in David Duong's Franks motion (ECF No. 119),

the government also intentionally concealed evidence of Chief Cooperator's documented racial

animus against one of the defendants in this case. Agent Haunold knew this when he swore to

his affidavit, but he intentionally excluded it (likely due to the impact such evidence would bear

on Chief Cooperator's believability). In quoting a text-message string between Chief

Cooperator and Andy Duong, Agent Haunold surgically concealed (via an in-text ellipses) two

specific lines of racially derogatory statements by Chief Cooperator ("Stupid black shit"

followed by "Don't think how things get done") (Tarver Decl. Ex. 13, at 2)—which can only be

explained as an effort to preserve Chief Cooperator's credibility by hiding any evidence of race-

based bias. As a result of Agent Haunold's intentional omissions, his affidavit's interpretations

of the meaning of the text message statements (id. Ex. 1 ¶ 89) did not reveal Agent Haunold's

"belie[f]" of what Chief Cooperator was referencing with his "Stupid black shit" slur and

"Don't think how things get done" insult. But there can be no dispute that the meaning is

anything other than a race-bias motivation.

Second, the numerous omissions are material because they speak directly to Chief

Cooperator's veracity and habitual tendency to fabricate, as well as to some kind of racial

animus motivating Chief Cooperator's allegations. Issues of credibility are plainly relevant to

the believability of information in this circumstance. See, e.g., United States v. Hall, 113 F.3d

157, 161 (9th Cir. 1997) (affirming suppression of a warrant when "the FBI knew more about

the informant, information which entirely disclosed his credibility, and did not disclose it"). Had the omissions here been properly disclosed, they would have changed the complexion of the probable-cause analysis for Judge Westmore because the government's probable cause—whether in the form of Chief Cooperator's statements to the government or his documents—inextricably relied on the believability and veracity of Chief Cooperator. Underscoring this point, Agent Haunold's affidavit does not contain even a single citation to a direct statement or document by or from Ms. Thao. See generally Tarver Decl. Ex. 1 ¶¶ 46-127. Instead, each and every link to Ms. Thao comes through the prism and filter of Chief Cooperator.

Without Chief Cooperator, there is no probable cause of any crime committed by Ms. Thao. At a minimum, the evidence of material omissions constitutes a substantial preliminary showing. As a result, Ms. Thao is entitled to a Franks evidentiary hearing.

**B.     The Affidavit Lacks Probable Cause to Support the Search of Ms. Thao's Residence, Vehicle and Person**

      **1.     The affidavit lacks probable cause that Ms. Thao was a member of the alleged bribery scheme.**

Given Chief Cooperator's documented history of untrustworthy statements and conduct, the affidavit lacks probable cause that Ms. Thao participated in an alleged bribery scheme. If an informant is "not worthy of belief," then the information supplied by that informant does "not amount to probable cause." Hall, 113 F.3d 157 (9th Cir. 1997). Moreover, when the "government present[s] no evidence to the magistrate . . . except the word of a man whom it knew had a substantial criminal record," the fruits of the search should be suppressed. Id. at 161. Particularly where, as here, there is no evidence removed from the informant's credibility problems that incriminate the defendant, suppression is appropriate. See id.

First, the agent points to no communications by or from Ms. Thao about the alleged bribery scheme being pushed by Chief Cooperator. This is despite the fact that the government had access to the contents of three of Ms. Thao's iCloud accounts—all of which have failed to yield even a single text, email, note or any other statement allegedly authored by Ms. Thao evidencing bribery as charged here. See generally Tarver Decl. Exs. 1 & 2. Instead, each and every instance of the government's proffered probable cause as to Ms. Thao filters through

13

Chief Cooperator's statements, written words, and sole interpretation. See, e.g., id. Ex. 1 ¶ 30 (relying on Chief Cooperator's statements during his proffer regarding Ms. Thao's involvement in the alleged scheme). And not only does the agent rely on Chief Cooperator's notes-to-self, but the agent also relies on Chief Cooperator's after-the-fact explanations during his proffer about those notes. See, e.g., id. ¶¶ 50 ("In the June 6 interview, [Chief Cooperator] confirmed that this note was a list of topics that were discussed with [Ms. Thao] related to the bribery scheme"), 91 ("I believe the above-described note is a summary created by [Chief Cooperator] of the original 'deal' negotiated between [Chief Cooperator and Defendants]. [Chief Cooperator] confirmed this fact during the June 6 interview.") (emphasis added).

