CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    Abraham.Fine@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG<br><br>    Defendants. | Case No. 25-CR-00003 YGR<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT ANDRE JONES' MOTION FOR SEVERANCE** |

i

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................................1

I.      BACKGROUND ...................................................................................................................2

        A.      The Indictment.........................................................................................................2

        B.      Evidence Expected to be Offered Against Jones and Co-Defendants ....................3

II.     DISCUSSION .......................................................................................................................5

        A.      Severance is a Disfavored Remedy with a High Bar...............................................5

        B.      Jones is Appropriately Joined in an Indictment that Charges Him and His
                Coconspirators and Codefendants with the Same Acts and Transactions ............7

        C.      Jones Also Cannot Meet His Burden of Showing that a Joint Trial with his
                Coconspirators is Unfairly Prejudicial..................................................................11

III.    CONCLUSION ...................................................................................................................15

ii

# Table of Authorities

Page(s)

# Cases

*Hovey v. Ayers*,
  458 F.3d 892 (9th Cir. 2006) ................................................................................................ 14

*United States v. Adams*,
  581 F.2d 193 (9th Cir. 1978) ............................................................................................... 13

*United States v. Adler*,
  862 F.2d 210 (9th Cir. 1988) ............................................................................................... 13

*United States v. Baker*,
  10 F.3d 1374 (9th Cir. 1993) ................................................................................................. 6

*United States v. Charnay,*
  211 F. Supp. 904 (S.D.N.Y. 1962) ........................................................................................ 7

*United States v. Cruz*,
  127 F.3d 791 (9th Cir.1997) .................................................................................................. 7

*United States v. De Bright*,
  730 F.2d 1255, (9th Cir. 1984) .............................................................................................. 5

*United States v. Felix-Guiterrez*,
  940 F.2d 1200 (9th Cir. 1991) .......................................................................................... 8, 10

*United States v. Fernandez*,
  388 F.3d 1199 (9th Cir.2004) ....................................................................................... 6, 7, 14

*United States v. Ford*,
  632 F.2d 1354 (9th Cir. 1980) ......................................................................................... 5, 10

*United States v. Hoelker*,
  765 F.2d 1422 (9th Cir. 1985) ......................................................................................... 9, 10

*United States v. Jenkins*,
  633 F.3d 788 (9th Cir. 2011) ................................................................................................. 6

*United States v. Johnson*,
  820 F.2d 1065 (9th Cir. 1987) ............................................................................................. 13

*United States v. Johnson*,
  2024 WL 1836512 (E.D. Pa. Apr. 26, 2024) ......................................................................... 9

*United States v. Lane*,
  474 U.S. 438 (1986) ............................................................................................................. 10

*United States v. Lim*,
  984 F.2d 331 (9th Cir. 1993) ........................................................................................... 8, 11

*United States v. Marionneaux,*
  514 F.2d 1244 (5th Cir. 1975) ............................................................................................. 10

*United States v. Mariscal*,
  939 F.2d 884 (9th Cir. 1991) ................................................................................................. 5

*United States v. Martin*,
  567 F.2d 849 (9th Cir. 1977) ............................................................................................. 7, 9

*United States v. McDonald*,
  576 F.2d 1350 (9th Cir. 1978) ............................................................................................. 13

*United States v. McLeod*,
  755 F. App'x 670 (9th Cir. 2019) ........................................................................................ 13

*United States v. Moreno*,
  619 F. App'x 308 (9th Cir. 2015) ................................................................................ 14
*United States v. Nordby*,
  225 F.3d 1053 (9th Cir. 2000) ...................................................................................... 6
*United States v. Polizzi*,
  801 F.2d 1543 (9th Cir. 1986) ...................................................................................... 7
*United States v. Prigge*,
  830 F.3d 1094 (9th Cir. 2016) .................................................................................... 13
*United States v. Roselli*,
  432 F.2d 879 (9th Cir. 1970) ................................................................................. 6, 13
*United States v. Sarkisian*,
  197 F.3d 966 (9th Cir. 1999) ........................................................................................ 5
*United States v. Satterfield*,
  548 F.2d 1341 (9th Cir. 1977) .................................................................................. 8, 9
*United States v. Tynes*,
  1996 WL 195108 (10th Cir. 1996) ............................................................................... 9
*United States v. Van Cauwenberghe*,
  827 F.2d 424 (9th Cir. 1987) ........................................................................................ 7
*United States v. Vasquez-Velasco*,
  15 F.3d 833 (9th Cir. 1994) ............................................................................. 6, 11, 12
*Zafiro v. United States*,
  506 U.S. 534 (1993) ...................................................................................................... 6

