Jeffrey Tsai (SBN 226081)
 jeff.tsai@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: (415) 615-6055

Darryl Louis Tarver (*Admitted pro hac vice*)
 darryl.tarver@us.dlapiper.com
DLA PIPER LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel: (410) 580-4123

*Attorneys for Defendant Sheng Thao*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG,<br><br>                    Defendants. | Case No. 4:25-CR-3-YGR<br><br>**DEFENDANT SHENG THAO'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE PURSUANT TO RULE 404(B)** |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ..................................................................................................... 2

      A.    The Toro Management Leasing Application (Oct. 2021): Improper
           Character Evidence Without Any Plausible Non-Propensity Basis
           for Admission ................................................................................................ 2

      B.    The 2019 Duong-Thao Recorded Telephone Call: Remote in Time
           and Irrelevant for Any Non-Propensity Purpose ....................................... 4

      C.    $5,000 Payment by the Duongs to the Niagara Movement Foundation:
           Not Inextricably Intertwined with the Charged Conspiracy ................................... 5

III.    CONCLUSION .................................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

United States v. Hill,
953 F.2d 452 (9th Cir. 1991)................................................................................................2, 6

United States v. Hill,
No. 13-cr-00765-SI-1, 2015 U.S. Dist. LEXIS 30021 (N.D. Cal. March 10, 2015) ...............2

United States v. Luna,
21 F.3d 874 (9th Cir. 1994)........................................................................................................3

United States v. Miller,
874 F.2d 1255 (9th Cir. 1989)...................................................................................................5

United States v. Sleugh,
14-CR-168-YGR-2, 2015 WL 3866270 (N.D. Cal. June 22, 2015) .........................................5

United States v. Vizcarra-Martinez,
66 F.3d 1006 (9th Cir. 1995).....................................................................................................5

**Other Authorities**

Fed. R. Evid. 403.............................................................................................................................4

Fed. R. Evid. 404, advisory cmte. note .........................................................................................2

Fed. R. Evid. 404(b) ................................................................................................................2, 4, 6

## I.    INTRODUCTION

In its Opposition (Dkt. 235), the government confirms that a significant feature of its trial strategy is to attack Ms. Thao's character through cherry-picked instances of conduct that is unrelated to the allegations in the Indictment.[1] The government's objective is clear: fill in the gaps in its evidence by convincing the jury that Ms. Thao was a bad person through a curated narrative of conduct wholly unrelated to the charges and allegations in the Indictment. Indeed, much of this unrelated conduct took place <u>before</u> when the government alleges Ms. Thao was part of an alleged bribery scheme. The government uses speculative leaps and imaginative reasoning to manufacture non-character purposes for this unrelated evidence.

This prosecution strategy is unsurprising because the government cannot point to a single document, writing or recording from Ms. Thao evidencing her knowledge of, much less participation in, the alleged bribery scheme – and all of this despite countless subpoenas, search warrants, cooperating witnesses and confidential human sources. After multiple years of investigation, all of the government's evidence of Ms. Thao's participation in the alleged scheme comes from one source: Mario Juarez, a singularly untrustworthy witness.[2] Juarez is the only person who will testify that Ms. Thao agreed to any quid pro quo or to perform any official acts on behalf of Juarez and the Duongs.

The Federal Rules of Evidence and Ninth Circuit jurisprudence prohibit the strategies the government seeks to employ here. Accordingly, the motions to exclude should be granted and the government should be barred from introducing improper character evidence at trial.

/ / /

---

[1] The government filed its opposition publicly and without redactions, failing to acknowledge or respond to any of defendants' arguments in support of sealing facts that Defendants argue are inadmissible and prejudicial. The government's conduct reflects a strategy to publicly expose as many of these inadmissible and prejudicial facts, which may find their way to potential jurors through expected press coverage.

[2] <u>See, e.g.</u>, Dkt. No. 119 at 11-14; Dkt. No. 136 at 7-9; Dkt. No. 138 at 2-3; Dkt. No. 141 at 6-10.

