CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3717
FAX: (510) 637-3724
Abraham.fine@usdoj.gov
Molly.priedeman@usdoj.gov
Lloyd.farnham@usdoj.gov
Brandon.moore@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, AND<br>ANDY HUNG DUONG,<br><br>Defendants. | CASE NO. 4:25-cr-0003-YGR<br><br>UNITED STATES' MOTION *IN LIMINE* NUMBER 2 TO PRECLUDE INADMISSIBLE CROSS EXAMINATION OF MARIO JUAREZ |

## INTRODUCTION

Mario Juarez has pleaded guilty to engaging in a bribery conspiracy with Defendants Sheng Thao, Andre Jones, David Duong, and Andy Duong, and the government intends to call him to testify in its case in chief. The Rules of Evidence permit cross-examination regarding a plea agreement, bias, motive for testifying, ability to perceive or recall relevant events, and other relevant areas of inquiry. However, pursuant to Federal Rules of Evidence 608 and 403, the defense should not be permitted to cross-examine Juarez on collateral matters that are not probative of his character for truthfulness or the accuracy and truthfulness of his testimony. As set forth below, the defense should not be permitted to cross-examine Juarez about decades-old civil litigation or court filings that did not result in a judgment on the merits, unsubstantiated allegations of unrelated fraud, or prior arrests and criminal charges that did not result in convictions, as courts have long held that such subjects are not probative of truthfulness and may not be inquired into on cross examination. To the extent the Court allows cross-examination on any such collateral subjects, Rule 608(b) prohibits the use of any extrinsic to attack a witness's character for truthfulness and any cross-examination should be limited under Rule 403 so as to avoid a mini-trial on such issues.

On other topics, such as any allegations that Juarez misappropriated funds from the Duongs or Evolutionary Homes, any evidence should be limited to avoid confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Juarez is not on trial in this case and his cross-examination should not serve as an opportunity for the defense to stage a mini-trial about any acts Juarez may have committed. Finally, prompted by the defendants, the government represented to the Court and the defense at a prior hearing that it would not elicit evidence regarding the June 9, 2024, shooting at Juarez's residence and its aftermath, and the Court thus ruled that the shooting was inadmissible for the purposes of the government's affirmative case. Accordingly, the defense should not be permitted to cross-examine Juarez about the shooting, his statements to law enforcement about the shooting, or events related to the shooting. If the Court determines that Defendants can elicit testimony and offer evidence of the shooting and its aftermath, then the government should be permitted to raise the shooting and the circumstances surrounding it affirmatively on direct examination.

## LEGAL STANDARD

Federal Rule of Evidence 608(b) permits inquiry on cross-examination into a specific instance of collateral conduct only when the Court determines that the conduct is probative of the witness's character for truthfulness or untruthfulness. Even then, Rule 608(b) makes clear that extrinsic evidence generally may not be introduced solely to prove that conduct. The rule "prohibits the introduction of specific acts of conduct for the purpose of impeaching a witness's credibility unless the district court finds such acts to be 'probative of truthfulness or untruthfulness.'" *United States v. Colbert*, 116 F.3d 395, 396 (9th Cir. 1997) (quoting *United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980)). As described in the Advisory Committee Notes for Rule 608(b), "the possibilities of abuse are substantial" when it comes to introducing specific instances of a witness's prior misconduct, and "[c]onsequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time." *See also United States v. Olsen*, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013) ("Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness—subject, of course, to the balancing analysis of Rule 403. Had Olsen's attorneys cross-examined Melnikoff about the truthfulness of his testimony in prior cases, he either would have acknowledged or denied prior questionable conduct, and counsel would have been stuck with his answers and not allowed to pursue further inquiry.").

Rules 403 and 611(a) also authorize the Court to limit cumulative impeachment and collateral inquiries that would confuse the issues, waste time, or unfairly prejudice the parties.[1] The Ninth Circuit has long held that district courts have "wide-latitude" to limit cross examinations of government witnesses on collateral events when such lines of inquiry are "speculative, attenuated, and convoluted" and "[o]ther legitimate interests easily outweighed the testimony's minimal probative value—particularly, legitimate interests in avoiding undue delay and preventing a trial-within-a-trial on unrelated events." *United States v. Mikhel*, 889 F.3d 1003, 1048-49 (9th Cir. 2018).

