CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3717
FAX: (510) 637-3724
Abraham.fine@usdoj.gov
Molly.priedeman@usdoj.gov
Lloyd.farnham@usdoj.gov
Brandon.moore@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES<br>DAVID TRUNG DUONG, AND<br>ANDY HUNG DUONG,<br><br>Defendants. | CASE NO. 4:25-cr-0003-YGR<br><br>UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF PRIOR ALLEGED BAD ACTS |

## INTRODUCTION

Defendants' Motion *in Limine* No. 5 seeks to exclude several categories of evidence concerning the Duongs' prior conduct and relationship with Mario Juarez. Most significantly, they seek to exclude statements Juarez made to the Duongs in the October 5, 2022 video recorded while they celebrated the formation of Evolutionary Homes. Juarez's statements in that recording expressly invoked his involvement in the Duongs' prior bribery scheme as evidence of his loyalty to them and his intent to continue such loyalty in their new joint venture. As set forth in prior briefing, the Juarez toast video is admissible as a co-conspirator statement. *See* Dkt. No. 237. Furthermore, the video is direct evidence of the charged conspiracy, and testimony explaining the event Juarez referenced is necessary to understand those statements and the relationships among the coconspirators. Alternatively, the evidence is admissible under Rule 404(b) for non-propensity purposes. The remaining challenged evidence is likewise relevant to disputed issues at trial and should not be excluded.

## FACTUAL BACKGROUND

### I. The October 5 Video and the Prior Recycling-Contract Scheme

The government seeks to admit Trial Exhibit 540, a video recorded by A. Duong on October 5, 2022. As described in more detail in the United States' Response to Defendants' Objection to Admission of Certain Coconspirator Statements, the October 5 video was recorded the day that Juarez, David Duong, Andy Duong, and other Duong family members met at the office of California Waste Solutions (CWS) to celebrate the formation of Evolutionary Homes. In the video, Juarez expresses his excitement about going into business with the Duongs and references the fact that he was in their office "the day after [CWS] won the City of Oakland contract," when the Duongs were "paying everybody," and when the Duongs asked what he wanted he said he just "want[ed] to do business with [them]." *See* Priedeman Decl., Ex. A (Transcript of Trial Exhibit 540) at 2:9-15. Juarez goes on to state "I defended your family, I defend CWS, I defend them physically . . . we advocate for CWS every time we have a problem, if anyone f***s with CWS, I have stepped up to the plate. And I think I've proven that time and time again." *See id.* at 2:19-23.

The government expects Juarez to testify that these statements were a reference to his involvement in the Duongs' prior bribery schemes, including a bribery scheme related to CWS's recycling contract in 2014-2015 and his willingness to get in physical altercations on behalf of CWS. The government anticipates that Juarez will testify that in approximately 2014-2015, he was present at the CWS office and helped the Duongs count the cash that was paid to Oakland public officials and other individuals in exchange for their assistance in obtaining the recycling contract with the City.[1]

## ARGUMENT

### I. The October 5 Video and Juarez's Involvement in the Duongs' Prior Bribery Schemes is Direct Evidence of the Charged Conspiracy and is Not Subject to Rule 404(b)

Rule 404(b) generally governs evidence of "other acts." However, other acts evidence "is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense." *United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) (internal citation omitted). This kind of inextricable link can occur in one of two ways: (1) when "particular acts of the defendant are part of . . . a single criminal transaction," or when (2) the "'other act' evidence . . . is necessary [] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 794 (internal citation omitted).

The October 5 video is direct evidence of the charged conspiracy, not evidence of an unrelated prior act offered to establish the Duongs' propensity to commit bribery. The October 5 video was filmed during the course of the conspiracy, on the day that the Duongs and Juarez were celebrating the formation of Evolutionary Homes and after Juarez had already reached out to Sheng Thao to schedule a meeting to discuss her support for Evolutionary Homes in exchange for assistance on her campaign. As detailed in the government's briefing regarding the coconspirator statements, Juarez's statements in the video were in furtherance of the conspiracy because they were designed to convey Juarez's loyalty to the Duongs by referencing their prior relationship and Juarez's role in their prior bribery scheme, his willingness to defend CWS and the Duongs, and his excitement for the formation of Evolutionary Homes. Juarez's statements therefore did not merely occur during the conspiracy, they were part of the interactions among

[1] Items numbers 1-9 identified in D. Duong's motion relate to potential testimony regarding Juarez's involvement in the Duongs' prior bribery schemes, including the recycling contract scheme.

coconspirators as they formed and celebrated the new business venture at the center of the charged scheme. They are thus direct evidence of the charged conspiracy rather than evidence of an "other act" offered to prove character and are not subject to Rule 404(b). *See United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ("We conclude that each action was 'inextricably intertwined' with the conspiracy, and therefore are not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy."); *United States v. Cervantes*, 170 F. Supp.3d 1226, 1234 (N.D. Cal. 2016) ("acts allegedly carried out in furtherance of the conspiracy . . . need not be analyzed under Rule 404(b)").

Juarez's testimony concerning the underlying bribery scheme referenced in the October 5 video and his involvement in the Duongs' other bribery schemes is likewise admissible because it is "necessary [] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995). Without some explanation of the events Juarez was referencing, the jury would be unable to understand the significance of his statements in the October 5 video or what those statements reveal about the relationship between Juarez and the Duongs.

