Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHENG THAO, et al.,<br><br>Defendants. | No. CR 25-0003 YGR<br><br>**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE No. 2 REGARDING CROSS EXAMINATION OF MARIO JUAREZ** |

Where the government relies heavily on a cooperator "whose record for truthfulness is far from exemplary, … full disclosure of all relevant information concerning their past record and activities through cross-examination and otherwise is indisputably in the interests of justice." *United States v. Brooke*, 4 F.3d 1480, 1489 (9th Cir. 1993). As the *Brooke* court explained: "We cannot overemphasize the importance of allowing full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case." *Id*; *accord Silva v. Brown*, 416 F.3d 980, 986 (9th Cir. 2005); *see also*, *e.g.*, *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) ("When the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights."). Mario Juarez has a long history of frauds and lies. The Court should deny the government's effort to limit evidence bearing on his credibility.

Juarez's prior acts of dishonesty fall into three categories, sometimes overlapping, that are admissible for three reasons. First, all are "specific instances of [his] conduct" that are "probative of [his] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Second, some are relevant to his motives, intent, or modus operandi with respect to his actions in this case. Fed. R. Evid. 404(b). And third, some are inextricably intertwined with the facts. As the government points out, the Rules of Evidence prohibit admission of extrinsic evidence under Rule 608(b). However, there is no such bar where evidence of past misconduct is offered for another purpose, such as to show knowledge or intent under 404(b) (*Huddleston v. United States*, 485 U.S. 681, 685 (1988)), to impeach by contradiction under Rule 607 (*United States v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999)), to show bias (*United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984)), or for any other proper purpose, including that it is inextricably intertwined with the underlying facts (*United States v. Murillo*, 288 F.3d 1126, 1138 (9th Cir. 2002)).

## I. Juarez's prior acts of fraud are admissible under Rule 608(b)

Rule 608(b) "authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness." *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013). Prior instances of dishonesty and fraud fall squarely within 608(b). *See United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992) ("Evidence of prior frauds is considered probative of the witness's character for truthfulness or

untruthfulness."); *United States v. Durant*, 89 Fed.Appx. 56, 60 (9th Cir. 2004) ("Evidence of certain instances in which [the witness] lied is clearly germane to his character for veracity."); *OWLink Technology, Inc. v. Cypress Technology Co., Ltd.*, No. 2:21-cv-00717-SPG-KES, 2023 WL 4291653, at *3 (C.D. Cal. Mar. 6, 2023) ("Forgery of documents is generally considered probative of a witness's veracity."); *United States v. Jackson*, 882 F.2d 1444, 1447 (9th Cir. 1989) (evidence that defendant was disciplined for misappropriating client funds 14 years earlier admissible under 608(b)).

The defense agrees that the Court has "wide latitude" to curtail cross-examination when its "minimal probative value" is "easily outweighed" by other legitimate interests. Govt. MIL 2, at 2 (quoting *United States v. Mikhel*, 889 F.3d 1003, 1048-49 (9th Cir. 2018)). Thus, in *Mikhel*, the court precluded cross-examination about an unrelated drug trafficking offense and a largely unfounded claim of witness intimidation. *Id.* at 889 F.3d at 1049. The court found the defense theory of relevance on these points "speculative, attenuated, and convoluted." *Id.* at 1049. But the evidence relevant to Juarez's credibility is not speculative, attenuated, or convoluted. Juarez has repeatedly and credibly been accused of fraud; he has been arrested for fraud; he has had to surrender his professional license because of fraud; and he has had civil judgments imposed on him for fraud. Rule 608(b) permits introduction of instances where prior conduct is "probative of the character for truthfulness or untruthfulness," and the Court should therefore permit cross-examination on these and other instances of fraud or dishonesty:

