# EXHIBIT E

DEAN W. MCPHEE (#62104)
MCPHEE & MCPHEE
1300 CLAY STREET, SUITE 600
OAKLAND, CA 94612
TELEPHONE: (510) 567-0500
FACSIMILE: (510) 567-0524

Attorneys for Plaintiffs
East Oakland Faith Deliverance Center,
a California Non-Profit Corporation,
Ray E Mack, an individual

FILED BY FAX
ALAMEDA COUNTY
June 13, 2019
CLERK OF
THE SUPERIOR COURT
By Cheryl Clark, Deputy
CASE NUMBER:
RG18892913

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| East Oakland Faith Deliverance Center, a California Non-Profit Corporation, Ray E Mack, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Mario Juarez, individually and doing business as Mario Juarez Realty, Villa One LLC, an entity of unknown form, Old Republic Title Company, a corporation, and DOES 1 through 400 inclusive,<br><br>Defendants | Case No.: 18 892 913<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>BREACH OF CONTRACT;<br>BREACH OF FIDUCIARY DUTY<br>FRAUD;<br>MISREPRESENTATION<br>CONCEALMENT<br>UNJUST ENRICHMENT;<br>BREACH OF CONTRACT<br>UNFAIR BUSINESS PRACTICES |

FIRST AMENDED COMPLAINT FOR DAMAGES

---

**BREACH OF CONTRACT; BREACH OF FIDUCIARY DUTY; FRAUD; MISREPRESENTATION; CONCEALMENT; UNJUST ENRICHMENT; BREACH OF CONTRACT; UNFAIR BUSINESS PRACTICES**

Plaintiffs East Oakland Faith Deliverance Center, a California Non-Profit Corporation, on its own behalf and on behalf of its Trustee, and President, Ray E Mack, an individual, are informed and believe and thereon allege as follows:

**Parties, Jurisdiction, Venue**

1. This litigation concerns improved real property located in the County of Alameda, City of Oakland. Said real estate is hereinafter referred to as "the property."

2. The contracts which form part of the subject of this action were made, entered into, and to be performed in Alameda County, as were the acts and omissions complained of herein.

3. Plaintiff East Oakland Faith Deliverance Center is a California non-profit corporation authorized to do business in doing business in the State of California, with its principal place of business in Oakland, California. Said corporation is hereinafter referred to as "the Deliverance Center", and brings this action on its own behalf and on behalf of its Trustee and President to the extent that the latter claims or is entitled to any proceeds recovered hereunder.

4. Plaintiff Ray E. Mack, (hereafter "Mack") is an ordained minister who resides in Alameda County, California, and brings this action in his individual capacity and as the President of the Deliverance Center.

5. Except as alleged herein, plaintiffs are unaware of the true names and capacities of defendants sued as Does 1 through 400 and therefore sue them by these fictitious names. Plaintiffs will amend this complaint to state their true names and capacities when these have been ascertained. Each defendant named herein, whether as an individual or as a Doe defendant, is in some manner responsible for damages to the plaintiffs for breach of contract, breach of fiduciary duty, fraud, restitution, unfair business practices, or for other bases of liability as alleged herein.

6. Except as otherwise alleged, the defendants and each of them were acting as the agents, servants, representatives, each of the other, in doing the acts herein complained of herein and were each in some way responsible for the damages and unfair practices as alleged herein. Further, the acts and omissions of said defendants were authorized, approved and ratified by each any and all of said defendants.

7. Defendant Mario Juarez is a purportedly licensed real estate professional doing business

in the County of Alameda, California, under his own name and under the name of Mario Juarez Realty.

8. Defendant Old Republic Title Company is a corporation authorized to do business in doing business in the State of California, as a title company and escrow holder.

9. Defendant Villa One, LLC, (hereafter "Villa") entity of unknown form which participated with Defendant Juarez in making false and fraudulent claims against an escrow opened on behalf of plaintiffs with, Old Republic Title Company.

10. Defendants Juarez, Villa One, LLC and Does 1 through 200, and each of them, were at all relevant times in doing the acts and omissions herein alleged were acting as agents and co-conspirators. Said defendants are hereinafter referred to as the Juarez Defendants.

11. Defendants Old Republic and Does 300 through 400 were at all times business entities operating in the State of California as escrow holders providing such services to facilitate transactions for the purchase and sale financing and/or refinancing of real property.

