Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHENG THAO, et al.,<br><br>Defendants. | No. CR 25-0003 YGR<br><br>**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE NO. 3 TO ADMIT STATEMENTS AS NON-HEARSAY** |

The defense requests that the Court deny the government's motion *in limine* to admit eight groups of out-of-court statements.[1]

**B.1. March 10, 2023 Thao-Hanson text messages**

The March 10, 2023, Thao-Hanson messages contain multiple declarations, and admissibility as to each one must be individually assessed. *See Williamson v. United States*, 512 U.S. 594, 599 (1994). But the government's analysis ignores specific portions of Ms. Hanson's 7:03 a.m. (OAK-0184249) text, which contains multiple layers of hearsay.

First, the government plainly seeks to introduce Ms. Hanson's text for its truth; as such, it is hearsay. The government wants the jury to believe that, as set forth in the text, Ms. Thao directed former City Administrator Harold Duffey to appoint Mr. Gallegos. *See* Dkt. 321 at 3; Dkt. No. 1 ¶ 63(e). It likewise seeks to convince the jury that Mr. Gallegos lacked the requisite skills and qualifications for a high-level Housing position. *See id.*; Dkt. 1 ¶¶ 37-44.

Second, even assuming Ms. Hanson qualifies as a Rule 801(d)(2)(D) agent/employee, the imbedded second-layer hearsay statement by Mr. Duffey is inadmissible. Mr. Duffey was not Ms. Thao's agent or employee. Although appointed by the mayor, the city administrator is confirmed by City Council and runs the day-to-day of city operations.[2] Mr. Duffey thus may be an agent of the City of Oakland, but he is not an agent of Ms. Thao any more than any federal employee is the agent of the president.

Third, Ms. Thao's response—"Yes I'll fill you in"—is not an adoptive admission. An adoptive admission "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). An offer to "fill you in" signals an intent to explain the situation further, which would be *unnecessary* had Ms. Thao accepted Ms. Hanson's account as true.

**B.2. July 4, 2023 Thao-Hanson text messages**

The government's citation to OAK-0184263-64 includes four texts by Ms. Hanson and three alleged texts by Ms. Thao. Like the March 10 text message, the July 4 Hanson-Thao text

[1] For ease of reference, this response uses the same numbering as the motion (Dkt. 292).

[2] *See* https://www.oaklandca.gov/Government/Departments/City-Administrator (last visited Sep. 2, 2026).

messages contain multiple-declarant statements that each must satisfy the hearsay rule. *See, e.g.*, *Pena-Gutierrez*, 222 F.3d at 1087.

First, even assuming Ms. Hanson qualifies as a Rule 801(d)(2)(D) agent/employee for this purpose, Ms. Hanson's 2:11:14 p.m. text (OAK-0184263) is Ms. Hanson's direct quotation of a Teresa Hoang (VABA) statement about sending trip invoices to Ms. Hanson. This second-layer statement is hearsay. It is squarely being offered for the truth about the invoices, and the government makes no argument (which it cannot now assert) that Ms. Hoang's statement is "not hearsay" under Rule 801(d). Ms. Hoang is also not (or alleged to be) a (2)(D) agent/employee of Ms. Thao, nor does the government allege Ms. Hoang is a (2)(E) coconspirator.

Second, even if all seven texts were not inadmissible hearsay, each statement (and in combination) is inadmissible as irrelevant and unfairly prejudicial under Rules 401 and 403. All of the statements relate to the July 2023 Vietnam trip, which the government alleges is "inextricably intertwined with the charged conduct. *See* Dkt. 233, Ex. 1 at 4-5 (arguing that the Vietnam trip shows that Ms. Thao "did not disclose" the trip in public disclosure forms, and that it is "evidence of the crime charged[] as it shows a financial benefit provided by the Duongs to Thao and Jones[]"). But what the government now alleges is a "financial benefit" evidencing the charged crime differs from what is charged in the indictment. The indictment alleges that the "things of value" Ms. Thao accepted were "$95,000 in payments made to JONES with the promise of additional payments and the benefit of a negative mailer campaign costing approximately $75,000 negative mailer campaign[.]" Dkt. No. 1 ¶ 66. Importantly, the government does not contend that the Vietnam trip is a *quid pro quo* example of a "promise of [an] additional payment" (*Id.*) provided <u>*specifically and directly in exchange*</u> for an official act. *See* Dkt. 318 (Joint Proposed Jury Instruc.) at 83-85 (joint request for *quid pro quo* instruction). The conduct is, at best, an uncharged non-bribery gratuity disconnected from the charged bribery. *See*, *e.g.*, *Snyder v. United States*, 603 U.S. 1, 5 (2024) (ruling that Section 666 does not criminalize gratuities, which are payments as a token of appreciation). The Vietnam trip could only unfairly prejudice and confuse the jury, which Rules 401 and 403 prohibit.

