Jeffrey Tsai (SBN 226081)
*jeff.tsai@us.dlapiper.com*
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: (415) 615-6055

Darryl Louis Tarver (*admitted pro hac vice)*
*darryl.tarver@us.dlapiper.com*
DLA PIPER LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel: (410) 580-4123

*Attorneys for Defendant Sheng Thao*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHENG THAO,
ANDRE JONES,
DAVID TRUNG DUONG, and
ANDY HUNG DUONG,

Defendants.

Case No. 4:25-CR-00003-YGR-1

**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE NO. 4**

Date: September 11, 2026
Time: 9:00 a.m.
Judge: The Hon. Yvonne Gonzalez Rogers

## INTRODUCTION

Defendants have "broad cross-examination rights" to explore witness credibility and other matters relevant to the jury's consideration of witness testimony. United States v. Ray, 731 F.2d 1361, 1364 (9th Cir. 1984). Prior incidents suggesting or revealing witnesses' racial or gender biases go directly to credibility—particularly in a case where a woman is the elected official and lead defendant, and all four defendants proudly represent ethnic and racial minorities. Defendants are entitled to examine those potential biases before the jury.

Tellingly, as to the sexist statements by Messrs. Duffey and Johnson, the government attempts to cabin the impact of those statements to the unknown individuals to whom they were directly referring. See Dkt. No. 294 at 3 ("None of the allegations against Johnson or Duffey relates to or discusses the Defendants or the conduct charged in this case."). The government further argues—failing to cite any case law or other authority in support—that such statements should be out-of-bounds because they have not "been the subject of formal findings." Id. Yet both arguments ignore the statements' probative value in assessing gender bias, which would taint the credibility of each witness's testimony about their interactions with Ms. Thao—a woman who outranked them in the City of Oakland's government.

In the case of racially derogatory statements by Ms. Hanson—in which she refers to Black people and the NAACP as "tokens," and did so in March 2024, during the time frame of the alleged conspiracy—such statements go directly to Ms. Hanson's bias and credibility on matters regarding Andre Jones on which she is expected to testify. See Dkt. No. 253 at 4. Moreover, the fact that Ms. Hanson made disparaging remarks against one racial minority raises questions about Ms. Hanson's attitude toward other racial and/or ethnic minorities. For example, Defendants anticipate Ms. Hanson will testify that she believed Larry Gallegos, who is Latino, to be unqualified to be Interim Deputy Director of Housing at the time he was appointed. See Dkt. No. 321 at 3. Defendants are entitled to examine Ms. Hanson's racial biases during cross-examination to assess whether they impact her credibility on the issue of Mr. Gallegos's qualification for a leadership position.

**DISCUSSION**

"We cannot overemphasize the importance of allowing full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case." United States v. Brooke, 4 F.3d 1480, 1489 (9th Cir. 1993). A defendant has the particular right to cross-examine a witness regarding areas of potential bias. See, e.g., Ray, 731 F.2d at 1364 ("The district court abused its discretion in refusing to permit [defendant] to cross-examine [witness]" on specific matters that could lead to a jury finding that witness was biased against defendant). Importantly, "Rule 608(b) does not bar introduction of evidence to show that the witness is biased." Id.

Examining evidence of racial and/or gender biases held by government witnesses is part and parcel to the "full and fair cross-examination" to which each defendant in this case is entitled. Brooke, 4 F.3d at 1489. Defendants anticipate that Messrs. Duffey and Johnson and Ms. Hanson will each testify regarding components of the government's case that are directly implicated by their respective biases. For example, Messrs. Duffey and Johnson, who were Interim City Administrator and City Administrator, respectively, will testify about their interactions with Ms. Thao while they each worked for the City of Oakland. Dkt. No. 253 at 2, 4. Depending on each witness's testimony, evidence that they exchanged text messages objectifying and demeaning women is relevant to their credibility and potential bias regarding Ms. Thao, a woman who outranked them in the City's hierarchy. Similarly, Ms. Hanson will testify about her interactions with Andre Jones and other City of Oakland employees, presumably including Larry Gallegos. Dkt. No. 253 at 4. Ms. Hanson's opinions regarding whether Black people (like Andre Jones) and people of other racial minorities (like Larry Gallegos) were qualified for their roles or simply "tokens" is relevant to her credibility and any potential bias.

The government cites several non-binding cases to justify its position that matters of racial and gender bias are improper lines of inquiry. Dkt. No. 294 at 4. But these cases are all inapposite because they involve conduct that bears no conceivable relevance to the underlying case in which the witness was testifying. In United States v. Clark, 657 F.3d 578 (7th Cir. 2011), the court excluded evidence of sex toys and salacious personal matters that were unrelated to the charged drug offense. In United States v. Weldon, 2026 WL 2455143 (E.D. Pa. Aug. 21, 2026), the court

deemed evidence of internal affairs investigations into police officers for excessive force unrelated to the officers' character for truthfulness in a drug and gun case. United States v. Balwani, 2022 WL 597040, *23 (N.D. Cal. Feb. 28, 2022), concerned whether the defendant's own text messages about a reporter's French heritage were inflammatory and prejudicial, not whether a government witness could be cross-examined on matters related to credibility and bias. These cases offer no support for the government's position. Nor do they refute the fact that evidence of a witness's racial bias (and, by analogy, gender bias) can be "highly relevant" to a witness's credibility at trial. Okada v. Whitehead, 759 F. App'x 603, 605 (9th Cir. 2019).

The government asserts the fallback position that if Defendants are permitted to cross-examine Messrs. Duffey and Johnson and Ms. Hanson on these matters, evidence of their statements would be inadmissible under Rule 608(b) because it constitutes extrinsic evidence. Dkt. No. 294 at 4. Not so. Indeed, Defendants may cross-examine the witnesses using extrinsic evidence if such evidence is relevant for establishing a witness's bias. See Ray, 731 F.2d at 1364 ("Rule 608(b) does not bar introduction of evidence to show that the witness is biased.").

## CONCLUSION

For the foregoing reasons, Ms. Thao respectfully asks the Court to deny the government's motion in limine and permit Defendants to conduct full and fair cross-examination of Harold Duffey, Jestin Johnson, and Leigh Hanson, including cross-examination on past conduct that raises questions about each witness's credibility and potential bias.

Dated: September 3, 2026

Respectfully submitted,

DLA PIPER LLP (US)

By: /s/ *Darryl Louis Tarver*
JEFFREY TSAI
DARRYL LOUIS TARVER

*Attorneys for Defendant Sheng Thao*