CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3717
FAX: (510) 637-3724
Abraham.fine@usdoj.gov
Molly.priedeman@usdoj.gov
Lloyd.farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHENG THAO,
ANDRE JONES,
DAVID TRUNG DUONG, AND
ANDY HUNG DUONG,

Defendants.

CASE NO. 4:25-cr-0003-YGR

**UNITED STATES' OPPOSITION TO DEFENDANT DAVID DUONG'S MOTION TO COMPEL PRODUCTION OF MARIO JUAREZ'S TAX RETURNS**

## INTRODUCTION

Defendants have been on notice since February of 2025, when the government made its first discovery production, that Mario Juarez had pled guilty and was a cooperating witness in this case. Now, two weeks before trial, Defendant David Duong moves to compel the government to affirmatively obtain Juarez's tax returns and produce them to the defense. Defendant's motion should be denied because it is wrong on the facts and wrong on the law.

First, Juarez's tax returns are not in the government's possession, as the prosecution team has not obtained Juarez's tax returns as part of its investigation and tax return information is not readily available to the government in the same way as other government records. Defendant's contention that IRS-CI agents in this case can review tax returns without a court order is simply wrong, and ignores the clear distinction between criminal investigations that have been formally approved as tax investigations and non-tax criminal investigations. This distinction is not merely DOJ policy, but is clearly set forth in statute. Importantly, in non-tax investigations such as this case, Section 6103 of the Internal Revenue Code prohibits the IRS from disclosing tax return information to other government agencies (including the Department of Justice) unless the government submits a comprehensive application, containing the signature of the U.S. Attorney, and obtains an ex parte order from a United States District Court. Based on this statutory protection of tax information, courts addressing the issue presented here have held that tax return information of witnesses is not in the government's possession under *Brady*, *Giglio*, or any other discovery obligation, and the government is not required to affirmatively obtain such information. As set forth below, courts have uniformly rejected the argument Defendant puts forth here, holding that the government is not required to submit an application to the Court, under 26 U.S.C. § 6103(i), to obtain tax records of a cooperating witness merely because IRS-CI is one of the investigating agencies in a criminal case. Defendant's motion should be denied on that basis alone.

Second, even if Juarez's tax returns were in the prosecution team's possession (which they are not), Defendant's theory as to the materiality of Juarez's tax returns is speculative. As set forth below, courts in this district and the Ninth Circuit have held that *Brady* does not require the government to conduct searches of the files of other government agencies, and for documents to be discoverable, a defendant must make a threshold showing that of materiality, which Defendant has not done here.

## ARGUMENT

## I. Legal Standard

The government can reasonably be held responsible for producing information for purposes of Rule 16 and *Brady/Giglio* only to the extent that information is deemed accessible to the prosecution. Access is deemed present only with respect to materials actually in the possession of the federal government. *See United States v. Hsieh Hui Mei Chan,* 754 F.2d 817, 824 (9th Cir. 1985) (government "has no duty to volunteer information that it does not possess or of which it is unaware"). The government has no duty to produce information beyond what it actually has. *Id.*; *see also United States v. Graham,* 484 F.3d 413, 416 (6th Cir. 2007) (rejecting argument that the government exercised effective control over items in possession of cooperating witness).

Under Section 6103(a) of the Internal Revenue Code (26 U.S.C. § 6103(a)), all returns and return information are confidential and may not be inspected or disclosed except as authorized by the Internal Revenue Code. *See* Declaration of IRS Supervisory Disclosure Analyst Daniel Nimmo at ¶ 2. This rule applies to all present and former IRS employees. *Id.* Only for investigations that have been officially approved as tax investigations, under Section 6103(h) of the Internal Revenue Code (26 U.S.C. § 6103(h)), may tax returns and taxpayer return information be disclosed to Department of Justice (DOJ) personnel for enforcing internal revenue laws, tax administration, and criminal tax prosecution without a court order. *Id.* at ¶ 3. These types of disclosures occur when an IRS-CI special agent in charge refers the matter to DOJ or DOJ sends an invitation letter to an IRS-CI special agent in charge to expand an on-going grand jury investigation for purposes of IRS evaluating available grand jury information for possible criminal tax violations. *Id.*

