CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
abraham.fine@usdoj.gov
molly.priedeman@usdoj.gov
lloyd.farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG,<br><br>Defendant. | Case No. 4:25-cr-00003-YGR<br><br>**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION FOR PRODUCTION OF MARIO JUAREZ DOCUMENTS**<br><br>Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. ARGUMENT ........................................ 6

A. The Government Does Not Have Legal Authority to Re-Review Materials that Are Outside the Scope of the Search Warrants ........................................ 6

B. Defendants' Motion is Untimely ........................................ 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006) ... 6

*Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523 (1967) ... 6

*Carpenter v. United States*, 585 U.S. 296 (2018) ... 6

*Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) ... 12

*Dalia v. United States*, 441 U.S. 238 (1979) ... 7, 12

*Kentucky v. King*, 563 U.S. 452 (2011) ... 6

*Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d 62 (D.D.C. 2021) ... 7

*Morgan v. Salamack,* 735 F.2d 354 (2d Cir.1984) ... 10

*Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995) ... 8

*United States v. Abdulwahab*, Case No. 10-CR-248, 2011 WL 4434236 (E.D.Va. Sept. 22, 2011) ... 10

*United States v. Avellino,* 136 F.3d 249 (2d. Cir. 1998) ... 11

*United States v. Baker,* 1 F.3d 596 (7th Cir. 1993) ... 10

*United States v. Balwani*, 2022 WL 1405404 (N.D. Cal. May 4, 2022) ... 3, 7, 8

*United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019) ... 8

*United States v. Cerna*, 633 F.Supp. 2d 1053 (N.D. Cal. 2009) ... 12

*United States v. Chen*, 754 F.2d 817 (9th Cir. 1985) ... 10

*United States v. Collins*, 409 F. Supp. 3d 228 (S.D.N.Y. 2019) ... 8, 9

*United States v. Dadd*, 1992 WL 107356 (9th Cir. 1992) ... 10

*United States v. Evers*, 669 F.3d 645 (6th Cir. 2012) ... 7

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) ... 11

*United States v. Garcia*, 509 F. App’x 40 (2d Cir. 2013) ... 11

*United States v. Graham*,
484 F.3d 413 (6th Cir. 2007) ........ 10
*United States v. Hall*,
No. 18-CR-623, 2020 WL 7027473 (N.D. Tex. Nov. 30, 2020) ........ 8
*United States v. Hill*,
459 F.3d 966 (9th Cir. 2006) ........ 4
*United States v. Johnston*,
789 F.3d 934 (9th Cir. 2015) ........ 6, 12
*United States v. Lujan*,
530 F.Supp.2d 1224 (D.N.M. 2008) ........ 10
*United States v. McCall,*
2009 WL 4016616 (N.D. Cal. Nov. 18, 2009) ........ 10
*United States v. Meregildo,*
920 F.Supp.2d 434 (S.D.N.Y. 2013) ........ 11
*United States v. Munchak*,
2014 WL 3557176 (W.D. Penn. July 17, 2014) ........ 10
*United States v. Padilla*,
111 F.3d 685 (9th Cir. 1997) ........ 12
*United States v. Rettig*,
589 F.2d 418 (9th Cir.1978) ........ 6
*United States v. Rubio*,
727 F.2d 786 (9th Cir. 1983) ........ 9
*United States v. Smith,*
Case No. 08-CR-31-JMH 2011 WL 2416804 (E.D.Ky. June 13, 2011) ........ 8
*United States v. Tadros,*
310 F.3d 999 (7th Cir. 2002) ........ 11
*United States v. Tamura*,
694 F.2d 591 (9th Cir. 1982) ........ 6
*United States v. Triplett*,
684 F.3d 500 (5th Cir. 2012) ........ 7

## I. INTRODUCTION

Over a year ago, the government completed a review of data it collected from Apple and Microsoft pursuant to search warrants for Mario Juarez's iCloud and Microsoft email account. Agents searched those materials following the procedures in the warrants and seized certain items that fell within the scope of the warrants. The government then produced to Defendants the materials seized pursuant to those warrants.