Second, even if these notes could be treated as reliable information in the first instance from a documented truth-teller, they still fail to prove anything more than a bribery scheme constructed by Chief Cooperator and corroborated only by Chief Cooperator—and certainly not the knowing and affirmative involvement of Ms. Thao. Although the agent claims Chief Cooperator's notes memorialize Ms. Thao's agreement to the bribery scheme (again, according to Chief Cooperator), see id. ¶¶ 50, 91, that cannot be true as a pure factual matter. Neither note was created or modified at or near the times of the alleged meetings between Ms. Thao and Chief Cooperator in which there were supposed discussions of the terms of the purported scheme. For instance, the note entitled "1:30 Meeting with Sheng Thao" was created on September 30, 2022 (several days before Chief Cooperator and Ms. Thao even agreed to meet) and last modified on November 7, 2022 (weeks after the alleged meetings on October 7 and 11, 2022). Id. ¶ 49. And the note entitled "Deal Points for Sheng Thao :: Election :: Post Election::" was created on March 26, 2023, weeks after any meeting or communication between Ms. Thao and Chief Cooperator alleged in the affidavit. Id. ¶ 90. Far from establishing that Ms. Thao knowingly and intentionally agreed to terms in connection with some kind of illegal scheme, these notes appear to be Chief Cooperator's own fever-dream ideas about how he could deceive others into believing mayoral candidate Thao was in his pocket. Chief Cooperator clearly wanted others to believe he had an agreement with Ms. Thao, but no such agreement existed in reality—and certainly not an agreement to which Ms. Thao had entered (with Chief Cooperator or otherwise).

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER OF DEFENDANT DAVID DUONG'S MOTION FOR FRANKS HEARING; MPA
CASE NO. 4:25-CR-3-YGR

1    Perhaps one of the most striking examples of Chief Cooperator's lies about Ms. Thao's

2    involvement in any bribery scheme is his sharing of a fake "letter of interest"—purportedly

3    from Ms. Thao—with Andy Duong on March 4, 2023. Chief Cooperator attempted to pass off

4    the letter as coming from Ms. Thao, though he admitted that the letter was unsigned. Id. ¶ 79.

5    More importantly, there is <u>no</u> evidence of any kind that can actually corroborate Ms. Thao ever

6    saw or knew of this letter—it was, at all times, an invention of Chief Cooperator. <u>See id.</u> ¶ 80.

7    Instead, what is quite clear is that Chief Cooperator wanted it to appear as if Mayor Thao had

8    signed off on a letter of interest even though no such thing had happened.

9        <u>Third</u>, the evidence reflects that Chief Cooperator did not harbor an actual belief there

10   was any kind of bribery agreement involving Ms. Thao. Agent Haunold alleges that Chief

11   Cooperator told Andy Duong in October 2022 that Ms. Thao's agreement was "guaranteed." <u>Id.</u>

12   ¶ 53. But nearly a year later, in September 2023, Chief Cooperator himself began to downplay

13   with Andy Duong the idea that there was, in fact, any agreement at all. <u>Id.</u> ¶ 116 ("I got this

14   nagging feeling that Sheng is fucking with us"). This doubt undermines the government's Chief

15   Cooperator-fueled fabrication that a meeting of the minds took place on October 7, 2022.

16       <u>Fourth</u>, the agent acknowledges that <u>none of the purported promises made by Ms. Thao</u>

17   <u>were fulfilled— much less progress or any effort or steps to fulfillment</u>. <u>See id.</u> ¶ 93 (Chief

18   Cooperator confirmed that the city never purchased any of the promised units from

19   Evolutionary Homes). Chief Cooperator's Apple note entitled "Deal Points for Sheng Thao::

20   Election :: Post Election::" contemplated that the mayor would agree to cause the City of

21   Oakland to purchase 300 housing units from Evolutionary Homes, but that never happened. <u>Id.</u>

22   ¶ 90. Chief Cooperator's note also contemplated that the mayor's staff would "get a land deal at