## Statutes

18 U.S.C. § 371 ................................................................................................................ 3
18 U.S.C. § 666 ................................................................................................................ 3
18 U.S.C. § 666(a)(1)(B) ................................................................................................. 3
18 U.S.C. § 1001 ..................................................................................................... 7, 9, 11
18 U.S.C. § 1001(a)(2) ..................................................................................................... 3
18 U.S.C. § 1341 .............................................................................................................. 3
18 U.S.C. § 1343 .............................................................................................................. 3
18 U.S.C. § 1349 .............................................................................................................. 3

# I.    INTRODUCTION

Eighteen months after the unsealing of the indictment in this case, defendant Andre Jones now moves the Court for a separate trial on the grounds that Jones and the defendant Andy Duong ("A. Duong") were improperly joined in the same indictment, citing Federal Rule of Criminal Procedure 8(b). Jones also moves for a separate trial from A. Doung and David Duong ("D. Duong") on the grounds that he will be unduly prejudiced by a joint trial, and severance is mandated by Rule 14(a). Jones cannot meet his burden to show he is entitled to a separate trial on either ground.

Rule 8(b) is construed liberally to allow defendants to be joined in the same indictment when the allegations involve the same series of acts or transactions, which the Ninth Circuit says requires only a logical relationship between the allegations against the joined defendants. The most significant factor in determining whether allegations involve the same acts or transactions is whether substantially the same evidence will prove the allegations. The extra count that Jones claims requires him to be tried separately from A. Doung is a single false statement count, alleging A. Doung made false statements to the FBI about the payments that Jones received from Evolutionary Homes during the charged conspiracy. There is no question that the proof of these properly joined counts against these two defendants will be substantially the same, and therefore these defendants were properly joined.

Severance of properly joined defendants under Rule 14(a) is an extreme remedy and only justified by undue prejudice from a joint trial that cannot be cured by appropriate limiting instructions. Incriminating evidence against other defendants, or even inflammatory evidence, is not enough to warrant severance. Jones complains about certain evidence of misconduct, lies, and corruption by A. Doung and D. Doung. But he cannot meet his burden of showing manifest prejudice precluding a fair trial and preventing a jury from assessing guilt or innocence, because (1) the categories of evidence he cites will mostly also be admitted if Jones were tried separately as relevant to the conspiracy itself (and certainly if Thao remained his co-defendant at trial), (2) the prejudicial effect to Jones of this evidence of activities by A. Doung and others is overstated, and (3) limiting instructions where appropriate are presumed to be sufficient to prevent such evidence from being improperly used against a defendant. For all these reasons, and based on the legal standards described further below, Jones' motion for severance should be denied.

US OPPOSITION TO MOTION FOR SEVERANCE    1
25-CR-00003 YGR

## I.    BACKGROUND

### A.    The Indictment

The indictment in this case, filed on January 9, 2025, alleges that the four charged individuals participated in a bribery scheme and conspiracy, and the allegations in the indictment make clear that defendant Andre Jones, Sheng Thao's domestic partner, was a key and knowing participant.  Dkt. 1. The bribery scheme involved Oakland businessmen David Duong and Andy Duong giving financial benefits and payments to Thao and Jones in exchange for Thao's promises to take official actions that would benefit the Duongs and their business interests.  *Id.* at 1-2.

The indictment lays out the relationship between the defendants and other co-conspirators and their roles in the conspiracy and scheme.  Thao was an Oakland City Council member who was running for mayor and then was elected mayor in November 2022.  Jones was Thao's longtime romantic partner, and the two lived together in Oakland.  *Id.* at 2.  D. Duong was president of the recycling company that had the contract to provide residential recycling services in Oakland, and the owner and primary investor in a modular housing company formed in 2022.  A. Duong was also an owner and founder of the housing company, and an employee of his father's recycling company.  The individual referred to as Co-Conspirator 1 in the indictment was a local businessman and a founder of the modular housing company, who has since been identified in these proceedings as Mario Juarez.  *Id.* at 3.

Broadly, the indictment alleges that each of the co-conspirators, including Jones and A. Duong, struck a deal that involved the promise of direct payments to Jones and benefits to Thao and her mayoral campaign, in exchange for at least the following promises:  (1) Thao agreed to use her position as mayor to cause Oakland to purchase units from the Duongs' modular housing company, (2) to extend the recycling contract with Oakland, (3) to give D. Duong and his associates influence over appointments of important Oakland city officials, (4) pushing through a land deal involving the recycling company regarding a former Army base in Oakland, and (5) an appointment to the Port of Oakland commission. *Id.* at 5-8.