-1-

## II.    ARGUMENT

**A.    The Toro Management Leasing Application (Oct. 2021): Improper Character Evidence Without Any Plausible Non-Propensity Basis for Admission**

The government's use of the alleged Toro Management evidence is an improper invitation for the jury to infer that Ms. Thao somehow was involved in a no-show Evolutionary Homes job for Mr. Jones in the alleged bribery scheme because Ms. Thao and Mr. Jones supposedly lied about Mr. Jones's employment in a housing rental application years earlier. That is precisely the inference Rule 404 was designed to prevent. See Fed. R. Evid. 404 advisory cmte. note (character evidence "subtly permits the trier of fact to reward the good man and punish the bad man because of their respective characters despite what the evidence in the case shows actually happened"); United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991) (Rule 404(b) "is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment").

The Opposition only reinforces that the purported non-propensity purposes are pretextual.

First, the Opposition fails to address—and thereby appears to concede—Ms. Thao's argument that the alleged false 2021 leasing-application statements about Mr. Jones cannot reasonably be said to constitute modus operandi evidence due to the conduct's vastly different purpose, intent, and audience from the charged scheme. See generally United States v. Hill, No. 13-cr-00765-SI-1, 2015 U.S. Dist. LEXIS 30021, *11 (N.D. Cal. March 10, 2015) ("Courts in the Ninth Circuit 'have traditionally taken a narrow view' of what qualifies as modus operandi evidence.").

Here, the government cannot dispute that the false statements on the 2021 leasing application and the charged scheme involved different people (one involved Ms. Thao's sister and the other involved Juarez and the Duongs) and were for vastly different objectives (one involved obtaining a lease for purposes of paying rent for a residence and the other involved Mr. Jones being paid money). The government attempts to justify the leasing application as reflective of a

-2-

financial motive or purpose for Ms. Thao and Mr. Jones to commit bribery in the charged case because they were living in a home they allegedly could not afford. Dkt. 235 at 8. However, the motive as to the alleged leasing application conduct and the charged bribery are <u>entirely different</u>. As to the leasing application, there is no allegation that the motive was to obtain money (through bribery or otherwise). By contrast, the charged bribery conduct rests solely on a motive to unlawfully obtain money through false employment. If the government were to actually attempt to show Ms. Thao and Mr. Jones's financial condition, it could easily do so without introducing evidence of a prior bad act from outside the charged conspiracy. The government has obtained extensive financial records, employment records, and text messages between Ms. Thao and Mr. Jones discussing their financial situation, any of which could be used to prove the alleged financial incentive without resorting to improper character evidence.

The generic allegation of a "fake job" is not a sufficient Rule 404(b) basis for admission of the leasing application conduct in light of the vastly different factual contexts in which the prior act and the charged conduct allegedly occurred here. <u>See</u> <u>United States v. Luna</u>, 21 F.3d 874, 878 (9th Cir. 1994) (where there were some generic similar features between the prior robbery and charged robbery, but different numbers and combinations of persons involved in each, the prior robbery lacked sufficient distinctiveness to be admitted as evidence of modus operandi). The true purpose of the alleged leasing application conduct is to show propensity, which the Federal Rules prohibit.

The Opposition only reinforces that the purported non-propensity modus operandi purpose is not legitimate. Although the government generically asserts that the "fake job" for Mr. Jones is admissible to prove modus operandi because "it tracks the same distinctive pattern Thao and Jones used in the charged conspiracy," Dkt. 235 at 2, the government has also waved the modus operandi flag as to a number of non-charged conduct. For instance, the government also claims that the Duongs' alleged payments to Bryan Azevedo routed through his spouse—conduct that did not involve Ms. Thao or Mr. Jones at all—followed the same supposed "distinctive" modus operandi. Dkt. 235 at 7. The government's catch-all labeling of conduct as modus operandi only

DEFENDANT SHENG THAO'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE EVIDENCE PURSUANT TO RULE 404(B)
CASE NO. 4:25-CR-3-YGR

punctuates the lack of distinctiveness and undermines the rationale for presenting this evidence. See Luna, 21 F.3d at 879 ("[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of [modus operandi] can arise.").

Second, even if the leasing application conduct could be construed as legitimate motive evidence, its inherent unfair prejudice is so great—especially in light of evidence that more directly addresses the issue of financial condition—that Rule 403 calls for preclusion. The government fails to address Ms. Thao's Rule 403 argument regarding the unfair prejudice and impact of the government calling Ms. Thao's sister to testify against her—a prejudice severe enough even the Justice Department's own policies recognize. See, e.g., U.S. Dep't of Justice, Justice Manual § 9-23.211 (2018). The Opposition's failure to respond is telling—indeed, it is a tacit concession that the government's heavy-handed effort to use propensity evidence through a family member is simply designed to generate a dislike of Ms. Thao, not to prove any relevant fact at issue in this case.