[1] While Rule 609 defines the admissibility of prior convictions, Juarez does not have any criminal convictions.

## ARGUMENT

**I. The Defense should be prohibited from cross-examining Juarez about decades-old civil litigation, unsubstantiated allegations, or arrests, charges, or investigations that did not lead to convictions.**

In Defendants' *Franks* motions, they asserted that Juarez had a "decades-long history of fraud and has been repeatedly found liable for fraud in lawsuits." Dkt. No. 119 at 1. In support of the suggestion that Juarez has been "repeatedly found liable for fraud," the motion attached six unsworn civil complaints, all of which are over a decade old (Stephens October 31, 2025 Decl. Exs. 5, 8, 10, 12, 14, and 16), a 2012 news article referencing a judgment (Ex. 6), a single default judgment divorced of any findings or facts (Ex. 7), a 2013 notice of stay of proceedings relating to a bankruptcy petition involving Juarez (Ex. 9), a Court of Appeal decision in which Juarez prevailed (Ex. 11), an application for the renewal of a judgment related to a 2006 complaint (Ex. 13), an order wherein Juarez voluntarily agreed to surrender his real estate license (Ex. 17), and a list of lawsuits in Alameda County in which Juarez appears to have been involved (many of which he was the plaintiff) (Ex. 4).

Defendants should not be permitted to cross-examine Juarez on these decades-old complaints, news articles, and judgments, the relevance of which is difficult to discern, and at most, establishes that Juarez has been accused of fraud in civil litigation over the years. These old and unverified complaints are entirely speculative and the defense should be prohibited from cross-examining Juarez about the fact that he had been sued, as well as the alleged facts that underly the lawsuits. Courts have held that such civil litigation is off limits during cross examination of government witnesses in criminal cases. *See, e.g. United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996) ("In this case, the district judge evidently sustained the objection on the ground that the mere filing of a complaint is not 'probative of truthfulness or untruthfulness,' regardless of whether the allegations in the complaint, if true, would seriously undermine the witness' credibility. This ruling was in no way an abuse of discretion."). The Ninth Circuit has similarly held that defendants should be prohibited from using civil litigation to cross-examine government witnesses at trial when there are other avenues available to elicit the witness's potential bias and motivation for testifying. *See United States v. Bonnano*, 852 F.2d 434, 439 (9th Cir. 1988) (affirming district court's prohibition on defense cross-examination regarding civil cases pending or concluded against government witness because they "were cumulative of other evidence elicited upon

lengthy cross-examination, and were irrelevant to the issues at trial."). Furthermore, to the extent the Court allows cross-examination on any of these issues, the defense should not be permitted to use or describe any extrinsic evidence relating to collateral issues, and Ninth Circuit case law requires that they be "stuck with his answers and not allowed to pursue further inquiry." *Olsen*, 704 F.3d at 1184, n.4.

Similarly, Defendants should be prohibited from cross-examining Juarez about his prior arrests or charges. While Juarez does not have any criminal convictions, he has been arrested and charged with crimes in the past, as set forth in his criminal history report. *See* Fine Decl, Ex. 1 (Juarez criminal history report). Specifically, Juarez's criminal history report includes arrests and charges for theft and embezzlement (in 1996), battery (in 1999 and 2007), fight/noise/offensive words (in 2000), grand theft (in 2017 and 2021), and passing a check with insufficient funds (in 2024).