Juarez's testimony regarding the prior scheme also explains the history and nature of his relationship with the Duongs, the basis for mutual trust, and the context in which they subsequently formed Evolutionary Homes together. *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (holding testimony regarding prior criminal conduct was inextricably intertwined where it was offered to establish a witnesses' relationship to the defendant). In particular, Juarez's testimony explains what he meant when, while celebrating the formation of Evolutionary Homes with the Duongs, he invoked his prior involvement in their bribery schemes. The evidence will therefore allow the jury to understand why Juarez would openly reference his prior criminal assistance to the Duongs in their presence while affirming his loyalty to them and celebrating their new business venture, and why the Duongs would go into business with Juarez. Without that context, the jury would receive an incomplete account of the October 5 video and the relationship among the coconspirators.

## II. Alternatively, Juarez's Involvement in the Duongs' Prior Bribery Scheme is Admissible Under Rule 404(b)

Even if the Court concludes that testimony concerning the prior scheme constitutes other acts evidence subject to Rule 404(b), it is admissible to show knowledge, intent, and the relationship among the parties. The government does not intend to offer the prior scheme to establish that the Duongs have a propensity to commit bribery. Rather, the evidence explains the history of the relationship among the participants, and in particular, the degree of trust between Juarez and the Duongs. *See United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir. 1985) ("evidence of prior criminal acts may be relevant in conspiracy cases to show the background and development of the conspiracy.")

The prior scheme, and Juarez's invocation of that scheme in the October 5 video, are also admissible to establish the Duongs' knowledge and intent. During the October 5 video Juarez openly referenced the Duongs' involvement in a prior bribery scheme and explicitly linked their new business venture to the prior scheme. Despite Juarez's statements implicating the Duongs in the prior bribery scheme, the Duongs chose to invest over a million dollars in Evolutionary Homes with Juarez as their business partner. Their decision to move forward with the business despite Juarez's reference to their participation in a prior bribery scheme is direct evidence of their understanding of the role Juarez expected to play in the business and their own corrupt intent in forming Evolutionary Homes. The evidence is relevant not because the Duongs previously engaged in bribery but because Juarez referenced his involvement in the bribery scheme at a pivotal moment in the formation of Evolutionary Homes, and instead of walking away, the Duongs moved forward with the venture. Their response is probative of their understanding of Juarez's role in the conspiracy and their intent in forming the company. The video also undercuts any argument by the Duongs that Juarez was operating without their knowledge or that they were unaware of his background.

The passage of time between the prior bribery scheme and the charged conduct does not diminish the evidence's probative value. Juarez himself invoked the prior scheme to the Duongs during the charged conspiracy while celebrating the formation of Evolutionary Homes. Thus, the relevance of the prior conduct to the participants' relationship is not merely an inference drawn by the government,

Juarez's own statements demonstrate that the prior event remained salient to their relationship when they formed the new venture.

Finally, the evidence satisfies Rule 403. The evidence is highly probative because Juarez himself invoked the prior scheme during the charged conspiracy, making that history directly relevant to understanding both his statements, the relationship among the coconspirators, and the defendants' intent in forming Evolutionary Homes. The government does not intend to conduct a mini-trial concerning Juarez's involvement in the Duongs' prior bribery schemes. Defendant's concern that admission of this evidence will result in numerous collateral mini-trials likewise does not warrant exclusion. The government does not intend to conduct a detailed mini-trial concerning every payment Juarez made on behalf of the Duongs over the course of their relationship. Rather, the government intends to elicit the limited facts necessary to explain the conduct Juarez referenced in the October 5 video, the assistance he personally provided the Duongs, and the resulting nature of their relationship. That limited presentation substantially reduces any chance of undue delay or confusion.

### III. The Court Should Admit the Other Evidence Detailed in Defendants' Motion

Defendants also seek to exclude testimony regarding Andy Duong's practice of photographing and recording politicians for use as blackmail, Juarez's observation of the deletion of CWS surveillance footage, and the Duongs' use of consulting agreements to make payments to politicians. Each category is relevant to disputed issues at trial, and none should be excluded under Rule 403.

First, the government recovered hundreds of photographs and videos from Andy Duong's phone, including photographs and videos of events and individuals relevant to the charged conspiracy. Juarez is expected to testify that Andy Duong told him that he took photographs and videos of politicians so that he could later use the material as leverage or "blackmail." That testimony is relevant to explain why Andy Duong repeatedly photographed and recorded his interactions with public officials and other individuals and provide context for the photographs and videos recovered by the government. As described in prior briefing, Andy Duong and Juarez explicitly discussed taking Larry Gallegos to party (the Oakland official they pushed Thao to appoint to a high-level position in Oakland's housing department) and the government recovered from Andy Duong's phone videos of their night out at a

karaoke club. The government does not intend to offer the statement to show that Andy Duong has a bad character or a propensity to engage in blackmail, but to explain his conduct in creating evidence directly related to the charged conspiracy. Accordingly, this is not Rule 404(b) evidence, but rather evidence directly relevant to the charged conspiracy.

Second, Juarez's testimony that he previously observed members of the Duong family deleting CWS surveillance footage is relevant to explain the absence of surveillance footage from the May 3, 2024 assault of Juarez at CWS. Evidence that Juarez previously observed the deletion of footage from the surveillance system therefore is relevant to the jury's assessment of why no corresponding footage exists for May 3, 2024.

Finally, the government anticipates introducing evidence regarding a bribery scheme with former San Leandro City Councilmember Bryan Azevedo through a consulting company in his wife's name. As detailed in the government's opposition concerning 404(b) evidence, the evidence is inextricably intertwined with the charged conspiracy, and is relevant to Defendants' intent regarding the purpose of the payments Evolutionary Homes made to Jones in furtherance of the conspiracy.[2] *See* Dkt. 235 (United States' Consolidated Opposition to Defendants' Motion to Exclude Evidence).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's Motion *in Limine* No. 5.

DATED: September 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorneys

[2] The government does not anticipate eliciting testimony related to consulting contracts with the other two individuals listed in Item 12 in the Defendants' Motion.