- Juarez, acting as a real estate broker, forged a lease agreement and defrauded a tenant of $30,000—conduct for which he was forced to surrender his license. Exh. A.
- Juarez was hired to collect a debt for A.C. but kept the money for himself, resulting in judgment of over $160,000 against him (Exh. B); and
- Juarez was hired by the City of Oakland to collect unpaid judgments and likewise kept over $30,000 for himself. The City sued, and (according to media reports) Juarez repaid the full amount. Exh. C.
- As a board member of a nonprofit organization, the Oakland Community Fund (OCF), Juarez purported to arrange a $45,000 loan between OCF and a community member. He convinced the borrower that the loan was from him personally and, when she repaid it, he pocketed the entire sum. Juarez was charged with felony grand theft in Alameda County, but the case was dismissed on motion of the prosecution. Exh. D.
- Juarez offered to help a church refinance its mortgage and submitted false escrow

> instructions in order to cause payouts to himself and entities he controlled, resulting in $240,000 in losses to the church; the church's lawsuit alleged that he did so in part by opening an account with a name similar to the church into which he caused funds intended for the church to be deposited. Exh. E.

The government argues that civil complaints and "the facts that underly the lawsuits" should be excluded, claiming case law demonstrates that "civil litigation is off limits during cross examination of government witnesses in criminal cases" (Govt. MIL 2, at 3), relying on the out-of-circuit decision in *United States v. Morrison,* 98 F.3d 619, 628 (D.C. Cir. 1996). It is true that, in *Morrison*, the court found no abuse of discretion where the district court denied cross-examination about a civil complaint. 98 F.3d at 628. But the decision has minimal analysis, and as the same circuit subsequently observed, *Morrison* does not address "what difference it might have made had the defendant sought to cross-examine the witness about the *substance* of the complaint" rather than its mere filing. *United States v. Whitmore*, 359 F.3d 609, 621 (D.C. Cir. 2004) (emphasis original). The government also cites *United States v. Bonnano*, 852 F.2d 434 (9th Cir. 1988), but that case also does not hold that civil litigation is inadmissible under 608(b). *Bonano* found only that, given the facts before it, the district court properly excluded cross about prior civil litigation because the questions would have been "cumulative of other evidence elicited upon lengthy cross-examination" and "irrelevant to the issues at trial." 852 F.2d at 439. In short, there is no rule against cross-examination on matters that generated civil litigation, whether or not the case reached judgment. Admissibility depends instead on whether the conduct is "probative of the character for truthfulness or untruthfulness." Rule 608(b).

The government is also wrong in arguing that 608(b) precludes admission of arrests or criminal conduct that did not result in conviction. It includes a quote from *United States v. Defendant(s)*, 2021 WL 1127163 at *6 (C.D.Cal. Mar. 24, 2021), that "typically, evidence of prior arrests is not probative of truthfulness and thus may not be inquired into on cross examination." Govt. MIL 2, at 4. But the *Defendant(s)* court went on to find that cross examination regarding a prior arrest *would* be appropriate "if the witness 'opens the door' by putting his credibility at issue[.]" 2021 WL 1127163, at *6 (citing *United States v. Epis*, 332

Fed.Appx. 409, 413-14 (9th Cir. 2009) (prior arrest for marijuana cultivation admissible to impeach defendant's claims about motivation for growing marijuana)); *see also United States v. Scott*, 74 F.3d 175, 177 (9th Cir. 1996) (prior arrests for possession of firearm admissible where witness denied owning firearms).[1] Here, the Court should permit cross-examination about prior arrests and investigations if Juarez opens the door. And regardless of whether the arrests come in, the conduct underlying those arrests and investigations is admissible under Rule 608(b).