12. The damages to plaintiff and each of them exceed the jurisdictional minimum of this Court.

13. Plaintiff seeks injunctive and restitutionary relief which is within the subject matter jurisdiction of this Court.

14. Does 100 through 400 are business entities of unknown form which do business as a real estate brokerage and/or lenders and/or which in some manner owns, operates, controls, influences, or is otherwise responsible wholly or in part for the operations of the named entities..

**Fiduciary and Contractual Relationship of the Parties**

15. During the transactions herein alleged, plaintiff Rev. Mack individually and as the President of the Deliverance Center, was the sole representative of plaintiff The Deliverance Center in the matters herein alleged. Rev. Mack is a minister who is highly educated in theological matters but his area of expertise does not extend to sophisticated knowledge of the in matters pertaining to real estate transactions. In late 2013, it became necessary for The Deliverance Center to refinance the property it owns in Oakland, California. To do so, Rev. Mack sought the advice of someone who was familiar with such matters in order to obtain that person's advice and services regarding the loan which was necessary for the benefit of The Deliverance Center.

16. Rev. Mack was solicited by the Juarez Defendants via mail and in person to hire them as the representative of plaintiffs in connection with the proposed real estate refinance. The Juarez Defendants assured Rev. Mack that they were fully cognizant and expert in matters of a financial nature, and could provide Rev. Mack and the Deliverance Center with the appropriate expertise to enable them to complete the refinancing desired.

17. Rev. Mack advised the Juarez Defendants that the Deliverance Center was having financial problems because the holder of the existing encumbrance would not renew its note and demanded payment in full, and also because he had been unable to devote full-time efforts to the corporation because of personal matters, including, but not limited to, the fatal illness of his wife and the emotional and financial burdens that her illness had caused. Thus, Rev. Mack was in a vulnerable position, which the Juarez Defendants were well aware of and which they, with knowledge and intention, took advantage of as herein alleged.

18. The Juarez Defendants assured Rev. Mack that the Juarez Defendants would undertake to arrange the refinancing of the church property, that they were capable of providing expert financial services, that they were familiar with the intricacies of such financial matters, and that they would represent Rev. Mack and The Deliverance Center in order to help them through the financial crisis in which they were then involved. Under the circumstances, plaintiffs were unfamiliar with problems or difficulties which could arise in the process and reasonably believed that the Juarez Defendants were experienced and expert and would therefore be able to provide plaintiffs with expert advice regarding problems or issues which may or could arise.

19. Based upon such representations and further based upon the relationship of trust that had been instigated and fostered by the Juarez Defendants with Rev. Mack on behalf of the Deliverance Center, the Juarez Defendants and Rev. Mack, individually and on behalf of the Deliverance Center, entered into a contract, partially oral and partially written, under which the Juarez Defendants would act as the real estate brokers/loan brokers on behalf of Rev. Mack and the Deliverance Center. As such, the Juarez Defendants, became, and at all times mentioned herein were, in a fiduciary relationship with Rev. Mack and of the Deliverance Center in all matters connected with refinancing and related transactions as herein described.

20. Rev. Mack requested that the Juarez Defendants ascertain all liens and encumbrances then existing on the property and to further arrange to have all the then outstanding known obligations of the Deliverance Center to be determined and computed. Based upon this information, Rev. Mack further instructed The Juarez Defendants to arrange financing such that all liens and encumbrances and other obligations which had been determined by The Juarez Defendants and to exist would be paid in full with the proceeds of the refinancing. The Juarez Defendants repeatedly assured Rev. Mack and the Deliverance Center that they would gather this information, that they would confirm the outstanding obligations and would arrange to have the legitimate debts of the Deliverance Center to be paid from the proceeds of the refinancing they would arrange.

21. Thus, under the circumstances, no particular amount of money was discussed between the parties as being the necessary financial requirement; instead, the Juarez Defendants were instructed to arrange a loan secured by the real property in the amount, whatever it was, sufficient to cover those known obligations and thus consolidate all outstanding debt owed by the Deliverance Center.

22. The Juarez Defendants agreed to undertake the foregoing task on behalf of Rev. Mack and The Deliverance Center, and repeatedly represented to Rev. Mack and to other officials of the Deliverance Center that such actions as were necessary would be undertaken by him to ensure that all known debts and obligations outstanding of the Deliverance Center would be paid from the proceeds of the refinancing.