**B.3. July 4, 2023 email regarding payment for the Vietnam trip**

The government offers this email as a business record of CWS. The relevant rule requires both that the document be "kept in the course of a regularly conducted activity of a business" and that making such records be "a regular practice of that activity." Fed. R. Evid. 803(6). California Waste Solutions is not a travel business. There is no evidence that booking travel is one of its "regularly conducted" activities or that emails of this type were regularly written in connection with booking travel. *See Paddack v. Dave Christensen, Inc*., 745 F.2d 1254, 1258 (9th Cir. 1984) (holding that where was no evidence that audits "were conducted with any regularity," an audit report was not "not kept in the course of a regularly conducted business activity").

Nor is this email admissible as the statement of an agent. A statement by an agent must be made "within the scope" of the agency relationship to be admissible. Fed. R. Evid. 801(d)(2)(D). The government has not established that the scope of any agency relationship between David Duong and Teresa Hoang included travel planning. Indeed, it seeks to use this email to help prove that David Duong even knew about the travel arrangements. Unless the government shows David Duong had the right to control Hoang's actions in booking travel, there can be no agency relationship. *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (noting that agency relationships require that "both the principal and the agent must manifest assent to the principal's right to control the agent" with regard to the specific area of responsibility and finding that Barry Bonds and trainer Anderson did not "manifest assent that Bonds had the right to control Anderson's actions as a trainer").

Contrary to the government's argument, it is offering this email for its truth. The email concerns VABA's payment for travel expenses, and the government seeks to admit it to show that David Duong knew VABA was paying for travel expenses. This is offering it for its truth, because David Duong could not have known VABA was paying unless VABA was, in fact, paying. Similarly, the government's claim that it is offering this email to "prove the existence of benefits received by Thao" is also just another way of saying that it is offered it to prove that VABA in fact paid for Thao's travel.

**B.4. September 15, 2023 email regarding payment for the Vietnam trip**

The September 2023 email regarding payments for travel should be excluded for the same reasons as the July 2023 email. It is also not a CWS business record, and the government likewise seeks to offer it for its truth that VABA paid for Vietnam travel and that Thao received a benefit (in the form of travel payments) from VABA. Here, the government argues in addition that this email is relevant to explain subsequent actions regarding the trip. But it does not explain what actions those are or why the fact that VABA was the payor explains those actions.

**B.5. January 2024 Johnson-Thao text messages**

The government seeks to admit these messages to establish the substantive truth that Mr. Johnson met with David Duong to tour Evolutionary Homes. See Dkt. No. 321 at 3 (erroneously describing the text messages as occuring in January 2023). Mr. Johnson's statements are hearsay without an exclusion or exception. Just as with Mr. Duffey, Jestin Johnson—who was Oakland's subsequent city administrator—was also not Ms. Thao's agent/employee. Nor did Ms. Thao adopt Mr. Johnson's statements by simply responding, "Thanks!" Dkt. No. 292 Ex. 5. An adoptive admission requires more than "mere acknowledgment that [she] heard the statement;" it requires a showing that the party opponent "acced[ed] to the statement's truth." *United States v. Sanchez-Soto*, 617 F. App'x 695, 697 (9th Cir. 2015).

**B.6. April 2023 Juarez-Duongs email**

These messages containing inflammatory and baseless allegations and should be excluded under Rule 403. There is an acute risk that the jury would believe some of the allegations and find David or Andy Duong guilty on grounds wholly unrelated to proof of the charged offense. *See Old Chief v. United States*, 519 U.S. at 172, 181 (1997) ("[T]he risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance."). For example, the allegations that the Duong family "sponsored sexual services" for elected officials on the Vietnam trip would undoubtedly inflame the jury's sense of moral outrage. References to "David Duong's Glock" would paint Mr. Duong as a crime boss

who would brandish weapons at business meetings. These irrelevant and unsubstantiated allegations have no connection to the charged conspiracy. If offered in the form of testimony, they would certainly be excluded. Their only conceivable effect is to make the jury believe the Duongs are "bad" people who "deserve[] punishment." *Old Chief*, 519 U.S. at 181.

Admitting these emails will also result in several "mini trials." To prevent the jury from accepting Juarez's accusations, the defense would be forced to address allegations about weapon brandishing, straw-donor money laundering,[3] and facilitating prostitution. Significant time would be spent on these irrelevant matters. Courts routinely exclude evidence that would trigger a "full blown trial within [a] trial." *Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000).