In cases that have not been officially approved as tax investigations (such as the present case), the burden for obtaining tax return information is much higher. For IRS criminal non-tax investigations, under Section 6103(i)(1) of the Internal Revenue Code (26 U.S.C. § 6103(i)(1)), an ex parte court order issued by a U.S. District Court judge or magistrate is required for returns and return information to be disclosed to federal officers or employees for the administration of non-tax federal criminal laws. *Id.* at ¶ 5. An application pursuant to Section 6103(i) must establish (1) reasonable cause to believe that a specific non-tax criminal violation has occurred, (2) reasonable cause to believe that the return or return

information is or may be relevant to a matter relating to the commission of the crime, (3) that the return or return information will be used solely for the criminal investigation of the referenced crime, and (4) that such information cannot reasonably be obtained from another source. 26 U.S.C. § 6103(i)(1)(B)(i)-(iii).

**II. Juarez's tax returns are not in the prosecution team's possession pursuant to *Brady*, *Giglio*, or any other discovery obligation.**

The present investigation and case involving Sheng Thao, Andre Jones, David Duong, and Andy Duong is not and has never been a tax investigation approved by the IRS or DOJ within the meaning of Section 6103. *See* Declaration of IRS-CI Special Agent Christine Stegner at ¶ 2. The government has not obtained any ex parte orders for tax returns as part of its investigation and has not reviewed tax returns or return information for Juarez as part of its investigation. *Id*. Rather, this is a public corruption investigation where IRS-CI is acting as one of the investigative agencies. As such, the case law is clear that Juarez's tax returns are not in the prosecution team's possession within the meaning of *Brady*, *Giglio*, or any other discovery obligation. Contrary to the suggestions made in Defendant's motion, the IRS-CI special agent working on this case cannot simply access Juarez's tax returns from a database—to do so would be a federal crime. *See* 26 U.S.C. § 7213A.

Cases evaluating this issue have uniformly held that that tax return information is not readily available to the government in the same way as other criminal records given the special protections attached to tax information and the court-involved process the DOJ must undertake to even obtain the records. Some cases that are directly on point are summarized below:

- *United States v. Zinnel*, 2011 WL 5593109 at * 3 (E.D. Cal Nov. 16, 2011) (overruled in part on other grounds) ("The defense contends that it is entitled to see the tax returns of witnesses in this case, and that since the IRS is the 'government,' it has access to all these tax returns. The undersigned disagrees. Only the criminal investigation side of the IRS involved in this investigation is the government here; the vast administrative arm of the IRS., i.e., ordinary tax collection, is not. Indeed, when the prosecution desires to obtain tax files for a criminal investigation, it simply does not 'access' the files, but must petition the court demonstrating precise criteria before any access is permitted. 26 U.S.C. § 6103(i). The requirement to obtain an

order before access of tax records is authorized stands as the antithesis of constructive possession. Of course, if the desired tax information had previously been disclosed from the IRS and was in the possession of the Department of Justice, the result might well be different. The undersigned does not find that otherwise non-disclosed IRS non-party tax information is in the possession of the 'government,' even when the Criminal Division of the IRS is considered the 'government.'") (internal citation omitted).

- *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) (civil IRS files not in the prosecution team's possession merely because IRS-CI was an investigating agency).