The warrants detailed specific procedures for obtaining the data from Apple and Microsoft and then searching the data for information that could be lawfully seized, resulting in a set of data that is "seized" under the warrant, and then preventing agents from returning to the data after seizure. This process that is laid out explicitly in both warrants at issue protects the constitutional rights that shield individuals from unreasonable searches and seizures. The privacy and constitutional interests at stake, and the entire concept of "seizure" in warrants like this, is why courts have repeatedly held that the government does not have possession, custody, or control of the items falling outside the scope of a search warrant, and as such, has no legal authority to access those materials absent another search warrant.

Defendants now seek to turn this process on its head. They claim—without support—that the government must produce the entirety of Mario Juarez's iCloud and Microsoft email accounts to search for theoretical items that may help their case. That is a radical reinterpretation of the Fourth Amendment and settled case law that hangs on two fundamentally flawed propositions. The first is that by pleading guilty, Juarez somehow waived any Fourth Amendment privacy interest he had in these materials. They cite no case to support this, and the government has found none. As discussed below, the opposite is true: court after court has found that the government does not have possession, custody, or control of a cooperating witness's materials.

The second fundamentally flawed proposition is that because the FBI maintains a copy of the full dataset in its internal system, that somehow means it is subject to discovery even if the government did not seize the material pursuant to the search warrant. That too is wrong. Once again, the case law is clear that the government does not legally maintain possession, custody, or control of data that it did not seize.

In short, the government properly searched and seized items from Juarez's iCloud and email accounts and produced those materials to Defendants over a year ago. Neither the government nor Defendants have the legal authority to once again access those out-of-scope materials to conduct additional searches. Doing so would violate Juarez's Fourth Amendment privacy interests and mark a radical shift in the law that would effectively hand Defendants control of searches conducted pursuant to judicially authorized warrants. The Court should therefore deny the motion.

Equally problematic is the timing of this motion, mere days before trial. Defendants were told in February 2025 of the government's then pending searches of data from devices and cloud accounts. For the warrants at issue, data was seized from the accounts by August 27, 2025, and then produced to Defendants shortly thereafter. The Court should also reject the motion as untimely.

## II. BACKGROUND

On July 24, 2023, and February 23, 2024, Magistrate Judge Kandis A. Westmore issued search warrants authorizing the search of Mario Juarez's Apple iCloud account. On May 7, 2024, Chief Magistrate Judge Donna M. Ryu issued a search warrant authorizing the search of Mario Juarez's Microsoft email account. Declaration of Abraham Fine, Exhibits A-C.

Each of the above-described warrants included a search procedure that authorized law enforcement personnel to review the information received from Microsoft and Apple (which under the warrants' terms was essentially the entire digital account within the prescribed date range) and "copy only the information authorized to be further copied" as described in Attachment B to the warrants. To that end, both warrants contain essentially the same language, which is standard in this district. For example, Attachment B, Section I (Search Procedure), subsections d. and e. of the iCloud warrant state:

> d. Law enforcement personnel will thereafter review the information received and identify and copy only the information that this search warrant authorizes to be further copied, as specified in Attachment B; and
>
> e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Apple employees and will not further review the original duplicate absent an order of the Court.

The plain terms of the warrant thus prevent the government from accessing the out-of-scope of materials.

In February of 2025, shortly after the case was charged, the government sent all defense counsel

a letter with a list outlining all of the devices and accounts the government had obtained as part of its investigation, as well as the status of review of each of these devices and accounts. *See* Fine Decl., Ex. D. The list included 142 electronic devices and 15 iCloud and email accounts that had been obtained pursuant to search warrants (including Mario Juarez's email account and iCloud account). In the letter, the government stated that each Defendant would receive full copies of their own devices/accounts. The government further explained that for all third-party devices and accounts, it would produce the evidence seized pursuant to Attachment B. The government explained that it did not have authority to produce images or digital copies of the devices or accounts belonging to codefendants or third parties—the only material that is in the government's possession, and that it could produce, was the material seized pursuant to Attachment B. The letter explicitly cited to the recent decision in *United States v. Balwani*, Case No. 18-CR-258 EJD, 2022 WL 1405404, at *5 (N.D. Cal. May 4, 2022), which makes clear that evidence not seized pursuant to Attachment B is not in the government's possession. The February 2025 letter and attached spreadsheet included the Mario Juarez email and iCloud accounts that are at issue in this motion. None of the defendants objected to the government's letter, provided contrary authority, or moved to compel production of the entirety of Juarez's email or iCloud account, until now.