23   Army base done," but there is no evidence that ever happened. <u>Id.</u> 93. According to the

24   government's theory, <u>Ms. Thao and Mr. Jones would have received $3 million if she had</u>

25   <u>fulfilled these promises she made to the conspiracy</u>. <u>See id.</u> ¶ 98 (the alleged agreement

26   indicates that Jones would receive a $10,000 bonus per unit sold, and the alleged deal was for

27   the city to purchase a minimum of 300 units). Yet, the agent makes no allegation that Ms. Thao

28   even made progress toward fulfilling these alleged commitments. That is because there's no

15

1    evidence she agreed to them beyond the unverifiable word of Chief Cooperator.

2            The affidavit fails to meet its burden to show probable cause that Ms. Thao committed

3    any crime.

4        **2.    The affidavit lacks probable cause that evidence of the alleged bribery
            scheme would be found in Ms. Thao's residence or vehicle.**

5

6            With or without Chief Cooperator's unreliable statements, the affidavit still fails to

7    establish probable cause that evidence of the alleged scheme would be found in Ms. Thao's

8    residence or vehicle. "[I]t is beyond dispute that the home is entitled to special protection as the

9    center of the private lives of our people[.] … We have, after all, lived our whole national history

10   with an understanding of 'the ancient adage that a man's house is his castle[.]'" Georgia v.

11   Randolph, 547 U.S. 103, 115 (2006) (internal alterations and citations omitted). Accordingly,

12   "probable cause to believe that a suspect has committed a crime is not by itself adequate to

13   secure a search warrant for the suspect's home." United States v. Ramos, 923 F.2d 1346, 1351

14   (9th Cir. 1991) (citations omitted), overruled on other grounds by United States v. Ruiz, 257

15   F.3d 1030 (9th Cir. 2001). Instead, "there must exist reasonable cause to believe that the things

16   listed as the objects of the search are located in the place to be searched." Id.

17           Here, the government fails to make the particularized showing required to justify the

18   searches of Ms. Thao's home or vehicle. The government claims the conspiracy was formed

19   through electronic communications and a series of meetings. See Tarver Decl. Ex. 1 ¶¶ 46-117.

20   But none of the alleged conduct is purported to have taken place at Ms. Thao's residence. See

21   id. Lacking any evidence of a nexus between the alleged scheme and Ms. Thao's residence, the

22   agent resorts to generic and boilerplate allegations purporting to be based on the agent's

23   "training, investigative experience, and discussions with other law enforcement officers." Id.

24   Ex. 1 ¶ 157.[8] The next several paragraphs of the affidavit purport to describe general tendencies

25   _____

26       [8] The agent states that he has been employed with the FBI since June 2021, approximately
     three years before the affidavit was sworn. Tarver Decl. Ex. 1 ¶ 4. The agent's three years of
27   experience include his training at the FBI Academy in Quantico, Virginia. Id. The agent does not
     specify how many public corruption investigations he has led or participated in to inform the
28   "training [and] investigative experience" on which he so heavily relies. Id. ¶¶ 157-65.

of "individuals like [Defendants] and other who are involved in bribery schemes." Id. ¶¶ 157-65. These appear to be copied and pasted from another affidavit because they rely on language that has nothing to do with this case or any of the defendants. For example, the agent claims that "[i]ndividuals like [Defendants]" maintain "photographs of items relevant to their schemes or trophy-shots of ill-gotten gains," when there is no allegation that any defendant in this case has either of these things. Id. ¶ 158.