The indictment allegations show Jones' central role in the scheme and conspiracy.  Thao and Juarez met and discussed the corrupt arrangement on October 7, 2022, and the next day Thao connected Jones to Juarez by sending him Jones' telephone number.  *Id.* at 5-6.  A few days later, after A. Duong,

Thao, and Juarez met and discussed the bribery scheme and D. Duong agreed to fund a negative mailer in support of Thao's mayoral campaign, Thao directed Jones to connect with Juarez to provide what Juarez needed, as Juarez had begun the process of commissioning the campaign mailers. *Id.* at 6.

Weeks after Thao won the election, on December 7, 2022, the indictment alleges that Thao and Jones asked A. Duong and Juarez to begin the payments to Jones that were part of the bribery scheme. *Id.* at 7. Within a few days, the payments started, first with about $20,000 in several checks over the course of six weeks, and over the following year Jones received a total of $95,000 from accounts held by Juarez and the housing company founded by the Duongs. *Id.* at 7-9, 12-13.

The indictment alleges that the conspiracy between Jones, Thao, A. Duong, and D. Duong continued to at least June 20, 2024, the day that law enforcement executed search warrants at residences that included the residence Jones shared with Thao and A. Duong's residence. On June 20 federal agents interviewed A. Duong, and the indictment alleges that during the interview A. Duong made the following false statements: (1) he was not aware of any payments to Jones from the housing company or people associated with the housing company, (2) he never spoke to Jones about the housing company, and (3) he did not "deal with Andre Jones for anything." *Id.* at 14. A. Duong made these statements even though, among other things: (1) the payments to Jones began within days after he, A. Duong, and the other coconspirators met at a restaurant, *id.* at 7; (2) Juarez texted A. Duong, "I gave the $20 k to Andre Jones as a loan – FYI," *id.*; and (3) additional texts from Juarez to A. Duong that included, "AJ will be part of development team paid $300k flat on sale of units - contract maybe renew for other clients," *id.* at 8.

Like D. Duong and Thao, Jones is charged in five of the eight counts in the indictment, including 18 U.S.C. § 371, conspiracy, 18 U.S.C. § 666(a)(1)(B), bribery, 18 U.S.C. § 1349, conspiracy to commit honest services mail and wire fraud, 18 U.S.C. § 1341, mail fraud, and 18 U.S.C. § 1343, wire fraud. A. Duong is charged with the same counts, except he is charged with violating a different subsection of 18 U.S.C. § 666, and A. Duong is also charged with 18 U.S.C. § 1001(a)(2) for making false statements regarding the bribery payments made to Jones during the conspiracy. *Id.* at 21.

**B.    Evidence Expected to be Offered Against Jones and Co-Defendants**

The trial in this case will involve evidence proving the existence of a conspiracy to bribe the

former mayor of Oakland, Sheng Thao, in part through significant payments made to her partner Andre Jones.  The government's opposition to the motions to exclude certain evidence identified in the government's notice under Rule 404(b) contains a detailed proffer of the evidence that the government expects to offer at trial.

The evidence of the conspiracy, its manner and means, overt acts in furtherance, and the goals of the conspiracy will consist of communications between coconspirators, notes and documents created during the conspiracy, the testimony of a cooperating coconspirator and others, and the actions and statements of conspirators including Jones, Thao, D. Duong, and A. Duong.

Among the proof that the government will offer at trial is evidence of actions by the conspirators that furthered the objectives of the conspiracy, including efforts to keep Thao from leaving the corrupt arrangement and protecting her from negative news, influencing other city governments to purchase Evolutionary Homes units, and threats and physical force intended to prevent Mario Juarez from reporting the bribery conspiracy to law enforcement.  Though some of this evidence was also identified by the government in its disclosures under Rule 404(b), the government contends that each of these categories of evidence is not 404(b) evidence at all, but instead is evidence of the conspiracy and bribery scheme itself.  The categories of evidence include the following:

- Evidence that coconspirators Juarez and A. Doung bribed San Leandro City Councilman Bryan Azevedo in exchange for Azevedo's agreement to use his position to benefit Evolutionary Homes, and evidence that the coconspirators told Azevedo they would make future payments to a bank account in his wife's name.