**B.     The 2019 Duong-Thao Recorded Telephone Call: Remote in Time and Irrelevant for Any Non-Propensity Purpose**

The government claims that the 2019 telephone call—more than three years before the charged conspiracy—proves "the long-term relationship of mutual trust" between Andy Duong and Ms. Thao. Dkt. 235 at 23-24. This is an attempt at an end-run around Rule 404(b)'s ban on propensity evidence: the government is presenting this evidence to invite the jury to draw an inference about Ms. Thao's conduct from 2022 through 2024 based on a single instance of conduct from years before the so-called conspiracy existed.

The government's assertion of a "modus operandi of conducting meetings in private" as one of its non-propensity bases for admitting this evidence swallows the rule. There is nothing distinctive about wanting to meet privately to discuss sensitive matters. Indeed, under the government's theory, there is no conversation (in-person, telephonic, or otherwise) that would not constitute modus operandi evidence in any case.

-4-

The government emphasizes the "sensitive" nature of the matters discussed in the 2019 call because Ms. Thao was then a member of the City Council discussing City Council business, which suggests that the parties felt comfortable to freely discuss matters without prying eyes or ears. Yet, even then, the government has failed to allege or produce a single recording in which Ms. Thao and Andy Duong discussed <u>any</u> aspect of the supposed conspiracy in which they were allegedly engaged together. And that is because no such recording exists. The absence of any recording of Ms. Thao's agreement of the alleged quid-pro-quo undermines the supposed similarity of the 2019 call to the charged conduct and, in turn, negates its admissibility for most non-propensity purposes. <u>See</u> <u>United States v. Miller</u>, 874 F.2d 1255, 1269 (9th Cir. 1989) ("Thus, our cases have uniformly held that the use of prior acts to prove identity of intent is only permissible if the acts are similar to the crime charged."); <u>United States v. Sleugh</u>, 14-CR-168-YGR-2, 2015 WL 3866270, at *5 (N.D. Cal. June 22, 2015) (noting that similarity was required to prove "intent, plan, preparation, [or] knowledge").

### C.   $5,000 Payment by the Duongs to the Niagara Movement Foundation: Not Inextricably Intertwined with the Charged Conspiracy

The government has not included the $5,000 payment to the Niagara Movement Foundation in its charges against any defendant in this case. Nor has the government alleged this payment was an overt act in furtherance of the conspiracy. Seemingly, the only reason the government wants to introduce this evidence is because it involved the Duongs, Mr. Jones, and Ms. Thao and took place during the charged conspiracy's timeframe. But that is not enough to constitute inextricably intertwined evidence. <u>See</u> <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1013 (9th Cir. 1995) ("Coincidence in time is insufficient" to admit evidence of an unrelated other act).

The government now asserts that this payment was a "benefit" paid to Ms. Thao—i.e., a bribe—because Ms. Thao wanted to attend the nonprofit's fundraiser. Dkt. 235 at 16. But the government cites no legal authority for the proposition that a politician's attempt to raise funds for a nonprofit is illegal or constitutes a bribe. Rather, the government would have the jury believe

that this donation was part of the charged scheme simply because it involved the same actors the government alleges were part of a conspiracy, and that because Ms. Thao and Mr. Jones solicited money from the Duongs on this occasion, they must have engaged in a quid pro quo. That is an improper propensity basis for admitting evidence at trial. See, e.g., United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991).

### III.   CONCLUSION

Ms. Thao respectfully asks the Court to find that (1) evidence of false statements made by Ms. Thao and Mr. Jones on a leasing application in October 2021 is inadmissible character evidence under Federal Rules of Evidence 404(b); (2) evidence of a 2019 telephone call between Ms. Thao and Andy Duong discussing Oakland City Council developments and California Waste Solutions is inadmissible character evidence under Federal Rules of Evidence 404(b); and (3) evidence that David and Andy Duong paid $5,000 to the Niagara Movement Foundation at Ms. Thao and Mr. Jones' request is not inextricably intertwined with the charged bribery scheme and is otherwise inadmissible.

Dated: July 31, 2026

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Darryl Louis Tarve*r
    JEFFREY TSAI
    DARRYL LOUIS TARVER (*Admitted pro hac vice*)

*Attorneys for Defendant Sheng Thao*