Courts have held, in the context of the cross-examination of cooperating witnesses in criminal trials, that "[t]ypically, evidence of prior arrests is not probative of truthfulness and thus may not be inquired into on cross examination." *United States v. Defendant(s)*, 2021 WL 1127163 at *6 (C.D. Cal. March 24, 2021) (citing *Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. ... Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.")). Furthermore, as to the crime of theft specifically, the Ninth circuit has held that prior arrests for theft are only weakly probative of a cooperating witness's character for truthfulness, and thus should not be inquired into on cross-examination, holding:

> Mitchell also contends that the district court violated Fed.R.Evid. 608(b) as well as his constitutional rights by preventing him from questioning Kinlicheenie about a prior arrest for theft. This would have been only weakly probative of Kinlicheenie's character for truthfulness; regardless, cutting off this line of inquiry cannot have prejudiced Mitchell as the other evidence he was able to elicit from Kinlicheenie, including admissions that Kinlicheenie had lied on several occasions, was far more effective impeachment and rendered insignificant any additional value from the theft. Mitchell cites no authority for his argument that a district court's refusal to permit a defendant to ask a witness about a past instance of criminal misconduct in order to prove a poor character for veracity violates a defendant's constitutional rights to confrontation or due process. Nor could he, unless every exercise of discretion under Rule 608 adverse to a defendant is a constitutional violation.

*United States v. Mitchell*, 502 F.3d 931, 967 (9th Cir. 2007). *See also United States v. Glenn*, 667 F.2d

1269, 1273 (9th Cir. 1982) ("Generally, crimes of violence, theft crimes, and crimes of stealth do not involve 'dishonesty or false statement' within the meaning of rule 609(a)(2).").

So too here. Juarez's prior arrests and charges relating to allegations of theft, embezzlement, battery, and grand theft, are old and are only weakly probative of his character for truthfulness. As such, the defense should not be permitted to cross-examine Juarez about the fact that he was arrested and charged or the facts underlying those arrests or charges. Juarez's 2024 charge for passing a bad check (which the Alameda County District Attorney's Office ("ACDAO") subsequently dismissed) relates to payment for the negative political mailers that are part of the charged conspiracy in this case. As such, the facts underlying those charges are intertwined with the instant case, and the government does not object to the defense cross-examining Juarez about payment or financing relating to the mailers. However, the fact that the ACDOA charged Juarez for passing bad checks relating to those mailers (and subsequently dismissed the charges) is not relevant and the defense should not be permitted to elicit the fact that Juarez was criminally charged relating to that incident or that the charges were ultimately dismissed.

Finally, Defendants should be prohibited from cross-examining Juarez about government investigations conducted into his conduct, as such investigations are even less probative than instances that ultimately led to arrests or charges. For example, Defendants referenced in their *Franks* motion the fact that there was a 2016 federal money laundering investigation into Juarez that was closed with no arrests or charges (which Juarez was not aware of at the time). *See* Dkt. No. 119 at 13. Defendants should be prohibited from cross-examining Juarez about this 2016 federal investigation or any facts underlying it.

Similarly, Defendant Jones' *Franks* motion attached as an exhibit a 2024 affidavit the ACDAO submitted in support of a warrant to search Juarez's bank records, which described alleged real estate fraud relating to Juarez. *See* December 4, 2025, Halbert Declaration, Exhibit A. Specifically, that warrant affidavit described allegations of fraud relating to real estate sales made against Juarez by David Duong, Andy Duong, Duong-associate Stewart Chen, and one other person. *See* Fine Decl. Ex. 2 (ACDAO warrant affidavit). Any cross-examination of Juarez regarding these collateral, speculative, and unsubstantiated allegations of real estate fraud (some of which were made to the ACDAO by David

Duong and Andy Duong) should be limited so as to avoid confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. As set forth above, Juarez's cross-examination should not devolve into a mini-trial about every instance in which someone accused him of fraudulent conduct. Furthermore, to the extent the Court allows cross-examination about this conduct or the allegations set forth in the affidavit, Rule 608(b) prohibits the use of extrinsic evidence during that line of cross-examination.