The defense agrees that certain types of criminal conduct are more probative of credibility than others. Juarez's arrests for battery and fighting are not especially revealing of his character for truthfulness, and the defense does not intend to inquire about them. But embezzlement and theft are a different matter. The government cites a case in which the court found theft only "weakly probative" of character for truthfulness. Govt. MIL 2, at 4 (citing *United States v. Mitchell*, 502 F.3d 931, 967 (9th Cir. 2007)). But the probative value depends on the facts, not on the label attached to them. As the court held in *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982)—in a portion of the opinion not noted in the government's citation to that case—even theft convictions may be relevant "if the crime was actually committed by fraudulent or deceitful means." Juarez's acts of theft sound in fraud; for example, his grand theft arrest was based on him tricking his victim into believing she had borrowed money from him personally. Such conduct is highly probative of Juarez's character for truthfulness and should be admitted, regardless of what label a related criminal charge bore.

The government also wishes either to bar cross examination regarding Juarez's false statements about the June 9, 2024 shooting or to introduce the shooting on direct. Govt. MIL 2, at 7-8. The Court should deny this request. Juarez's false statements about the shooting, made

[1] The government quotes the line in *Michelson v. United States*, 335 U.S. 469, 482 (1948) that "[o]nly a conviction … may be inquired about to undermine the trustworthiness of a witness." *Michelson* predates the Federal Rules of Evidence, which control the analysis here. *Bourjaily v. United States*, 483 U.S. 171, 177 (1987) (distinguishing cases decided before 1975 on the grounds that the Rules of Evidence "now govern the treatment of evidentiary questions in federal courts"); *see Bredemeier v. Phillips*, 786 F.Supp.3d 1300, 1325 (C.D. Cal. 2025) (noting that *Michelson* relied on the Supreme Court's "supervisory power to formulate rules of evidence to be applied in federal criminal prosecutions" because "the Federal Rules of Evidence wouldn't be enacted until decades later") (internal alteration and quotation omitted).

both to OPD and to the FBI while he was cooperating, are specific instances of misconduct that are probative of truthfulness. However, without having heard Juarez's testimony, the defendants have not yet collectively determined whether they will cross-examine Juarez on this topic. If they do so, the government can address the matter on redirect. The government has represented that it will not offer evidence of the shooting in its case,[2] and it should not permitted to revisit that decision in anticipation of cross examination that may not occur.

In short, the Court should follow Rule 608(b) and admit prior instances of conduct that are probative of Jaurez's credibility, whether or not they resulted in litigation, judgments, or arrests. As the proponent of 608(b) evidence, the defense must "have a good faith belief in the misconduct" at issue, and the basis for its belief "must be established to the satisfaction of the court, outside the presence of the jury," before the prior misconduct is admissible. *United States v. Davenport*, 753 F.2d 1460, 1463-64 (9th Cir. 1985). The defense is prepared to present to the Court, at the appropriate time and in the appropriate manner, the prior misconduct it intends to introduce during cross-examination of Juarez as well as the basis for its good faith belief that Juarez committed the acts in question.

## II. Juarez's prior acts of fraud are admissible under Rule 404(b)

Rule 608(b) is not the only relevant rule. Under Rule 404(b), the defense may introduce evidence of prior conduct relevant to Juarez's motives or modus operandi, among other purposes. *United States v. McCourt*, 925 F.2d 1229, 1232 (9th Cir. 1991) (404(b) evidence "may be offered by any party"). "[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Espinoza*, 880 F.3d 506, 516 (9th Cir. 2018) (quotation omitted). "[C]ourts should indulge the accused when the defendant seeks to offer prior crimes

[2] On February 5, the Court asked the government "are you going to try to get in evidence of the shooting in this case?" When government counsel responded "no," the Court said "evidence of the shooting is excluded." Dkt. 176 (transcript), 6. The government now argues that the Court's statement should be read as preemptively denying a defense motion under Rule 608(b). Govt. MIL 2, at 8. The Court was not addressing the defense or Rule 608(b), and its statement cannot fairly be read as denying a motion that had not been made. The Court should address the question of admissibility of the shooting when the matter is ripe, after Juarez's direct testimony.

evidence of a third person for an issue pertinent to the defense other than propensity." *McCourt*, 925 F.2d at 1236; *accord United States v. Cruz-Garcia*, 344 F.3d 951, 955 n.3 (9th Cir. 2003).