23. The contract for the provision of real estate/loan brokerage services provided, inter alia, for the payment to the Juarez Defendants of a commission for the provision of said services. This commission was a specified amount and The Juarez Defendants at no times represented indicated or disclosed that any payment would be made to them for the services rendered other than the amount of the agreed-upon commission for their services in arranging the loan. No other compensation was discussed or agreed upon by Rev. Mack individually or on behalf of The Deliverance Center.

24. During the course of these efforts, The Juarez Defendants represented to Rev. Mack that he individually could be required to guarantee the obligation of the Deliverance Center in connection with the refinancing and Rev. Mack agreed to do so.

25. The Juarez Defendants repeatedly assured plaintiffs that they would undertake the

efforts to confirm the outstanding obligations owed by the Deliverance Center; said defendants also advised that, in order to expedite the processing of the proposed transaction, the Juarez Defendants required numerous signatures on behalf of the Deliverance Center, and in order to facilitate this process, he suggested that Rev. Mack obtain an unlimited authorization from the Board of the Deliverance Center to act on its behalf. Pursuant to this request, Rev. Mack did so.

26. This was part of the Juarez Defendants scheme to defraud plaintiffs by intentionally creating a situation where Rev. Mack would become accustomed to relying on the Juarez Defendants alone for advice regarding documents to be signed by Rev. Mack on behalf of the Deliverance Center. The practice developed that the Juarez Defendants would present documents for signature to Rev. Mack and would specifically state to him that such documents were routine and were a part of the transaction he had been authorized to provide to the Deliverance Center. In reliance thereon, and due to the repeated assurances of the Juarez Defendants and the relationship of trust that had been specifically cultivated by The Juarez Defendants, Rev. Mack signed the documents presented.

27. Throughout the purchase process The Juarez Defendants continuously told plaintiffs that plaintiffs should repose trust and confidence in them because of their experience and ability in real estate transactions of this type and in this area. Further, The Juarez Defendants represented to plaintiffs that they would represent plaintiffs in the transaction as the agent and representative of plaintiffs and would have no conflict of interest by reason of any duty to any other party.

28. After the passage of several months, during which time the parties had numerous and friendly contacts, the Juarez Defendants eventually advised that they had been successful in both determining the liabilities of the Deliverance Center and in arranging financing secured by the real property in which to repay said obligations. The Juarez Defendants represented that the total amount necessary to do so was approximately $1,600,000. Relying upon the Juarez Defendants representations that this was the appropriate amount, Rev. Mack individually and on behalf of The Deliverance Center executed the documents provided by The Juarez Defendants to conclude the transaction.

29. Rev. Mack individually and on behalf of the Deliverance Center believed the Juarez Defendants and relied upon the representations made by The Juarez Defendants in executing the necessary documents to conclude the refinancing of the property. Rev. Mack and the Deliverance

Center were lulled into a sense of trust and security by the repeated representations of the Juarez Defendants and thus they believed that at all times the Juarez Defendants were telling them the truth, that they had in fact performed as they represented they would, and that all documents presented were legitimate, accurate, honest and truthful.

30. Defendant actively discouraged plaintiffs from investigating any of the information or documentation provided throughout the above described process, which occurred over several months, except those which the Juarez Defendants wanted plaintiffs to review. All during that time, the Juarez Defendants made numerous representations with the intention that they would be relayed to and relied upon by the plaintiffs. These representations were made orally to the plaintiffs, orally to agents of the plaintiffs, and in writing through the various communications from The Juarez Defendants to plaintiffs.

31. The representations and assurances provided by the Juarez Defendants were false in the following respects among others:

1) The Juarez Defendants did not and had not taken appropriate action to ensure that all known and outstanding obligations of the Deliverance Center were submitted and paid through the escrow set up to conclude the refinancing transaction. In fact, numerous obligations were omitted and remained outstanding after the refinancing had been concluded.

2) The Juarez Defendants in fact submitted to escrow false and fraudulent claims for expenses and obligations and debts purportedly owed by the Deliverance Center to themselves and/or to other entities, including but not limited to Villa One LLC and other undisclosed organizations and entities, which were controlled by the Juarez Defendants and from which the Juarez Defendants derived secret undisclosed payments.

3) The Juarez Defendants caused to be submitted to escrow for the transaction one or more false, fraudulent and forged requests for certain funds from escrow to be transferred to a bank account nominally in the name of The Deliverance Center but in fact controlled by The Juarez Defendants and/or The Juarez Defendants's agents or co-conspirators, which resulted in funds that should have been paid to The Deliverance Center being paid to The Juarez Defendants personally The amounts claimed by such false and fraudulent claims were in addition to and in excess of the real estate commission and loan brokerage fees which had been

agreed upon.