Weighed against these unfair prejudicial effects, the probative value of the emails is slight. The government seeks to admit them only to show their effect on the Duongs and the breakdown of Juarez's relationship with the Duong family. But that narrow purpose can be established through other evidence—*e.g.*, that Juarez served legal papers on the Duongs a few days after these emails, causing him to lose access to EH offices—without the overlay of Juarez's accusations. Furthermore, since the defendants do not plan to argue that the relationship continued, the probative value is minimal. "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

Although courts have endorsed redacting unfairly prejudicial portions of documents, the risk of unfair prejudice here is so acute that this Court should exclude the emails entirely. Redacting the inflammatory allegations, which make up large portions of these lengthy emails, could heighten the risk by inviting jurors to speculate about what is hidden. Because these emails are only offered to prove a discreet fact which could be proven by less prejudicial alternatives, presenting heavily redacted versions of the emails runs a serious risk of "needlessly presenting cumulative evidence" and "misleading the jury." Fed. R. Evid. 403.

---

[3] At the February 5, 2026 status conference, and again on August 24, 2026, in an email to counsel, the government represented that it does not "intend to get into straw donations in [its] case-in-chief unless the defense somehow opens the door to that being relevant." The government should not be able to introduce what it has already disclaimed.

Finally, while limiting instructions are presumed effective, no instruction can reduce the emails' substantial prejudicial effect. *See United States v. Berry*, 627 F.2d 193, 198 (9th Cir. 1980) ("A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial…"). An instruction telling the jury to disregard the inflammatory allegations contained in the emails would be futile. Once a jury hears about supposed facilitation of "sexual services" and "paying for prostitutes" for public officials, no instruction can erase the resulting prejudice. *See e.g., United States v. Bland*, 908 F.2d 471 (9th Cir. 1990) (holding that limiting instructions could not cure the prejudice from disclosure that the defendant's arrest warrant was based on an alleged molestation of a minor, since the defendant could not receive a fair trial on the firearms charge after the jury learned this information).

**C.1. March 10, 2023, Duffey-Weinstein text messages**

Mr. Duffey's message to Emily Weinstein stating that "we will be appointing Larry Gallegos as your Deputy" is inadmissible hearsay. As set forth above, Mr. Duffey is not Ms. Thao's agent/employee. Nor is this message a business record. Because Rules 803(6)(B) and (C) require that the record be "kept in the course of a regularly conducted activity of a business" and that "making the record" was "a regular practice of that activity," the company must have "established procedures" for the "systematic or routine and timely making and preserving of" the type of document at issue, and the records must also be "relied upon by the business in the performance of its functions." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (citations omitted). The government makes no proffer that Oakland had any procedures for the "systematic or routine and timely making and preserving" of texts, or that the City "relie[s] upon" texts in the performance of its functions. It does not suggest that City employees regularly communicate about official business by text, much less that they regularly use them to document the type of information here. Instead, the government relies solely on the fact that the messages were between coworkers. That is not enough; as one court observed, the hearsay exception is for "business records," not "business communications." *Versata Software, Inc. v. Internet Brands, Inc.*, 2:08-cv-313-WCB, 2012 WL 2595275, at *7 (E.D. Tex. July 5, 2012).

As to the government's argument that the text "explain[s] Duffey's actions after the message" and establishes that the appointment was "an official act by Thao[,]" the government does not actually any action of Duffey that is explained by the text. And the text does not reference Ms. Thao, much less explain that appointing Gallegos was Ms. Thao's "official act." Finally, the government's argument that this message shows the timing of Gallegos's appointment does not justify its admission, as that timing is not subject to dispute.

**C.2. March 13, 2023 Duffey-Thao-Hanson text messages**

Harold Duffey's text message to Thao and Hanson stating that Gallegos "would like to hold off on accepting the position with HCD until after his meeting with the Mayor on 3/20" is multi-layer hearsay. It is an out-of-court statement by Duffey describing an out-of-court statement by Gallegos. Just as with the Duffey-Weinstein text, this is not a business record. Although the government claims it shows "Thao's involvement in and awareness of the appointment of Gallegos," the plain language says or suggests nothing about her "involvement," and her "awareness" of the appointment is not in contention. The government does not assert any effect this message had on anyone or what subsequent actions it explains. It is, instead, a text offered for its truth. Finally, this text is not a present sense impression, which is a statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Duffey is not describing an event or a condition but is relating something Gallegos said, and there no evidence he sent his message "while or immediately after" Gallegos's statement.

Dated: September 3, 2026

Respectfully submitted,

/s/
Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Duong