- *United States v. Lochmondy*, 890 F.2d 817, 823-24 (6th Cir. 1989) ("The defendants also sought disclosure of Plantefaber's federal income tax returns. Plantefaber's immunity agreement did not expressly give him immunity for federal tax violations, but arguably implied that he had immunity for criminal tax violations in that it expressly stated he did not have immunity for 'civil tax consequences, if any.' The defendants argued that since Plantefaber's immunity agreement included immunity from criminal tax violations, they should be allowed to view his income tax returns in order to see what he had been given immunity from. The district court originally ordered the government to produce Plantefaber's income tax returns for 1980–1986 for *in camera* review. The Internal Revenue Service took the position that the district court's order was legally insufficient to authorize disclosure of those returns, and the government moved for reconsideration of the order. After reviewing the relevant authorities, including 26 U.S.C. § 6103 and *United States v. Bibby,* 752 F.2d 1116 (6th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986), the district court granted the government's motion for reconsideration and withdrew its order for production of the returns. Section 6103 authorizes disclosure of returns previously disclosed to federal officials 'to the extent required by order of the court pursuant to § 3500 of Title 18, United States Code (the Jencks Act), or Rule 16 of the Federal Rules of Criminal Procedure.' 26 U.S.C. § 6103(i)(4)(A)(ii). In *United States v. Bibby,* the district court denied production of an IRS tax audit of a government witness which the

defendant sought for impeachment purposes. In affirming the district court's ruling on that issue, this court held that 'the *Brady* requirement only applies to evidence which the prosecutor knew or should have known was exculpatory,' and that '*Brady* does not apply to evidence not in the prosecutor's possession.' 752 F.2d at 1125. Here, as in *Bibby,* the prosecutor never had possession or knowledge of the income tax returns sought by the defendants. Since the prosecution never obtained disclosure of those returns, § 6103(i)(4) is inapplicable. The district court, therefore, properly reconsidered and rescinded its order requiring the IRS to produce the returns.").

- *United States v. Salyer*, 271 F.R.D. 148, 156 (E.D. Cal. 2010) ("Nor are agencies which were, or have to be, subjected to formal processes to obtain information considered to be within the control of the "government" for purposes of this case. Thus, for example, simply because the United States obtained documentary information as a result of subpoena or search warrant does not place all documents of those entities or persons within the possession of the government for defendant's further requests. ***The need for formal process in the acquisition of documents is the antithesis of 'access' as defined by the above cases***.") (emphasis added).

- *United States v. Weed*, 775 F.Supp.3d 520, 531-32 (D. Mass 2025) ("Tax return information is not 'readily available' to the government in the same way as run-of-the-mill criminal records. Although it is generally true that the government is not a congery of independent hermetically sealed compartments, the IRS stands as an important exception. Section 6103 of the Internal Revenue Code not only prohibits the IRS from disclosing tax returns and return information to the general public but it also prohibits such disclosure to other government agencies. Section 6103 was, in fact, intentionally designed to 'hermetically seal' tax return information in all but the rarest of circumstances. As the First Circuit explained, 'In the tax statute, ... Congress has decided that, with respect to tax returns, confidentiality, not sunlight, is the proper aim. Tax returns contain highly personal information that many taxpayers might not wish to broadcast.' Moreover, without clear taxpayer understanding that the government takes the strongest

precautions to keep tax information confidential, taxpayers' confidence in the federal tax system might erode, with harmful consequences for a tax system that depends heavily on voluntary compliance. ***None of the cases cited by petitioner suggests that the government must conduct a tax audit of any potential cooperator***. Perdomo, Auten, Young, and Carriger all concern the government's obligation to conduct routine background checks, an obligation that the government in this case fulfilled. Weed relies on the First Circuit decision in Osorio to contend that, regardless of whether the government knew of Flaherty's tax fraud, it should have suspected as much and conducted an investigation. The First Circuit, however, later clarified its holding in Osorio to preclude precisely the kind of claims petitioner pursues: ***Neither the relevant Supreme Court precedent under Brady nor our decision in Osorio requires a prosecutor to seek out and disclose exculpatory or impeaching information not in the government's possession***. To comply with Brady the individual prosecutor has a duty to find any evidence favorable to the defendant that was known to those acting on the government's behalf.... Such persons include other members of the prosecuting team, including police investigators working for the prosecution. The Internal Revenue Service ("IRS") was not a party to this investigation or prosecution and does not constitute "the government" for the purpose of a *Brady* analysis. If this Court were to endorse Weed's proposition, it would impose a duty on the government to examine all of the files of every federal government agency to ascertain whether any cooperating witness may have committed wrongdoing previously unknown to the prosecution. The Court declines to interpret Brady and its progeny as imposing such an onerous obligation.") (emphasis added) (internal citations omitted).