Defendants' motion seeks to compel production of the entire datasets the government obtained from Microsoft and Apple in response to warrants for Mario Juarez's iCloud and email accounts. Those warrants permitted government agents to review the datasets and seize material set forth in Attachment B. *See* Fine Decl., Exs. A-C at 3. The Attachment B reviews agents conducted pursuant to those warrants were appropriate and consistent with the terms of the relevant warrants, general Fourth Amendment principles, and FBI practices in this district. While the FBI routinely uses search terms to review data contained on a device or account, it is not required that they do so, and it is not the appropriate method of review in all circumstances. For example, it is not appropriate to use search terms to review images and videos, which cannot be effectively searched by keyword. Nor is it necessary to use search terms to review a category of data that is highly likely to have responsive data throughout—for example, evidence of ownership or attribution—but the exact contents of which may not be known to the agent.

As for the review of the dataset from Mario Juarez's email account, the case agent responsible for that review used a variety of approaches to review the documents pursuant to the warrant. The Attachment B review was comprehensive and was done based on an iterative process using a combination of search terms based on the warrant categories, searches for relevant individuals, entities, email addresses and phone numbers, and additional manual review.[1] Broadly, the case agent first went through the topics identified in the warrant, including categories such as the names of entities listed in Attachment B along with other potentially relevant entities, the names of various individuals listed in Attachment B along with other potentially relevant individuals, as well as other general categories of information listed in Attachment B or otherwise potentially relevant.[2] The reviewing agent used various search terms associated with those categories that she believed would ensure she captured documents that addressed the subjects and categories listed in the warrant. She also did broad searches for financial information and documents, looking for known bank names (and bank or account names she saw when reviewing documents). She also used a list of additional individuals, entities, and keywords, along with lists of significant email addresses and phone numbers, and key terms. Searches were not used as a brute force tool, because often broad search terms could yield a large number of irrelevant documents. After running searches, the case agent would also review the search term hits to determine whether the documents were within the scope of the warrant. To the extent the reviewing agent reviewed an item that appeared to be potential *Brady* or *Giglio* material, the agent seized it. The Attachment B review of Juarez's email account was completed on August 12, 2025, and the seized material was promptly

[1] The search methodology the government employs is irrelevant because it has authority to review every single file in a collected dataset to determine if it is responsive, *See United States v. Hill*, 459 F.3d 966, 977–78 (9th Cir. 2006) (inclusion of "search methodology" in warrant was unnecessary because the government had legal authority to examine contents of all the files collected to determine if they were within the scope of the warrant). The government nonetheless provides a summary here as a courtesy.

[2] In preparing this opposition, the government learned that the case agent reviewing the email account inadvertently utilized the Attachment B from the iCloud warrant. The list of items the government was permitted to seize in response to both warrants was nearly identical, except that the Attachment B for the iCloud did not specifically mention the names of two individuals and two entities, and the date range for the iCloud warrant was more restrictive in that it began on January 1, 2020, rather than January 1, 2019. The Agent nonetheless searched for the two individuals and two entities, and subscriber records for the email account indicate that it was not set up until June 2020. For these reasons, any differences in the warrant language had no meaningful impact on the scope of materials identified for seizure during the agent's review.

produced to counsel for all defendants. Following the completion of the searches, the government has not accessed the full dataset.