Copy-pasted boilerplate paragraphs like these miss the mark to establish probable cause. See United States v. Weber, 923 F.2d 1338, 1345 (9th Cir. 1990) (rejecting warrant's reliance on "rambling boilerplate recitations designed to meet all law enforcement needs" that were not "drafted with the facts of this case or this particular defendant in mind"); United States v. Underwood, 725 F.3d 1076, 1084 (9th Cir. 2013) (rejecting warrant's reliance on "conclusory allegations" that did not include "underlying facts that the issuing judge may use to evaluate the affiant's reasoning or to draw his or her own inferences"). Boilerplate paragraphs are insufficient because they lack particularity and could be applied to any individual. See Weber, 923 F.2d at 1338 (affirming suppression of warrant in light of boilerplate justifications in the affidavit which "would [] justify virtually any search of the home of any person" suspected of a crime at any time). Particularly where, as here, there is a tenuous connection between the alleged crime and the individual whose privacy rights are at stake, generalized and speculative allegations of the evidence to be found in the home are inadequate. See, e.g., Underwood, 725 F.3d at 1082 (affirming suppression of a warrant based on an affidavit that included limited facts "foundationless expert opinion, and conclusory allegations").

The affidavit lacks any particularized facts indicating any basis (whether due to probable cause, good faith, or otherwise) justifying searches of Ms. Thao's residence and vehicle. Other than attracting extraordinary media attention through its daytime raid at her Oakland home in late June 2024 and fueling a moribund recall-election effort, the search of Ms. Thao's residence and vehicle plainly constituted government overreach without any legal justification. As such, evidence seized from the search must be suppressed.

### 3.    The <u>Leon</u> exception does not apply because the absence of probable cause was readily apparent to any reasonable agent.

The government also cannot rely on the <u>Leon</u> exception, which requires that the agents acted reasonably and in good faith. When law enforcement agents obtain evidence "in objectively reasonable reliance on a subsequently invalidated search warrant," suppression is not required. <u>Leon</u>, 468 U.S. at 897. But in cases where no factual nexus exists between the place to be searched and the alleged crime, <u>Leon</u> cannot salvage the fruits of the search. <u>See</u>, <u>e.g.</u>, <u>United States v. Hove</u>, 848 F.2d 137, 140 (9th Cir. 1988) (declining to apply <u>Leon</u> where affidavit failed to "offer an explanation of why the police believed they may find incriminating evidence" at defendant's residence); <u>United States v. Luong</u>, 470 F.3d 898, 903-04 (9th Cir. 2006) (declining to apply the good-faith exception where the affidavit "contain[ed] no appreciable indicia of probable cause," including no factual basis linking the suspected methamphetamine activity to the residence to be searched). Also, the agent's concealment of material facts regarding Chief Cooperator's credibility negates a finding that the agent acted in good faith. <u>See United States v. Carlton</u>, No. 3:23-CR-00094-SLG-MMS-1, 2025 LX 37393, at *15 (D. Alaska Feb. 18, 2025) ("A necessary element of a <u>Franks</u> showing is intentionality or recklessness, and either negates the good faith exception.").

Here, the "affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable." <u>Luong</u>, 470 F.3d at 902 (quoting <u>Leon</u>, 468 U.S. at 914). In particular, there is a lack of any factual nexus whatsoever to Ms. Thao's home or vehicle, and the only allegations related to those locations are boilerplate recitations of what the agent has learned from ambiguous "training, knowledge and experience" about other individuals involved in bribery schemes. <u>See</u> Tarver Decl. Ex. 1 ¶¶ 157-65. Accordingly, the <u>Leon</u> exception does not apply.

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER OF DEFENDANT DAVID DUONG'S MOTION FOR <u>FRANKS</u> HEARING; MPA
CASE NO. 4:25-CR-3-YGR

1

### V. CONCLUSION

For the foregoing reasons, Ms. Thao respectfully (1) joins David Duong's motion for a Franks hearing in connection with the June 2024 premises warrant and (2) moves the Court for an order suppressing the evidence obtained in the June 2024 search of Ms. Thao's residence and vehicle.

Dated:  December 4, 2025                    Respectfully submitted,

DLA PIPER LLP (US)

By:  /s/ Jeffrey Tsai
JEFFREY TSAI
DARRYL LOUIS TARVER
*Attorneys for Defendant Sheng Thao*

DEFENDANT SHENG THAO'S NOTICE OF MOTION AND MOTION TO SUPPRESS AND JOINDER
OF DEFENDANT DAVID DUONG'S MOTION FOR FRANKS HEARING; MPA
CASE NO. 4:25-CR-3-YGR