- Evidence that Thao was concerned about potential negative news about a trip she took to Vietnam (on which Thao and the Duongs were accompanied by Jones and his daughter), and evidence that in order to ensure Thao remained in the conspiracy D. Doung made a $10,000 payment to quash the negative news from coming out.

- Evidence that when Juarez threatened to report the existence of the bribery scheme and conspiracy involving Thao, Jones, and the Duongs, A. Duong and others directed the physical assault and robbery of Juarez.

In the government's disclosures under Rule 404(b) and its briefs in opposition to defendant motions to exclude the evidence described above, as well as in the government's response to the defendant Duong's objections to the admission of certain coconspirator statements, the government argues that each of the above categories of evidence is relevant and admissible against each defendant and coconspirator as

US OPPOSITION TO MOTION FOR SEVERANCE    4
25-CR-00003 YGR

inextricably intertwined with the bribery scheme and conspiracy and is relevant to prove the existence of the conspiracy and these and other overt acts of the conspiracy. *See* US Opp. to Motion to Exclude Evidence, US Response to Objections to Coconspirator Statement.

## II.    DISCUSSION

### A.    Severance is a Disfavored Remedy with a High Bar

The motion filed by Jones is based on (1) an argument that Jones was improperly charged in the same indictment as A. Duong under Rule 8(b), and (2) in the alternative, a request that Jones and Thao be severed from the trial of A. Doung and D. Doung because a joint trial would be unduly prejudicial. Both rules set a high bar for a defendant seeking the extraordinary remedy of severance.

First, under Rule 8(b), two defendants may be properly joined in a single indictment and tried together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The rule itself explicitly contemplates indictments that do not charge all the joined defendants with the same charges, stating: "The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." *Id.*

To determine if the allegations and charges against two or more defendants are part of the "same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," courts look for a "logical relationship" between the allegations, including where the common activity constitutes "a substantial portion of the proof of the joined charges." *United States v. Sarkisian*, 197 F.3d 966, 975–76 (9th Cir. 1999). Thus Rule 8(b) joinder is proper where there is a substantial overlap in the evidence presented for the joined counts, the joined counts are necessary to contextualize or understand each other, or the joined conduct naturally flows from separate criminal conduct. *United States v. Ford*, 632 F.2d 1354, 1372 (9th Cir. 1980), *overruled on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

Rule 8(b) is flexible and must be construed to broadly encompass a variety of situations. "Because the goal of Rule 8(b) is to maximize trial convenience and efficiency with a minimum of prejudice, Rule 8(b) is construed liberally in favor of joinder." *Sarkisian*, 197 F.3d at 975 (internal citations and alterations omitted); *see also United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991)

("Co-defendants jointly charged are, *prima facie,* to be jointly tried."). Accordingly, severance requests face a high bar, and severance is especially disfavored in conspiracy cases. *United States v. Jenkins*, 633 F.3d 788, 807 (9th Cir. 2011). A defendant seeking severance must show that joinder was so "manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *Id.* (citation omitted). "[T]he predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *United States v. Roselli*, 432 F.2d 879, 901 (9th Cir. 1970).

Under Rule 14(a), a court may "sever the defendants' trials, or provide any other relief that justice requires" if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The rule is narrower than its language suggests: "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The lone fact that "a defendant is to be tried with a more culpable defendant" isn't enough to require Rule 14 severance. *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). Instead, a defendant must clear a "high standard" by proving that "clear, manifest, or undue prejudice from the joint trial . . . violate[d] one of his substantive rights" and denied him a fair trial. *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).

In evaluating any prejudicial effect of a joint trial, courts consider such factors as (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the court's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant can show with particularity a risk that the joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) modified, 425 F.3d 1248 (9th Cir. 2005).

This burden to justify severance is especially heavy when, as here, a conspiracy is charged.

US OPPOSITION TO MOTION FOR SEVERANCE   6
25-CR-00003 YGR

*United States v. Cruz*, 127 F.3d 791, 799 (9th Cir.1997); *Fernandez*, 388 F.3d at 1242 ("A joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials.").  Indeed, the Ninth Circuit has stressed repeatedly that "defendants jointly charged are to be jointly tried." *United States v. Van Cauwenberghe*, 827 F.2d 424, 431 (9th Cir. 1987); *accord United States v. Polizzi*, 801 F.2d 1543, 1553 (9th Cir. 1986).