**II. Any evidence regarding allegations that Juarez misappropriated money from the Duongs or Evolutionary Homes should be limited pursuant to Rules 608(b) and 403.**

As set forth in prior briefing in this case, in the spring of 2024, the relationship between the Duongs and Juarez became strained, eventually leading the Duongs to take steps to prevent Juarez from revealing their conspiracy to law enforcement. The Duongs began asking Juarez for increased documentation for his expenses and accused him of misappropriating money from Evolutionary Homes, while Juarez became frustrated by the Duongs' failure to reimburse him for expenses. By late April, they reached a breaking point. Juarez asked to dissolve the partnership, and the Duongs threatened legal action based on loans given to Juarez. In response, Juarez threatened to go to law enforcement with allegations about their joint corruption scheme with Thao, among other allegations, if they pursued legal action against him, explicitly warning in an April 24, 2024, email to D. Duong, A. Duong, and others that he was writing "for your records when you get subpoenaed by the FBI, City Attorneys, FPPC, and others." *See* Fine Decl. Ex. 3. On May 3, 2024, the Duongs locked Juarez out of the Evolutionary Homes office space and an argument between Juarez and the Duongs ensued, during which Juarez again threatened to report them to law enforcement.

Given this sequence of events, the government expects the defense may attempt to introduce evidence regarding the Duongs' allegations that Juarez misappropriated funds from Evolutionary Homes. Federal Rule of Evidence 608(b) prohibits the use of extrinsic evidence to prove specific instances of a witness's conduct for the purpose of attacking the witness's character for truthfulness. Evidence offered to establish Juarez's potential bias or motivation regarding testimony, however, presents a different question, and extrinsic evidence may be introduced for those purposes, subject to limitation by Rules 403 and 611. *See United States v. Abel*, 469 U.S. 45, 50-52, 56 (1984).

While the Rules of Evidence may permit evidence regarding Juarez's alleged bias or motive for testifying, the Court retains broad authority under Rules 403 and 611 to limit cross-examination and the presentation of evidence that is cumulative, confusing, only marginally relevant, or likely to result in a districting trial within a trial. Therefore, the Court should ensure that Juarez's cross-examination (or the introduction of any extrinsic evidence) does not devolve into a mini-trial regarding Juarez's expenditures for Evolutionary Homes' construction plant in Mexico, its payments to employees and contractors who worked at the construction plant in Mexico, or Juarez's requests for reimbursement for Evolutionary Homes related travel or other expenses. Furthermore, to the extent Defendants intend to introduce this evidence because they assert it is probative of Juarez's character for truthfulness, Rule 608(b) prohibits the introduction of extrinsic evidence to prove that conduct.

Accordingly, the Court should permit Defendants reasonable cross-examination concerning the alleged financial dispute insofar as it bears on Juarez's asserted bias or motive to fabricate, while precluding Defendants from using that permissible inquiry to conduct a mini-trial concerning whether Juarez actually stole money from the Duongs. The Court should further require Defendants to identify outside the presence of the jury any extrinsic evidence they seek to introduce concerning the alleged theft so that the Court can determine whether the evidence has a permissible, non-character purpose and whether its probative value is substantially outweighed by the dangers identified in Rule 403.

**III. Defendants should not be permitted to cross-examine Juarez about the June 9, 2024, shooting at his residence, his statements to law enforcement after the shooting, and the government's response to the shooting.**

As set forth in the parties briefing on Defendants' *Franks* motion, on June 9, 2024, a shooting occurred at Juarez's residence, just three days after he first sat for a proffer session with the government. See Dkt. No. 119 at 14-15 (Defendant's *Franks* motion); Dkt. No. 151 at 9-10 (Government response to *Franks* motion). In initial reports to OPD and FBI immediately following the shooting, Juarez reported that he confronted two individuals breaking into his vehicle, one of whom shot at him, and Juarez returned fire. Given that the shooting occurred three days after Juarez spoke to federal law enforcement, as well as Juarez's prior allegations that the Duongs had directed an assault on him, the FBI believed that the shooting might have been related to Juarez's cooperation with law enforcement and that he was in potential physical danger. Accordingly, the day after the shooting, the FBI relocated JUAREZ for his

safety and paid for a hotel room, rental car, and per diem for meals for Juarez, amounting to approximately $8,568.07 in expenses.