As the defense has explained in previous filings, Juarez has repeatedly engaged in business ventures, defrauded his partners, and then attacked them when his misconduct was exposed. The exhibit attached to the government's motion reveals two such instances:

- Juarez received a $3,000,000 loan from J.C., secured against property, and never paid a dime back. When J.C. pressed for payment, Juarez "began becoming threatening, telling [J.C.] if he tried to evict him or foreclose on the properties, he would make the life of [J.C.] and anyone who helped [him] hard by causing him a lot of trouble in Oakland. He told [the lender] he was very powerful and very connected and that he could make things hard for [J.C.'s entity] in Oakland and Alameda County." Dkt. 289.3, at 5.
- Around the same time, Juarez took out a loan for $250,000 from S.C. and purported to secure it against the same property, but without revealing J.C.'s preexisting $3,000,000 encumbrance. Again, he paid nothing back. *Id.* at 4. J.C. foreclosed on the property, leaving S.C. without recourse. When S.C. told Juarez he would go to the police, Juarez became "antagonistic, dismissive of repayment, and threatening. … Juarez went as far as to show up at [S.C.'s] wife's place of business on 5/2/24 and began trying to publicly humiliate [S.C.] to her by alleging he engaged in acts with prostitutes." *Id.*

Again, these are not the only time Juarez refused to repay lenders or investors and then accused them of wrongdoing when they complained. And as the government notes, he was charged with theft for defrauding the printer who created the mailers Juarez sent attacking Sheng Thao's political opponents. As in the examples above, Juarez's response was to go on the attack: he alleged that the then-District Attorney brought the charges in retaliation for his refusal to accede to her demand for a $25,000 campaign contribution. Exh. F (Motion to Dismiss, 3-4). The state responded both by denying the allegation and by filing documents demonstrating that the prosecution was initiated months before supposed payment demand. *Id.* (Opposition, 7, 9).[3]

These instances, and others like them, are relevant to Juarez's modus operandi, because his conduct in this case followed the same pattern: the defense believes that the Duongs' repeated pressing for an accounting for the funds Juarez had received precipitated Juarez's

[3] In the same filing, the District Attorney's Office argued that "the case against the defendant can be proved beyond a reasonable doubt," citing, *inter alia*, the fact that, on the same day Juarez wrote the checks to the printer, he transferred the money out of the account on which the checks were drawn. Exh. F. Nonetheless, two months later, the District Attorney's Office dismissed the case for lack of evidence.

allegations of criminal activity and the altercation on May 3, 2024. The Court should admit prior acts that are relevant to Juarez's motive, intent, or modus operandi under Rule 404(b).

### III. Evidence of some of Juarez's prior acts of fraud is admissible because the acts are inextricably intertwined with the offense conduct.

Finally, certain of Juarez's prior misconduct is an integral part of the story of this case, such as the facts underlying his prosecution in Alameda County. *See* Govt. MIL 2, at 5. But the arrest and prosecution are as well. In April and May 2024, several of Juarez's fraudulent schemes were unraveling. His partners in Evolutionary Homes were pressing for an accounting of the money he had received. He had been charged for defrauding Butterfly Printers, with his plea hearing occurring on April 25. And on May 2, the individual who made the $250,000 loan described above went to the police after Juarez threatened him and his wife. All of this occurred in the days leading up to the confrontation on May 3, when Juarez showed up armed at CWS demanding money, and all of it is relevant to tell the full story of why the confrontation occurred and what was at stake for Juarez in losing his partnership with the Duongs.

### IV. Conclusion

The Court should permit cross examination of Juarez based on specific instances of his prior misconduct that are relevant to his credibility, relevant to show motive, intent, or modus operandi, or are intertwined with the facts of this case.

Dated: September 3, 2026

Respectfully submitted,

/s/

Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Duong