4) They further caused to be paid to them commissions for services not adequately rendered, as aforedescribed.

32. The total amount of false and fraudulent claims submitted to escrow is in excess of $240,000. These false and fraudulent claims were made without knowledge of or disclosure to or consent by Rev. Mack or the Deliverance Center at any time and have never been disclosed. In fact, the Juarez Defendants took active steps to conceal said payments, even to the extent of setting up false bank accounts in which payments could be deposited.

33. Having thus falsely and fraudulently violated the terms of the agreements they had with The Deliverance Center and Rev. Mack, and failing to perform in good faith their obligations thereunder, The Juarez Defendants are not entitled to, and should not have been paid, for any of the services rendered to Rev. Mack and The Deliverance Center, and such funds, are held in constructive trust as fraudulently obtained and therefore should be ordered returned to plaintiffs, each as their interest appears.

34. Defendants received commissions, and the secret payments and other sums which were unknown to plaintiffs in the course of the above described. These transactions were illegal, fraudulent, improper, and a breach of defendant's contractual, fiduciary, statutory and regulatory obligations and contrary to the specific representations made by the Juarez Defendants to plaintiffs

35. The Juarez Defendants did not disclose that they had received payments, except for their unearned commissions, from the refinancing transactions and they did not obtain plaintiffs consent to receipt of said payments which, plaintiffs are informed and believe consist of more than $ 240,000.00.

36. Plaintiffs reasonably believed the representations made to plaintiffs and plaintiffs' agents by the Juarez defendants and based on this belief and in reliance thereon, concluded the escrow transaction.

37. The Juarez Defendants' representations were material; said representations were made with the intent that plaintiffs rely upon them, plaintiffs did rely upon said representations as set forth herein, and, given the totality of the circumstances, said reliance was reasonable.

38. The representations made by the Juarez Defendants as to their intentions were false when made. Alternatively, said representations became false during the period when plaintiffs were relying upon them and at that point, defendants concealed from plaintiffs the falsity of said representations, when they had an affirmative duty to disclose.

39. The false and fraudulent acts and omissions by defendants, and each of them, were intentionally concealed from plaintiffs with the knowledge, acquiescence, and full participation by defendants, and each of them, who are individually and collectively responsible for any and all damages and or unjust enrichment and/or embezzlement and/or theft of such funds plaintiffs are legally entitled.

40. Plaintiffs did not know and had no reason to know of the fraudulent acts and omissions of defendants, as hereinabove alleged, until a time less than three years prior to filing this action.

41. Plaintiffs are informed and believe that the written contract under which the Juarez Defendants performed the services rendered provides for an attorney's fee award to the prevailing party in any action brought for breach of the obligations incurred by the parties under the terms thereof. Plaintiffs therefore claim attorney's fees to the extent allowed by the contract and by applicable law.

42. The acts of defendants and each of them were done fraudulently, willfully, wantonly, oppressively, maliciously and constitute despicable conduct carried out in violation of the rights and safety of plaintiffs, and plaintiffs are entitled to recover punitive and exemplary damages therefore. Said breaches of duty have actually and proximately caused damage to plaintiffs in an amount according to proof at and in excess of the jurisdictional minimum of this court.

43. The total amount borrowed pursuant to the transaction wrongfully managed by the Juarez Defendants, including Mario Juarez, Mario Juarez Realty, Villa One LLC and Does 1 through 200 inlcusive was $ 1,600,000, which was the amount purportedly borrowed pursuant to the transaction in issue; of said amount $ 1,211,000.00 was repaid to the holder of a prior Deed of Trust on the property, leaving a balance of the proceeds of the loan utilized for purposes other than repayment of the prior encumbrance in the amount of $ 389,000.00. Plaintiff alleges that the Juarez Defendants and Does 1 though 200 misappropriated $ 240,000.00 of said amount, based upon the false and

fraudulent and unearned claims made by the Juarez Defendants, the Doe defendants and /or their agents and employees. An itemization of the plaintiffs claims for repayment of the wrongful and fraudulent proceeds fraudulently obtained by said defendants is as follows:

a) A claim for $ 100,000.00 made through escrow for in the name of Villa One, LLC, with was a fraudulent claim not based on any obligation of plaintiffs and not authorized by plaintiffs in any manner.