These cases each address, and answer, the same question raised by Defendant's motion. This case does not involve an authorized tax investigation within the meaning of Section 6103 and Juarez's tax returns are not in the government's possession merely because IRS-CI is an investigating agency. The government has not obtained any tax returns as part of its investigation, either from a defendant or witness, as this is a public corruption case, not a tax case. Accordingly, the government is not obligated under *Brady*, *Giglio*, or any other discovery obligation to obtain Juarez's tax returns and cannot be

compelled to submit an ex parte application under Section 6103 merely because Defendant wants to review Juarez's tax returns.

Defendant's motion blurs the line between tax and non-tax investigations. But that distinction is material and dispositive as to the issue presented here. Furthermore, the cases Defendant relies on do not support his argument. For example, Defendant relies on *United States v. Swenson*, No. 1:13-cr-00091, 2013 WL 4735591 (D. Idaho Sept. 3, 2013). But that case involved a significant corporate fraud and criminal tax investigation authorized by DOJ tax during which a cooperating IRS revenue agent participated in the investigation. *See* District of Idaho Case No. No. 1:13-cr-00091, Dkt. No. 87 at 13. Furthermore, in that case, the prosecution had already received tax return information from the IRS as part of its investigation, which is not the case here. Specifically, the prosecution team had already obtained tax return information from five individuals and eight corporate entities in that case. *Id*. Given all of those facts, the district court ordered the government to disclose tax return information. As such, the facts in *Swenson* are far afield from the non-tax investigation in our case.

Defendant also cites to *United States v. Shaffer*, 789 F.2d 682, 688-89 (9th Cir. 1986). But that case was not about whether tax returns held solely by the IRS were in the government's possession for the purposes of *Brady*. Rather, in *Shaffer*, the Ninth Circuit affirmed the grant of a new trial in a tax fraud prosecution when the government affirmatively withheld from the defense information that a witness was (1) a paid informant in a separate heroin operation during the years 1980 and 1981; (2) the full benefits and promises that the witness received in exchange for his cooperation; (3) the full extent of the witness's assets; and (4) the status of Durand's tax liability, all of which were actually in the government's possession. *Id*. None of those factors is present here. As such, *Shaffer* is far afield from our case.

Defendant also relies on *Pennsylvania v. Ritchie*, 480 U.S. 39, 43 (1987). But that case had nothing to do with the IRS or tax returns. Defendant further cites *United States v. Prokop*, No. 2:09-cr-00022, 2012 WL 2375001, at *3-6 (D. Nev. 2012). But that case was explicitly a tax investigation, involving tax fraud charges, in which the civil side of the IRS had been closely involved in the investigation, in which multiple civil IRS revenue agents assisted in the investigation. Similarly, the investigation *United States v. Lloyd*, 71 F.3d 408, 409 (D.C. Cir. 1995), was explicitly designated as IRS

tax investigation involving tax charges against a tax preparer.

Finally, Defendant suggests that the government's obligations under *Brady* override the protections set forth in Section 6103. *See* Dkt. No. 373 at 10-12. However, for *Brady* to apply, the materials in question must actually be in the prosecution team's possession. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("The prosecution is under no obligation to turn over materials not under its control."). Here, the case law makes clear that Juarez's tax returns are not in the government's possession as "[t]he need for formal process in the acquisition of documents is the antithesis of 'access' as defined by the above cases." *Salyer*, 271 F.R.D. at 156. Accordingly, neither *Brady*, *Giglio*, nor any other discovery obligation applies to Juarez's tax returns and the government respectfully submits that the Court should deny Defendant's motion to compel on that basis.