As for the review of the datasets from Mario Juarez's iCloud accounts, the case agent responsible for that review also used a variety of approaches to review the data pursuant to the warrant. Juarez's iCloud account was obtained on two occasions, first from a July 2023 warrant and then subsequently from a February 2024 warrant. iCloud accounts can contain a multitude of types of data, such as photos, videos, text messages, notes, emails, and other similar items, depending on which types of items the user has chosen to back up to the cloud. To review this data, the case agent first filtered it for the date ranges identified in the search warrants. The case agent's Attachment B review included manually reviewing the photos and videos on the device and seizing those that were responsive to a category listed in Attachment B of the warrants. The case agent did this because these files cannot be searched using search terms, and so must be reviewed manually. The case agent also reviewed the "notes" on the device. The Apple iCloud account contained a specific "Notes" application. The case agent further manually reviewed some, but not all, of the emails and text messages contained on the account, focusing on communications between Juarez and relevant individuals set forth in Attachment B as well as other relevant individuals known by the case agent that were likely to relate to potentially relevant information. This was an iterative process that continued to evolve as the case agent learned more from the investigation, as well as from his review of the iCloud itself. To the extent the reviewing agent reviewed an item that appeared to be potential *Brady* or *Giglio* material, the agent seized it. The Attachment B review of the materials received pursuant to the first Juarez iCloud warrant was concluded on November 5, 2024. The Attachment B review of the materials received pursuant to the second Juarez iCloud warrant was concluded on May 30, 2025 (except for review of all Apple notes) and the review of the Apple notes was completed on August 27, 2025. In each instance, the seized material was promptly produced to counsel for all defendants. Following the completion of the searches, the government has not accessed the full dataset.

## III. ARGUMENT

### a. The Government Does Not Have Legal Authority to Re-Review Materials that are Outside the Scope of the Search Warrants

The defense's proposal here would contradict the terms of the Fourth Amendment and mark a radical departure from centuries of case law that has protected the rights of individuals to be free from unreasonable searches and seizures in the United States. It would, in practice, hand the execution of search warrants over to defendants, who would be empowered to conduct their own searches of materials belonging to third parties that are outside the scope of any judicially authorized search warrant. That is not the law.

The Fourth Amendment to the Constitution protects the right of every person in the United States to be secure in their "persons, houses, papers, and effects, [and] against unreasonable searches and seizures." U.S. Const. amend. IV. As the Supreme Court has noted, "The 'basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (quoting *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967)). In order to search a location where a citizen has a reasonable expectation of privacy and seize materials related to criminal misconduct, the government must obtain a warrant from a neutral and detached magistrate. *Id.* at 304 (where an individual has a reasonable expectation of privacy, "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (citation omitted).

The scope of the government's authority to search and seize materials from a private citizen is necessarily circumscribed by the terms of that warrant. "As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized." *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) (citations omitted). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). The constitutional reasonableness of how a search of digital data is conducted—like other searches—turns on whether it is "'directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed.'" *United States v. Johnston*, 789 F.3d 934, 941 (9th Cir. 2015) (quoting *United States v.*

*Rettig*, 589 F.2d 418, 423 (9th Cir.1978)); *see also United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) ("Fourth Amendment reasonableness is the bedrock principle that guides computer as well as physical searches."). And "given the unique problem encountered in computer searches, and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts have eschewed the use of a specific search protocol and, instead, have employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis[.]" *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012) (internal citations and quotation marks omitted). Moreover, the court's "constitutional role is generally not to manage the government in the execution of a search warrant." *Matter of Search of Info. that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d 62, 88 n.23 (D.D.C. 2021) (citing *Dalia v. United States*, 441 U.S. 238, 257 (1979) ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant . . . .")).

Importantly, once the government reviews the materials it has collected and seized certain items that are within the scope of Attachment B, it has no legal right to review, seize, or produce to the defense materials that fall outside the scope of the warrant. *See Balwani*, 2022 WL 1405404, at *5 (holding that the government had no "lawful right to maintain possession, custody, or control of the non-responsive" materials that were outside the scope of the search warrant, and accordingly "could not have been under an obligation to review or turn over that data".).

Here, the very language of the warrants themselves reinforces the reality that the government does not have possession, custody, or control of the materials Defendants seek. Both the iCloud and Microsoft warrants in this case authorize the government to review the entire dataset received from the providers and seize only those materials authorized under Attachment B. Fine Decl., Exs. A-C at 3. It then requires the government to "seal the original duplicate of the accounts and files received from [the provider]" and prohibits "further review [of] the original duplicate absent an order of the Court." *Id.* These requirements, which are standard in this district, are entirely consistent with the case law governing Fourth Amendment searches and seizures.