**B.      Jones is Appropriately Joined in an Indictment that Charges Him and His Coconspirators and Codefendants with the Same Acts and Transactions**

The allegations and charges against A. Duong, including the charge under 18 U.S.C. § 1001, are properly joined with the allegations and charges against Jones, Thao, and D. Duong under Rule 8(b) because the allegations supporting each charge in the indictment relate to "the same series of acts or transactions."  The evidence that will be adduced at trial to prove the conspiracy, the bribery scheme, and the honest services fraud overlaps completely with the evidence that will prove A. Duong lied about payments made as part of this conspiracy.

**1.      The Indictment Itself Shows the Defendants are Properly Joined**

Joinder under Rule 8(b) is appropriate based on the indictment itself, which alleges a bribery scheme and conspiracy in which Jones played a crucial part, and alleges that A. Duong, during the conspiracy, lied to investigators about Jones' involvement in order to conceal the conspiracy.  These allegations in the indictment clearly state the connection between the acts and transactions that are part of the charged conspiracy and bribery counts and A. Duong's later false statements about some of those same acts and transactions.

The cases cited by Jones in his arguments for improper joinder are far from this case, and instead involve charges that allege separate conduct against one defendant that the other defendant had no part in.  In *United States v. Martin*, cited by Jones, the government charged separate conspiracies, one of which Martin did not participate in.  567 F.2d 849, 853 (9th Cir. 1977).  Joinder was improper in that circumstance because a joint trial would require "substantial proof relating to conspiracies in which Martin was not charged." *Id.* at 853–54.  In *United States. v. Charnay*, a 1962 district court case cited

by Jones, three defendants were charged with perjury in the same indictment even though each defendant separately lied to the grand jury. *See* 211 F. Supp. 904, 906 (S.D.N.Y. 1962). Because the defendants were not charged in a conspiracy, and the court concluded that evidence offered against "one defendant may be totally unrelated to another defendant," the district court concluded that joinder was improper. *See id.* at 906–08. The fact that Jones only cites cases that involve wholly unrelated counts shows the weakness of his argument here.

Jones seems to argue that any time one defendant is charged with a crime which another defendant is not, regardless of the connections and relationship to the other charges or to the conspiracy allegations against both defendants, joinder under Rule 8(b) is improper. Motion at 9-10. But this ignores both the law and the plain language of the Rule, which requires only participation in the same series of acts or transactions, and which explicitly contemplates that joined defendants can be charged in counts together or separately and not all joined defendants must be charged in every count.

### 2.      The Evidence Against the Joined Defendants Substantially Overlaps

Whether joined defendants are alleged to have both participated in the same "series of acts or transactions" can be established by a showing that substantially the same facts must be adduced to prove each of the joined offenses. *United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir. 1977). In this case, the allegations supporting the charges against all defendants, including Jones, and the allegations supporting the false statement charge against A. Duong, will require proof of substantially the same facts. Nearly all the facts required to prove that A. Duong lied about payments to Jones will also be adduced to prove the conspiracy to bribe Thao by providing payments from Evolutionary Homes and the Duongs to Jones. And critically, even if A. Doung had not been charged with the false statements to the FBI on June 20, 2024, the fact that he tried to conceal the conspiracy and illegal bribes from law enforcement while the conspiracy still existed is relevant and admissible to prove the bribery and conspiracy charges against all four coconspirators including Jones. *See, e.g., United States v. Lim*, 984 F.2d 331, 336 (9th Cir. 1993) (explaining that false statements to law enforcement are "an attempt to conceal the conspiracy" and are thus "made 'in furtherance of' the conspiracy").

Courts have had no trouble finding joinder appropriate in this circumstance. *See United States v. Felix-Guiterrez*, 940 F.2d 1200, 1209 (9th Cir. 1991) (finding that one defendant's participation in the

narcotics enterprise was necessary to prove the elements of accessory after the fact in the kidnapping and murder of a federal agent "and were connected in many areas by overlapping proof"); *United States v. Hoelker*, 765 F.2d 1422, 1425 (9th Cir. 1985) (finding that extortion and the drug offenses were logically related, in part, where connected by a large area of overlapping proof).

Unpublished appellate cases and a recent district court case provide examples much closer to this case, and each court found joinder under Rule 8(b) appropriate. In *United States v. Johnson*, 2024 WL 1836512 at *2-3 (E.D. Pa. Apr. 26, 2024), the court denied severance in a three-defendant fraud trial where only one defendant was charged with false statements under 18 U.S.C. § 1001. Similarly, the Tenth Circuit found that charging one of the defendants for perjury in addition to the related scheme does not preclude joinder with a defendant charged with the scheme but not perjury. *United States v. Tynes*, 1996 WL 195108, at *1 (10th Cir. 1996) ("The fact that Teafatiller was also charged with perjury does not require severing the trials because the facts necessary to prove guilt as to the stolen oil included those needed to prove Teafatiller's perjury.") (citations omitted).