Several months later, based on analysis of Juarez's interview after the shooting, surveillance videos from the shooting, and ShotSpotter reports, the FBI determined it was likely that Juarez shot first, rather than returning fire. FBI agents then interviewed Juarez again about the circumstances surrounding the shooting, and Juarez stated that he shot first after another individual pointed a firearm at him, and he believed his life was in danger. Juarez further stated that after this initial round of shooting, the individuals retreated, and returned several minutes later and returned fire.

At the status conference on held on February 5, 2026, the Court and the defense asked the government about specific items it intended to elicit during its case-in-chief. At that hearing, the government stated that it did not intend to present evidence relating to the shooting at trial. Accordingly, the Court stated: "The shooting -- evidence of the shooting is excluded" and the defense did not object. Dkt. No 176 at 6 (transcript of February 5, 2026, hearing).

Evidence of the June 9 shooting and Juarez' statements about the shooting law enforcement is collateral to the charged crimes and introduction of this evidence risks devolving into a mini-trial about what happened on that night. Accordingly, the government stands by its position that it does not intend to introduce evidence of the shooting during its case-in-chief. The Court's ruling that "evidence of the shooting is excluded" should apply equally to the defense on cross-examination. However, if the Court permits the defense to elicit on cross-examination facts relating to the shooting, Juarez's statements to law enforcement about the shooting, or the fact that the government paid approximately $8,568.07 to relocate Juarez after the shooting, then the government should be able to question Juarez on these matters on direct examination. Courts have long held that "[m]inimizing the 'sting' of an opponent's impeachment by initiating the impeachment yourself is a time-honored trial tactic, however, one practiced by prosecutor and defendant alike." *United States v. Ewings*, 936 F.3d 903, 909 (7th Cir. 1991) (collecting cases). Rule 607 further states that: "Any party, including the party that called the witness, may attack the witness's credibility." As such, if the defense is permitted to cross-examine Juarez about the shooting and its aftermath because the Court determines it is probative of his bias, motive, or character for truthfulness, then the government should be permitted to raise those issues on

direct examination.

## CONCLUSION

For the reasons stated above, and as stated in the proposed order below, the defense should be precluded from cross-examining Juarez on impermissible subject matter and should be prohibited from introducing extrinsic evidence on collateral matters to prove Juarez's character for truthfulness, as required by Rule 608(b).

DATED: August 27, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/* ____________________
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorneys

**[PROPOSED] ORDER**

For the reasons set forth in the government's motion, the cross-examination of Mario Juarez should be limited in the following ways:

- The defense is prohibited from cross-examining Juarez regarding civil litigation or related actions that are collateral to the charged crimes, including any actions related to Juarez's real estate license.
- The defense is prohibited from cross-examining Juarez about any collateral arrests or charges that did not result in convictions, including the facts surrounding those arrests or charges.
- While the defense may cross-examine Juarez about the facts surrounding payment for the October/November 2022 mailers, the defense is prohibited from eliciting or raising that Juarez was charged by the ACDAO in 2024 (which charges were subsequently dismissed).
- To the extent the defense cross-examines Juarez regarding the facts contained in the 2024 ACDAO search warrant affidavit relating to alleged real estate fraud, the defense is prohibited from introducing extrinsic evidence to prove that conduct under Rule 608(b).
- Any cross-examination relating to allegations that Juarez misappropriated money from Evolutionary Homes or the Duongs shall be limited to avoid a mini-trial and Rule 608(b) prohibits introduction extrinsic evidence on this subject.
- If the defense intends to cross-examine Juarez regarding the June 9, 2024, shooting at his residence, his statements to law enforcement after the shooting, or the government's payments to relocate Juarez after the shooting, then the government shall be permitted to address these issues on direct examination.
- To the extent defense plans to cross Juarez on other extrinsic acts or prior activity, the defense shall provide the government notice beforehand so any objections can be raised with the court outside the presence of the jury.

IT IS SO ORDERED.

DATED: ____________________

____________________________
YVONNE GONZALEZ ROGERS
Chief United States District Judge