b) Real Estate Commissions and Fees claimed by the Juarez defendants consisiting of $ 23,000.00 claimed by Mario Juarez Realty and paid from escrow for fees not earned by the Juarez Defendants and to which said defendants were not entitled.

c) An additional amount of $ $ 44,530, or according to proof, wrongfully claimed by the Juarez defendants through a false bank account with Wells Fargo Bank set up in the name similar to the East Oakland Faith Deliverance Center but in fact owned and controlled by the Juarez Defendants, which said defendants fraudulently instructed the escrow company to pay instead of directing the payments to the legitimate owner thereof,

d) Additional fees and charges made against the escrow account totaling and additional at least $ 85,000.00 made by or on behalf of the Juarez defendants though or allegedly on behalf of others secretly acting on behalf of or as agents for the Juarez defendants.

e) Due to the egregious, intentional, outrageous and fraudulent behavior of the Juarez defendant, punitive damages in the amount of at least $ 500,000 against the Juarez Defendants and each of theem.

f) Interest at the legal rate from and after March 1, 2014 on said amounts

g) Attorney's fees to the extent authorized by law or statute, in the amount of at least $150,000 or according to proof.

**First Cause of Action for**
**Breach of Contract**
**Against the Juarez Defendants**

44. Plaintiffs here realleges all allegations of paragraphs 1 through 43 inclusive of this complaint.

45. Plaintiffs and the Juarez Defendants entered into a contract, partially written and

partially oral, with the provisions, inter alia, as aforealleged for the provision of real estate/loan brokerage services to obtain refinancing for the property.

46.a The written contract provided, inter alia, for the payment to the Juarez Defendants of a commission for the provision of said services, which commission was the full compensation which the Juarez Defendants were to be provided for their activities on behalf of plaintiffs.

47. By doing the acts herein complained of the Juarez Defendants breached the contract with plaintiffs including breaching the terms of the contract, the fiduciary duty imposed by the contract and the implied covenant of good faith and fair dealing.

48. Plaintiffs have performed all covenants, conditions, and promises on their part to be performed under the contract except for those conditions which were excused or which defendants prevented plaintiffs from performing.

49. Said breach of contract has actually and proximately caused damage to Plaintiffs in an amount as specified in Paragraph 43 above, in excess of the jurisdiction of this Court, in an amount including but not limited to the commission wrongfully taken by the Juarez defendant, which commission they did not earn and were not entitled to, and which commission should be returned to plaintiffs...

50. Plaintiffs are informed and believes that the written portion of the contract contained in attorney's fees clause entitling the prevailing party in any action to recover reasonable attorney's fees.

**Second Cause of Action**
**Breach of Fiduciary Duty**
**Against the Juarez Defendants**

51. Plaintiff here realleges all allegations of paragraphs 1 through 50 inclusive of this complaint.

52. By reason of the acts of defendants as hereinabove alleged the plaintiffs were induced to and did impose trust and confidence in the Juarez Defendants who thereby became fiduciaries to plaintiffs. The fiduciary duties imposed on the Juarez Defendants by such relationship included not only all aspects of the real estate transaction anticipated by the contract between the parties, but also included the additional representations, promises and assurances provided by the Juarez Defendants as aforealleged, including but not limited to the affirmative duty to disclose all relevant facts and

circumstances in any way related to the legal and financial interests of plaintiffs pertaining to the transaction anticipated by the agreement between the parties, and to act with the highest duty towards plaintiffs.

53. In doing the acts herein complained of the Juarez Defendants were the agents, servants, representatives, or employees of the other defendants and were acting in furtherance of the interests of said defendants in doing the acts herein complained of.

54. By reason of the acts of defendants as hereinabove alleged the plaintiffs were induced to and did impose trust and confidence in the Juarez Defendants and said defendants thereby became fiduciaries to plaintiffs.

55. In doing the acts herein complained the Juarez Defendants were the agents, servants, representatives, or employees of all of other defendants and were acting in furtherance of the interests of said defendants and adverse to and in violation of the rights of plaintiffs in doing the acts herein complained of.

56. By doing the acts complained of herein defendants the Juarez Defendants breached their fiduciary duties to plaintiffs. By doing the acts complained of herein the Juarez Defendants breached the contract with plaintiffs including but not limited to breaching the implied covenant of good faith and fair dealing.