**III. Defendant's theory of materiality is speculative.**

Even if Juarez's tax returns were in the prosecution team's possession (which they are not), Defendant's theory of materiality is speculative. *Brady* does not "require a prosecutor to unearth from an agency, even an agency involved in the investigation, every random scrap of paper of possible defense use. Given their enormity, it would be impractical to scour all files and desks and lockers looking for all nuggets, large and small. Fishing expeditions are not required." *United States v. Cerna*, 633 F.Supp.2d 1053, 1061 (N.D. Cal. 2009). The Ninth Circuit has held similarly. *See United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("the appellant's mere speculation about materials in the government's files does not require the district court or this court under *Brady* to make the materials available for the appellant's inspection.") (internal citation omitted).

Here, Defendant asserts that Juarez's tax returns are exculpatory and material to the defense because Juarez has received money from multiple sources at various points. Specifically, Defendant points to the shooting at Juarez's residence that took place on June 9, 2024. That shooting occurred one month after Juarez was assaulted and robbed on the premises of California Waste Solutions and three days after he first spoke with the government. In the hours following this shooting, the FBI relocated Juarez for his safety and paid his hotel and rental car expenses for a month. *See* Dkt. No. 289 at 7-8 (describing circumstances of shooting). Defendant also asserts that between 2022 and 2024, Juarez received payments from CWS and Evolutionary Homes. Dkt. No. 373 at 4. Based on the fact that

Juarez received money from these sources, Defendant asserts that his tax returns, regardless of what they actually contain,somehow must contain material and/or exculpatory information. But Defendant cites no case holding that a witness's tax returns are necessarily exculpatory or material to the defense merely because that witness received money. The proffered justification, that Defendant's assertion that Juarez's tax returns contain exculpatory information merely because he received money is nothing more than conjecture, and illuminates the request as a speculative fishing expedition.

Defendant also suggests that the government can request Juarez's tax returns from his counsel under the terms of Juarez's plea agreement. However, the case law uniformly holds that the government has no duty under *Brady* to access, review, or obtain materials under the control of cooperating witnesses merely because the defense would like to review such documents. *See United States v. Abdulwahab*, 2011 WL 4434236, at *7 (E.D.Va. Sept. 22, 2011) ("The United States has no duty under *Brady* to investigate evidence that is under the control of a cooperating witness.") (overruled in part on other grounds); *United States v. Lujan*, 530 F.Supp.2d 1224, 1231 (D.N.M. 2008) ("[T]here is no affirmative duty to discover information in possession of independent, cooperating, witness[es.]"); Wayne Lafave et al., Criminal Procedure, § 20.3(a) (3d ed. 2011) ("Courts generally agree [ ] that the prosecutor's obligations do not extend to agencies that are not law enforcement agencies, even though they may furnish some information to the prosecution. The same is true of private parties."); *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("Graham argues that the Government exercised effective control over the evidence because Allen was a cooperating witness. Neither the case law nor the facts of this case support this argument."); *United States v. Chen*, 754 F.2d 817, 824 (9th Cir. 1985) ("While the prosecution must disclose any [*Brady*] information within the possession or control of law enforcement personnel, it has no duty to volunteer information that it does not possess or of which it is unaware."); *United States v. Baker,* 1 F.3d 596, 598 (7th Cir. 1993) ("*Brady* does not require the government to conduct discovery on behalf of the defendant."); *Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984) ("A prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness."); *United States v. McCall,* 2009 WL 4016616, at *1 (N.D. Cal. Nov. 18, 2009) (declining to extend the prosecutor's duty to learn of any favorable evidence known to police

investigators and government agents to include cooperating witnesses); *United States v. Avellino,* 136 F.3d 249, 255 (2d. Cir. 1998) ("[T]he imposition of an unlimited duty on a prosecutor to inquire ... would condemn the prosecution of criminal cases to a state of paralysis."); *United States v. Tadros,* 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* . . . does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel.").

**CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court deny Defendant's motion to compel.

DATED: October 2, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/

ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
Assistant United States Attorneys