Additionally, though the government has an obligation to disclose to the defense material, exculpatory information that the government has in its possession, "[u]nder both *Brady* and Rule 16, the

government 'has no obligation to produce information which it does not possess or of which it is unaware.'" *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (citing *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *see also Balwani*, 2022 WL 1405404, at *5 (government did not have a *Brady* obligation to produce materials that fell outside the scope of a search warrant); *United States v. Hall*, No. 18-CR-623, 2020 WL 7027473, at *6 (N.D. Tex. Nov. 30, 2020) ("[I]f the Government is not authorized to seize it, it certainly has no authority or legal obligation to disseminate it.")

The district court's opinion in *United States v. Collins*, 409 F. Supp. 3d 228 (S.D.N.Y. 2019) is squarely on point. In that case, the government searched the electronic devices and accounts (*e.g.*, iCloud, email, social media) of several third parties and seized certain materials pursuant to search warrants. *Id.* at 237. After those searches were complete, the defendant moved for an order directing the government to either go back into the electronically stored information (ESI) that fell outside the scope of the search warrants and rereview it for *Brady* and Rule 16 material or, in the alternative, to turn over to the defense the entire contents of the ESI—precisely the request the defense now makes in this case. *Id.* at 243.

The *Collins* Court denied that motion. First, the government asserted—just as it does here—that during its review of materials for responsiveness under the search warrant, it also searched for, seized, and produced to the defense any *Brady* or Rule 16 materials it encountered. *Id.* As a result, the Court held that the government had met its *Brady* obligations. *Id.*

Second, the Court held that the defense's proposed re-review of the non-responsive ESI would be unconstitutional because the government's possession of and ability to review the ESI was "necessarily circumscribed by the Fourth Amendment." *Id.* at 244. The Court stated, "The Government—having conducted a search of Individual-5's iCloud data consistent with the Fourth Amendment and a search warrant—does not have the legal authority to go back and search materials that are non-responsive, i.e., outside the scope of the search warrant." *Id.* The Court went on to reject the defense's argument that the government's *Brady* obligation somehow trumped the third-party's Fourth Amendment rights in the non-responsive iCloud data. *Id.* The Court noted that "Defendants do not cite any case law to support their proposition that the Government's *Brady* obligation gives it the

legal right to search Individual-5's iCloud data over Individual-5's objection, nor do Defendants explain how such a search would not be inconsistent with Individual-5's Fourth Amendment rights." *Id.*

The same is true here. Defendants have cited no case law supporting their radical re-writing of Fourth Amendment precedent. Juarez has a privacy interest in the iCloud and email data collected pursuant to the search warrants—an interest that is protected by the Fourth Amendment to the United States Constitution. Pursuant to the terms of those warrants, the government conducted reasonable searches of the data it collected to reveal items that were responsive to Attachment B. It then seized and produced to Defendants only the items that were within the scope of the warrants. Pursuant to the warrants and the laws governing Fourth Amendment searches, the government did not further review "the original duplicate" of the data and cannot do so "absent an order of the Court." Fine Decl., Exs. A-C at 3.

Any attempt to access the data that was not seized pursuant to the warrants at this point by either the government or the defense would violate Juarez's Fourth Amendment rights. Yet that is precisely what Defendants propose here: an unconstitutional search of materials that neither the government nor the defense have legal authority to access, let alone review. In effect, what Defendants ask the Court to do is to hand them the keys to the search so that they can conduct their own search of materials that the government did not seize pursuant to the search warrants. Notably, Defendants have not identified a single email or other piece of data that they believe is *Brady* and was withheld because it was in the non-seized dataset. The Court should view this for what it is: a fishing expedition.

Defendants try to avoid the requirements of the Fourth Amendment and centuries of case law by claiming that Juarez somehow has no privacy interest in the iCloud and email data because by entering into a cooperation plea agreement, he waived any privacy interests in the data. They further argue that because the government's review of Juarez's emails continued after he pleaded guilty, that somehow means that he waived his Fourth Amendment rights with respect to this data. Notably, there is nothing in the law or the Plea Agreement that supports this tortured proposition. Left with nothing else, Defendants cite two cases, neither of which are applicable. Both cases involve agents searching physical properties pursuant to the explicit consent of the property owners who were on scene at the time of the searches. *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983) (agents searched

physical property after getting explicit consent from owner); *United States v. Dadd*, 1992 WL 107356, at *6 (9th Cir. 1992) (same).