*Satterfield* does not help Jones. Satterfield was charged with a codefendant in an indictment that charged five separate robberies, three committed by the codefendant alone, two committed by the codefendant and Satterfield. 548 F.2d at 1343. The Ninth Circuit held that Satterfield should not have been joined with his codefendant, because there was no common plan relating to all of the robberies, and evidence pertaining to robberies committed by the codefendant alone would have been irrelevant at a separate trial for Satterfield. *Id.* at 1345. Here, as discussed above, and unlike in *Satterfield*, all the evidence to prove that A. Duong lied to law enforcement and that he was aware of the payments to Jones is also relevant to the conspiracy and bribery scheme that Jones is charged with—so even at a separate trial, the evidence would be relevant. Further, unlike in *Satterfield*, the false statement charge here is part and parcel to the conspiracy. The false statements here were made to conceal the conspiracy that Jones, Thao, and D. Doung participated in. Significantly, the false statements here were *about* Jones.

Other cases Jones cites are distinguishable. *Martin* involved a joint trial that included charges of unrelated drug conspiracies that were wholly unrelated and geographically distant to the drug conspiracy that the improperly joined defendant was charged with. 567 F.2d at 853 . No such distance— geographically, factually, or conceptually—exists in this case. Similarly, in *United States v.*

*Marionneaux*, cited by Jones, the indictment charged two separate obstruction of justice conspiracies that involved preventing separate witnesses from testifying in a criminal case, and the court concluded that there was no substantial identity of facts needed to prove each conspiracy. 514 F.2d 1244, 1248-49 (5th Cir. 1975), *overruled on other grounds by United States v. Lane*, 474 U.S. 438 (1986). Again, where *Marionneaux* is an example of separate conspiracies with no factual overlap, in this case the facts underlying the conspiracy and lies about the conspiracy not only substantially overlap, they are the same.

### 3.     The First Seven Counts Provides Necessary Context for Count 8

Joinder is proper here for a different reason: The evidence for the conspiracy, bribery, and fraud counts is necessary to explain why A. Duong would give false statements to a federal agent, as it would have been necessary to protect the conspiracy. As many courts have found, joinder is proper where the evidence of the other charges provides necessary context for the count against a joined defendant. *See, e.g.*, *Felix-Guiterrez*, 940 F.2d at 1209 (explaining that "Felix, as part of the enterprise, helped Caro-Quintero flee to Costa Rica, knowing that Caro-Quintero and other members of the enterprise had participated in the kidnapping and murder"); *Hoelker*, 765 F.2d at 1426 ("Hoelker's need for funds explained why Hoelker became involved in plans to sell cocaine and to coerce Lang into signing an insurance policy on his life naming Hoelker as the beneficiary."); *Ford*, 632 F.2d at 1372 ("In this case, evidence submitted to prove Counts 1-10 was also relevant to Counts 11 and 12. It not only established the context of the bribery scheme so as to make it understandable, but was probative of the trustees' intent in surrendering control to Armstrong's corporation.").

Interestingly, Jones' motion does not address the main relevant consideration, the significant amount of overlapping proof that will be required to prove the conspiracy, bribery, and honest services fraud counts against all defendants and the count charging A. Duong with false statements about the bribery payments. By failing to counter the extent that the same evidence will be adduced in any separate trial, Jones' motion fails to address the most significant test of joinder under Rule 8(b). Under the liberal standard that this Court should apply, these defendants are properly included in the same indictment under Rule 8(b) and appropriately tried together.

US OPPOSITION TO MOTION FOR SEVERANCE     10
25-CR-00003 YGR

## C.    Jones Also Cannot Meet His Burden of Showing that a Joint Trial with his Coconspirators is Unfairly Prejudicial

Though his Rule 8(b) argument seeks only to sever Jones from Andy Doung, Jones' Rule 14(a) argument seeks to sever both D. Duong and A. Duong, claiming Jones would be prejudiced in a trial involving him and the properly joined defendants.[1]  Jones claims prejudice from evidence that either is admissible against him as a coconspirator and is incriminating, or is tangential to him and therefore would not be prejudicial such that a completely separate trial is mandated.  Jones cannot meet the high standard for severing him from the trial of other members of the same conspiracy.  Even if some evidence at the joint trial is more incriminating as to D. Duong or A. Doung, as claimed by Jones, that also does not warrant severance.  "In assessing whether joinder [is] prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized." *Vasquez–Velasco*, 15 F.3d at 846.