57. Plaintiffs have actually and proximately been damaged by the breaches alleged herein in the amounts specified in Paragraph 43 above.

. 58. The acts of the Juarez Defendants, and each of them were done fraudulently, willfully, wantonly, oppressively, maliciously and constitute despicable conduct carried out in violation of the rights of plaintiffs, and plaintiffs are entitled to recover punitive and exemplary damages therefore. .

**Third Cause of Action**
**For Fraud**
**Against the Juarez Defendants**

59. Plaintiffs herein reallege all allegations of paragraphs 1 through 58 inclusive of this complaint.

60. As set forth hereinabove the defendants and each of them, and their agents, servants, and representatives, made numerous representations to plaintiffs regarding the nature and extent of the

services to be provided by them and the fees therefore.

61. Said representations were false.

62. Said representations were made willfully for the purpose of deceiving plaintiffs into believing that they were true

63. Alternatively, said representations were made negligently without reasonable basis to believe that they were either true or false, but were later discovered to be false while defendants, and each of them, were under an affirmative duty to disclose said facts known to them.

64. Said representations were in fact false.

65. Plaintiffs believed said representations and acted in reliance in concluding the real estate refinancing of the property and the payment of the obligations claimed through the escrow, believing the representations that all obligations paid were a) all legitimate obligations that were valid as submitted to escrow and that all outstanding obligations were valid and legitimately payable by plaintiffs. Plaintiffs believed said representations and acted in reliance by refinancing the property and paying the debts and obligations submitted to escrow under the supervision the Juarez Defendants and defendant Old Republic Title Company and Does 300 through 400.

66. Plaintiffs and plaintiffs' agents reasonably relied on the representations and documentation submitted to escrow by the Juarez defendants. Said reliance was justified because plaintiffs reasonably believed that the Juarez Defendants would not lie or make representations to them.

67. The misrepresentations, fraud, and deceit of defendants and each of them has actually and proximately caused damage to plaintiffs in an specified in Paragraph 43 above, in the amount $240,000 and more according to specific proof.

68. The acts of defendants and each of them were done fraudulently, willfully, wantonly, oppressively, maliciously and carried out in violation of the rights and financial interests of plaintiffs, and plaintiffs are entitled to recover punitive and exemplary damages therefore. .

**Fourth Cause of Action**
**For Misrepresentation**
**Against the Juarez Defendants**

69. Plaintiff here realleges all allegations of paragraphs 1through 68 inclusive of this complaint.

70. Defendants and each of them had a duty to the plaintiffs to act reasonably and to avoid taking such actions as might foreseeably cause harm to plaintiffs.

71. By doing the acts herein complained the defendants and each of them breached said duty to plaintiffs.

72. Defendants' breach of duty has actually and proximately caused damage to plaintiffs in an amount according to proof and in excess of the jurisdictional minimum of this court.

73. Defendants and each of them had a duty to the plaintiffs to act reasonably and to avoid taking such actions as might foreseeably cause harm to plaintiffs.

74. By doing the acts herein complained the defendants and each of them breached said duty to plaintiffs.

75. Defendants' breach of duty has actually and proximately caused damage to plaintiffs in the amount specified in Paragraph 43 above, in excess of the jurisdictional minimum of this court.

**Fifth Cause of Action**
**For Concealment**
**Against The Juarez Defendants**

76. Plaintiff here realleges all allegations of paragraphs 1 through 75 inclusive of this complaint.

77. As set forth hereinabove, the Juarez Defendants and each of them made numerous representations to plaintiffs regarding the matters alleged above. By making such representations defendants and each of them came under an obligation to speak the full truth and not to mislead by omission or commission.

78. Defendants and each of them concealed their knowledge, either constructive, actual, or inquiry, regarding the matters alleged and were therefore under an obligation to disclose fully all material facts which they actually knew or should know in the exercise of reasonable care. Defendants did not make such disclosures to plaintiffs.

79. Plaintiffs were unaware of the facts concealed by defendants and each of them.

80. Plaintiffs actions were justified because plaintiffs reasonably believed that the defendants would not conceal material facts from them.

81. The above-described concealment by defendants and each of them has actually and proximately caused damage to plaintiffs in an amount in excess of $240,000 as specified in Paragraph 43 above.

82. By making such representations defendants and each of them came under an obligation to speak the full truth and not to mislead by omission or commission.