Once again, that is not the law. The truth is that Juarez has not waived his Fourth Amendment rights nor consented to the warrantless search of his iCloud or email data. And courts across the country have consistently held the government does not have a duty under *Brady* to investigate evidence that is under the control of a cooperating witness. *See, e.g., United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("Graham argues that the Government exercised effective control over the evidence because Allen was a cooperating witness. Neither the case law nor the facts of this case support this argument."); *United States v. Chen*, 754 F.2d 817, 824 (9th Cir. 1985) ("While the prosecution must disclose any [*Brady*] information within the possession or control of law enforcement personnel, it has no duty to volunteer information that it does not possess or of which it is unaware."); *United States v. McCall,* 2009 WL 4016616, at *1 (N.D. Cal. Nov. 18, 2009) (declining to extend the prosecutor's duty to learn of any favorable evidence known to police investigators and government agents to include cooperating witnesses); *United States v. Abdulwahab*, Case No. 10-CR-248, 2011 WL 4434236, at *7 (E.D.Va. Sept. 22, 2011) ("The United States has no duty under *Brady* to investigate evidence that is under the control of a cooperating witness.") reversed in part on other grounds, 715 F.3d 521 (4th Cir. 2013); *United States v. Lujan*, 530 F.Supp.2d 1224, 1231 (D.N.M. 2008) ("[T]here is no affirmative duty to discover information in possession of independent, cooperating, witness[es.]") (citation omitted); Wayne Lafave et al., Criminal Procedure, § 20.3(a) (3d ed. 2011) ("Courts generally agree [ ] that the prosecutor's obligations do not extend to agencies that are not law enforcement agencies, even though they may furnish some information to the prosecution. The same is true of private parties."); *United States v. Baker,* 1 F.3d 596, 598 (7th Cir. 1993) ("*Brady* does not require the government to conduct discovery on behalf of the defendant."); *Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984) ("A prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness."); *United States v. Munchak*, 2014 WL 3557176 at *15 (W.D. Penn. July 17, 2014) ("In addition, insofar as Defendants' submissions can be understood to suggest that a cooperating witness qualifies as a member of the 'prosecution team' thus charging the Government with the knowledge the

witness possesses, Defendants do not provide any support for this claim. Courts that have considered this issue, however, have concluded that a cooperating witness is not, in fact, a member of the prosecution team.) (collecting cases); *United States v. Garcia*, 509 F. App'x 40, 42–43 (2d Cir. 2013) (noting that the Second Circuit "has never held that the 'prosecution team' includes cooperating witnesses"); *United States v. Meregildo,* 920 F.Supp.2d 434, 444–45 (S.D.N.Y. 2013) (collecting cases and concluding that cooperating witness was not a member of the prosecution team and the government was not required to obtain or review social media posts under the control of a cooperating witness); *United States v. Smith,* Case No. 08-CR-31-JMH, 2011 WL 2416804, at *4 (E.D.Ky. June 13, 2011) ("[T]he information in question was in the 'possession,' for lack of a better word, of its cooperating witness not one of the prosecution's own agents. For this reason, the Court is not persuaded that this is an instance where the United States willfully ignored information which it would otherwise have been required to disclose under *Brady*."); *United States v. Avellino,* 136 F.3d 249, 255 (2d. Cir. 1998) ("[T]he imposition of an unlimited duty on a prosecutor to inquire . . . would condemn the prosecution of criminal cases to a state of paralysis."); *United States v. Tadros,* 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* . . . does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel.")

Defendants also wrongly conflate the fact that the government does not maintain legal possession, custody, or control of the non-responsive data from Juarez's iCloud and email accounts with the fact that the FBI maintains a copy of the original data in its entirety. Courts have recognized that the government must preserve an original copy of data it has collected for a plethora of reasons, including to authenticate the evidence at trial or to establish the integrity of the data (*i.e.*, to show the data was not altered, omitted, or destroyed). *See United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016). Indeed, as discussed above, the terms of the warrants themselves require the government to "seal the original duplicate of the accounts" and not to further review them absent a court order. As the Court in *Balwani* recognized, however, this does not mean that the government maintains possession, custody, or control of that data for purposes of discovery or a Fourth Amendment search, or that the government has legal authority to access it after completing the search warrant review.