Jones first argues that the false statement allegation in the 18 U.S.C. § 1001 charge against A. Duong is "very inflammatory" and improperly prejudices Jones, because the charge "portrays Andy Duong as a dishonest person, who lies to government agents."  Motion at 13.  But it is hard to see how this is unduly prejudicial against the backdrop of the case against Jones and other members of the conspiracy.  The indictment alleges that Jones participated in a years-long scheme to secretly funnel payments and benefits to Thao and Jones in exchange for official acts and that Jones had a sham consulting agreement with Evolutionary Homes to cover up the payments he received.  Efforts to conceal the bribery scheme are no more inflammatory than the scheme itself.  In any event, as discussed above, the efforts by A. Doung to conceal the conspiracy would be relevant and admissible at a separate trial on the conspiracy counts, and there would be no prejudice to Jones in a joint trial.  *See Lim*, 984 F.2d at 336.

Next, Jones argues that various categories of evidence that the government intends to offer at trial, either as evidence of or inextricably intertwined with the crime, or as permissible evidence under

---

[1] The fact that Jones seems to want to pick his trial partner, preferring a trial with Thao but not either of the Duongs, shows that this motion in part seeks a strategic advantage.  Notably, Thao has not filed a motion to sever her trial, or to be tried with Jones, and has not joined Jones' motion to sever.

Rule 404(b), are prejudicial to him. The evidence Jones references in his motion includes: (1) evidence that coconspirators A. Duong and Juarez discussed bribing other government officials on behalf of Evolutionary Homes; (2) as part of the conspiracy, A. Duong paid San Leandro City Councilmember Azevedo a bribe in exchange for his support for Evolutionary Homes; (3) evidence that when he threatened to expose the conspiracy, Juarez was assaulted by A. Doung and others; (4) evidence that, at Thao's insistence, conspirators A. Doung, D. Doung, and Juarez made a payment to prevent a negative news story; and (5) other evidence regarding A. Doung's misbehavior and his efforts to make recordings to get leverage over politicians.

Jones' primary argument that this evidence prejudices him is that it will "further tarnish Andy Duong in the eyes of the jury" and this distaste will "spill over to Jones by association." Motion at 15. For one thing, most, if not all of that evidence would still come in if he were tried with Thao. The news article evidence, for example, would be admissible because Thao was a participant in that conduct. It would do nothing to sever only D. Duong and A. Duong in that instance. For another thing, Jones' own assertions about these categories of evidence—that Jones did not know about the activities, was not involved in any of these allegations, and did not participate in other alleged bribery—undermine his arguments that the evidence is prejudicial. Jones affirmatively distances himself from the evidence in his motion, and there is no indication that he will not be able to argue the same points at trial and therefore argue that this evidence should be "compartmentalized" by the jury. *See Vasquez–Velasco*, 15 F.3d at 846.

Jones also argues that these categories of evidence will not be relevant or admissible at a separate trial of Jones and Thao alone, because the evidence at issue is "other bad acts of the Duongs." Motion at 16. Again, the news article is admissible as to Thao because she was a key participant in the events supported by that evidence. Moreover, the government is seeking to admit most of this evidence as evidence relevant to and in furtherance of the conspiracy itself, not only as admissible under Rule 404(b). In that case, the evidence would be admissible at a separate trial on the conspiracy and bribery counts against Jones and Thao. The evidence at issue proves and explains the full contours, circumstances, and acts of the conspiracy. For instance, Juarez was assaulted and robbed of a gold chain and watch when he threatened to report the Duongs' criminal conduct. Evidence of a coconspirator's

efforts to withdraw from and expose the conspiracy is evidence of the existence of the conspiracy itself. The efforts by A. Duong, D. Duong, and Juarez to quash the negative story about the Vietnam trip proves that Thao was in the conspiracy and is relevant to show coconspirators' efforts to ensure Thao's continued participation in the conspiracy and maintain the corrupt bribery agreement. Evidence to preserve the conspiracy is evidence of the conspiracy itself. This evidence would be adduced at a separate trial.