**Sixth Cause of Action**
**Unjust Enrichment/Restitution**
**The Juarez Defendants**

83. Plaintiff here realleges all allegations of paragraphs 1 through 82 inclusive of this complaint.

84. As hereinabove alleged, defendants and each of them profited by self-dealing and breaching their fiduciary duties by collecting a real estate commission on the sale of the property and other unlawful, unjust and unearned sums from the escrow account, as aforealleged as specified in Paragraph 43 above.

85. Said profits constitute ill-gotten gains and unjust enrichment to defendants which the defendants should not be permitted to retain. Said defendants hold such proceeds as constructive trustees for the benefit of plaintiffs and should be required account for such proceeds and to make restitution to plaintiffs in an amount equal to fraudulently obtained funds, and any and all profits therefrom.

**Seventh Cause of Action**
**Breach of Contract**
**Against Old Republic Title etc., and Does 300 through 400**

86. Plaintiff here realleges all allegations of paragraphs 1 through 85 inclusive of this complaint.

87. Defendant Old Republic and Does 300 through 400 were escrow holders and had a fiduciary duty to make full disclosure of any false, fraudulent, suspicious or otherwise irregular actions of any other entity and otherwise to comply with the terms of the duties imposed by the escrow

instructions and duty of due care in performance thereof.

88. Defendant Old Republic and Does 300 through 400 breached their contractual and common law duties by failing to do so, thereby causing or contributing to the damages to plaintiffs as aforealleged.

**Eighth Cause of Action for**
**Unfair Business Practices**
**Business & Professions Code § 17200, et seq.**
**Against All Defendants.**

89. Plaintiffs here realleges and incorporates by reference the allegations contained in Paragraphs 1 through 88 of this Complaint.

90. Plaintiff brings this cause of action on behalf of the general public.

91. As otherwise alleged herein, defendants engaged in unfair business practices as defined in Business and Professions Code section 17200, et seq., which caused financial damage to plaintiffs and exposed the general public to such unfair business practices. . Defendants' practices causing damage or risk to the general public included, without limitation:

a) defendants concealed their activities as afore alleged;

b) defendants made affirmative misrepresentations regarding the amount of commissions being charged to Plaintiffs;

c) defendants took improper or illegal commissions, improperly or illegally increased the amounts charged for the refinancing and /or defendants misrepresented or over-billed for services purportedly but not actually provided to Plaintiffs;

d) defendants took commissions, secret profits, or over-billed plaintiffs for products and services, without disclosing same and in circumstances where such disclosure was reasonably expected and required by their positions as fiduciaries;

92. The above-described acts constitute unlawful and/or unfair practices as prohibited by Business and Professions Code section 17200, et seq.

93. As a result of the unfair practices described herein, defendants were unjustly and unfairly enriched, and Plaintiffs were deprived of an amount presently believed to be in excess of $240,000. Plaintiffs were deprived of money which defendants' acquired through their unfair

practices; and Plaintiffs are entitled to restitution of money which defendants acquired through the unfair business practices described herein.

94. Unless enjoined by this Court, defendants will not disclose the amounts of commissions, secret profits, and/or increased costs charged by and to themselves and to other members of the general public as a result of the unfair business practices described herein thus plaintiffs and other victims will continue to be unaware of, and continued to be victimized, by the unfair business practices of defendants and each of them, all to the continued harm of Plaintiffs and the general public.

95. Defendants and each of them who have acquired money belonging to Plaintiffs hold such funds as constructive trustees of Plaintiffs which must be ordered to be returned to plaintiffs.

WHEREFOR PLAINTIFFS PRAY FOR RELIEF AS FOLLOWS TO THE EXENT AUTHORIZED BY APPLICABLE LAW FOR EACH CAUSE OF ACTION:

1. for damages as aforealleged above and specficially in Paragraph 43 above as against the Jaurez defendants and according to proof regarding the remaining defendants.

2. for interest upon said damages at the maximum rate and for the maximum time allowed by statute;

3. for restitution of all funds illegally obtained and/or retained by defendants

4. for punitive and exemplary damages as specified in Paragraph 43 above;

5. for injunction against further unlawful practices

6. for attorneys' fees according to the contract;

7. for injunctive relief to prohibit further fraud and misrepresentation by defendants in any and all future transactions;

8. for costs of suit herein incurred;

9. for such other and further relief as the court may deem just and proper.

DATED: May 7, 2019

McPHEE & McPHEE

[signature]

Dean W. McPhee
Attorneys for Plaintiffs