Defendants attempt to explain away *Balwani* by claiming that the government never had a lawful

right to have the data at issue, which fell outside the timeframe articulated in the warrant, and therefore that is a meaningful difference with the facts here. Not so. Whether data is outside the scope of the warrant because it falls outside of the timeframe in the warrant or because it is outside the scope of the categories articulated in Attachment B is immaterial. What matters is that the warrant did not give the government the right to seize the materials, therefore the remaining data is not in its possession or subject to dissemination to Defendants.

Defendants also attempt to explain away *Collins*.[3] They claim that case is distinguishable because Juarez supposedly waived his Fourth Amendment rights to the data. That is wrong for the reasons discussed above.

Defendants also argue this case is different because of supposed "discrepancies with the production of material from Juarez's Microsoft email account" that they identified during the meet and confer process. Defs.' Mot. at 10. The record does not support this allegation. As the government explained to the Court at the hearing on October 5, 2026, and as detailed above, the government's review of Juarez's iCloud and email accounts did not rely exclusively on search terms but included a variety of techniques. Moreover, the law does not permit Defendants to dictate the means by which the government executes a search. *See Dalia*, 441 U.S. at 257 ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant . . . .")).

The standard for whether the government complied with its obligations under the Fourth Amendment is whether the search was reasonable,[4] not whether the search satisfies Defendants or is the search that Defendants would have conducted had they had control of the review. *See Johnston*, 789

---

[3] In addition to *Balwani* and *Collins*, Defendants cite several cases that generally discuss the government's *Brady* and *Giglio* obligations, including some that have nothing to do with the Fourth Amendment or the privacy interests of third parties. *See, e.g., United States v. Cerna*, 633 F.Supp. 2d 1053, 1060 (N.D. Cal. 2009) (discussing government's obligations to search files of state law enforcement agencies for *Brady* materials); *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (discussing prosecutor's duties to inspect state corrections file for cooperating witness). These cases are not applicable here.

[4] Defendants have no standing to challenge the warrant itself under the Fourth Amendment. *See United States v. Padilla*, 111 F.3d 685, 687 (9th Cir. 1997) (holding that to have standing, an individual must show that their own expectations of privacy or property interest were violated by government conduct).

F.3d at 941. As the government has repeatedly affirmed, to the extent agents encountered any *Brady* or Rule 16 material during the search, they seized those items and they were produced to the defense—the exact same thing the government did in *Collins*.

**b. Defendants' Motion is Untimely**

In addition to lacking merit, Defendants' motion, on the eve of trial, is also untimely. Defendants have been on notice for over a year and a half that the government intended to, and did, produce only the seized Attachment B materials from Juarez's iCloud and email accounts to Defendants, and that it had no legal basis for an alternative approach. If Defendants took issue with that approach, they could have done several things. For starters, they could have sought the information directly from Juarez himself. Indeed, Defendants did take that approach with other materials, as the government understands Juarez recently made multiple discovery productions to Defendants pursuant to a Rule 17 subpoena.

Defendants also could have raised this issue in the intervening 19 months since the government first informed them of the review process in its February 2025 letter. They did nothing. Instead, Defendants waited until the eve of trial to spring this issue on the government and the Court, claiming that they just discovered this potential issue after the government shared with Defendants proposed search terms aimed at expediting a review of data that the filter team had previously withheld from the case team. But as the government has repeatedly stated, those proposed search terms were not the ones used in the search warrant reviews conducted more than a year ago. Moreover, they were offered to Defendants in a meet-and-confer process that was aimed at an entirely different issue than the original search warrant review. Defendants have taken those search terms, which the government provided in a good faith effort to resolve their concerns with the privilege review, and manufactured an entirely separate issue on the eve of trial. That is too late.

In addition to being substantively meritless, Defendants' motion is also untimely and should therefore be denied.

///

///

///

DATED: October 8, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Abraham Fine*
ABRAHAM FINE
MOLLY PRIEDEMAN
LLOYD FARNHAM
Assistant United States Attorneys