Where the evidence at a separate trial will be substantially similar to that presented in a joint trial, a defendant cannot show prejudice warranting Rule 14(a) severance. *See United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016) ("Joinder is not prejudicial where 'all of the evidence of the separate count would [still] be admissible upon severance.'"), citing *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987). Judicial economy is a "predominant consideration" for severance, and courts should consider "whether joinder would serve the goals of trial economy and convenience." *Roselli*, 432 F.2d at 901. Here, because the witnesses and evidence would largely be the same in the proposed separate trials, and because the false statements would be admissible as statements in furtherance of the charged conspiracy, judicial economy supports joinder. *See id.* at 899.

The fact that the categories of evidence are inculpatory, or even admissible against Jones or at a joint trial, is not enough for Jones to meet his burden under Rule 14. A defendant is not entitled to severance merely because a separate trial would be to his advantage; he must demonstrate prejudice "other than that which necessarily inheres whenever multiple defendants . . . are tried jointly." *United States v. Adler*, 862 F.2d 210, 216 (9th Cir. 1988) (quoting *United States v. Adams*, 581 F.2d 193, 198 (9th Cir. 1978)). Similarly, the Ninth Circuit has held district courts do not abuse their discretion by denying motions to sever even in cases that involve potentially inflammatory evidence. *See United States v. McLeod*, 755 F. App'x 670, 675 (9th Cir. 2019) (collecting cases). The burden for obtaining a separate trial is high and cannot be met simply by the admission at a joint trial of incriminating evidence, and the Court should deny severance. *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir. 1978) ("[I]f all that was necessary to avoid a joint trial were a showing of prejudice, there would be few, if any, multiple defendant trials").

To the extent that any of these categories of evidence are admissible only as to defendants other

than Jones, appropriate limiting instructions would address any undue prejudice.  The Ninth Circuit has "repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." *Fernandez*, 388 F.3d at 1243 (district court did not abuse its discretion by denying severance where, "[t]hroughout the trial," the district court "instructed the jury that it must consider the evidence against each defendant and evaluate each defendant's guilt separately" and offered further limiting instructions).  Juries are presumed to follow their instructions, *Hovey v. Ayers*, 458 F.3d 892, 913 (9th Cir. 2006), and Jones gives no reason for the Court to wholesale reject that presumption here.

Finally, the Ninth Circuit's unpublished decision in *United States v. Moreno*, 619 F. App'x 308 (9th Cir. 2015), is instructive.  There, one defendant sought severance from a co-defendant on the basis of prejudicial joinder because the government presented evidence that the co-defendant "directed a conspiracy to smuggle heroin into prison using greeting cards," that the "co-defendant was a gang member and that gang members commit a disproportionate amount of violent crimes in prison," and that the "co-defendant controlled marijuana and methamphetamine trafficking in 2010," though there was no evidence that Moreno was involved in marijuana or methamphetamine conspiracies in 2010.  *Id*. at 310. The Ninth Circuit affirmed denial of severance, holding that introduction of prejudicial evidence relating to a co-defendant was not a basis for a severance under Rule 14 even if the evidence might not have been admissible in a separate trial against one defendant:

> If Moreno had been tried separately, the evidence regarding Roman's heroin conspiracy and gang affiliation would not likely have been relevant evidence admissible against Moreno.  However, that is not the proper inquiry.  Even if evidence of Roman's heroin conspiracy and prison gang affiliation is prejudicial, that does not demonstrate that the court abused its discretion in denying the severance motion.  Because "some prejudice is inherent in any joinder of defendants, if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held."  "The prejudice of a joint trial must be such as to violate a defendant's fair trial rights: *i.e.,* unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of the right of confrontation, lack of separate counsel among defendants with conflicting interests, or failure to instruct the jury properly on the admissibility of evidence as to each defendant."  Moreno has not shown that the joinder violated any of his fair trial rights.

*Id*. at 311 (citation omitted).

US OPPOSITION TO MOTION FOR SEVERANCE      14
25-CR-00003 YGR

As in *Moreno*, Jones has not shown that joinder will violate any fair trial rights.  Because Jones cannot allege undue prejudice from a joint trial, and appropriate limiting instructions are presumed to effectively address even undue prejudice, Jones cannot meet his burden of showing he cannot get a fair trial in a joint trial with his coconspirators.

## III.   CONCLUSION

For the reasons described above, Jones' motion to sever his trial from A. Duong's trial, or for this Court to allow him to go to trial only with Thao, should be denied.  The properly joined defendants and charges should be tried together.

DATED: July 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorney